# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARROW INTERNATIONAL, INC. and ARROW INTERNATIONAL INVESTMENT CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SPIRE BIOMEDICAL, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) C.A. No. 05-CV-10671-DPW ) ) ) ) ) ) |

## SPIRE BIOMEDICAL, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION TO STAY CONSIDERATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Spire Biomedical, Inc. ("Spire") opposes the motion to stay filed by Plaintiffs Arrow International, Inc. and Arrow International Investment, Corp. (collectively "Arrow") as well as Arrow's request to extend the briefing schedule. To defer the question of enforceability of the patent-in-suit to the United States Patent and Trademark Office ("PTO") is neither necessary nor appropriate here on the facts of this case and applicable law.

The fulcrum of Spire's Motion for Summary Judgment of Invalidity Due to Abandonment is that Arrow, by violating the provisions of 35 U.S.C. § 122(b)(2)(B)(iii) (2005), abandoned the application for U.S. Patent No. 6,872,198 (filed Aug. 30, 2002). Spire presents this Court with a situation where the patent-in-suit was never, is not now, and *was not at the time Plaintiffs filed this suit against Spire*, an enforceable patent. It is unnecessary and inappropriate to defer to the PTO on a matter with an undisputed factual record readily before this Court.

**I.   BACKGROUND**

The essential facts are these:

(1) the '198 patent application was filed on August 30, 2002 with a Request for Nonpublication;

(2) several foreign applications disclosing the invention contained in the '198 were filed on August 23, 2003;

(3) the inventors and/or their authorized agents did not notify the PTO of these foreign filings or petition the PTO to Rescind the Nonpublication Request; and

(4) Arrow initiated this lawsuit on April 5, 2005.

Arrow postulates that there could be a disputed issue of material fact concerning notification (Arrow Motion 3), but the file history of the '198 patent contains *no* evidence that the PTO ever received notice of the seven foreign filings in question.[1] Moreover, in its attempt to suggest a factual issue, Arrow presents a picture that collides with common sense. If Arrow is sincere in arguing that it was unaware of the Nonpublication Request made by Diatek then it would be nonsensical to contend at the same time that a notification "dispute" exists. If it knew nothing of its predecessor's nonpublication request, then Arrow would have had no reason to provide notice.[2]

Arrow also argues the merits of the summary judgment motion by implying that the statutory remedy provided by Section 122(b)(2)(B)(iii) in some unexplained way diminishes or negates Spire's right to litigate. The factual record is replete with evidence that a violation has occurred and has not been remedied. Thus, Spire has the right to assert that Arrow abandoned the '198 patent and, in turn, that the suit is subject to dismissal. Spire is entitled to defend itself by claiming unenforceability and/or invalidity regardless of Arrow's statutory rights.[3]

---

[1] **No documents evidencing notification have been produced by Arrow in this litigation.**

[2] Arrow only filed a Petition to Revive the '198 patent with a Rescission of Previous Nonpublication Request after served with Spire's Motion for Summary Judgment.

[3] **Spire asserted the affirmative defense of patent invalidity in its Answer (Answer ¶ 9).**

## II. ARGUMENT

Arrow is relying solely on the doctrine of primary jurisdiction – a doctrine invoking judicial discretion.[4]  *See In re Columbia University Patent Litigation*, 330 F. Supp. 2d 12, 15 (D. Mass. 2004) (describing factors court can consider in exercising its discretionary power).  *See also NTP, Inc. v. Research in Motion*, 397 F. Supp. 2d 785 (E.D. Va. 2005) (denying stay pending reexamination of the patents by the PTO); *Medichen, S.A. v. Rolabo, S.L.*, 353 F.3d 928 (Fed. Cir. 2003); *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); 73 C.J.S. *Public Admin. Law & Proc*. § 76 (2005).  Significantly, "[t]he rationale of the doctrine of primary jurisdiction is *not concern for specific litigants*, but rather the notion that the agencies, with their special expertise, should have the initial opportunity to develop and administer their policies consistently." *United States Tour Operators Assoc. v. Trans World Airlines, Inc.*, 556 F.2d 126, 130 (2d Cir. 1977) (emphasis added).  Arrow is asking the Court to invoke this doctrine to resolve an issue well within the ken of this Court, a resolution that involves no over-arching policy decisions.  The summary judgment motion asks the Court to apply a statutory prohibition to a small universe of facts presenting a narrow question of fact and law.

Arrow directs the Court to three guiding factors:

(1) whether the agency determination lies at the heart of the task assigned to the agency by Congress; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court.

*Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co.*, **215 F.3d 195, 205 (1st Cir. 2000)**.  **These factors, applied to these circumstances, demonstrate that to stay a**

---

[4] **For the historical underpinnings of this doctrine see** *United States v. Radio Corp. of America*, **358 U.S. 334, 346–48 (1959).**

**dispositive motion and defer to a separate PTO process before acting is unnecessary and unwarranted.**

      A.    <u>The "Heart of the Task" Factor Weighs Against Granting Arrow's Motion to Stay.</u>

The first factor, "[w]hether the agency determination lies at the heart of the task assigned the agency by Congress," weighs against invoking the primary jurisdiction doctrine. *Pejepscot*, 215 F.3d at 205. Although the PTO has competence in this area, "[c]ompetence alone is not sufficient" to justify a court's abstention from judicial action. *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1363 (9th Cir. 1987). Additionally, competence is not exclusively reserved to the PTO. This Court is well versed in deciding matters of patent enforceability and invalidity and is "under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims." *NTP*, 353 F.3d at 787.

It is important to keep firmly in focus what is at the heart of this dispute – whether the '198 patent was abandoned, thereby rendering both the patent unenforceable *ab initio* and this lawsuit invalid *ab initio*. It is likewise important to remember that it was *Arrow's* (not Spire's) decision to initiate this suit prior to remedying any defects in it's patent with the PTO. Spire's motion questions *Arrow's right to be before this Court*. That question is not within the purview of the PTO. Additionally, Arrow points to no case law which addresses the retroactive effect of revival on this litigation. *See Urologix v. Prostalund AB*, 256 F. Supp. 2d 911, 915 (E.D. Wisc. 2003) ("[I]t is not clear that the PTO decision has any effect in ongoing litigation filed before the PTO issues its [revival] decision.").

B.  <u>Spire's Motion does not Require Agency Expertise to Unravel Intricate or Technical Facts.</u>

In exercising discretion here, the Court should consider "[w]hether agency expertise is required to unravel intricate, technical facts." *Pejepscot*, 215 F.3d at 205.  The facts here are both few and straightforward.  (See *supra* II.A.)  Arrow has made no showing that the facts in question are intricate and/or technical in nature.  These facts do not require specialized patent expertise to unravel.

Arrow asserts that PTO expertise is essential because, in its view, the "determinative issue" is whether the delay was "unintentional."  (Arrow Motion 4.)  Whether the delay was unintentional, or not, is hardly determinative.  The Court could well find that: Arrow failed to comply with 35 U.S.C. § 122(b)(2)(B)(iii); the '198 application was abandoned; the patent-in-suit was unenforceable when Arrow initiated this lawsuit; and the lawsuit must be dismissed.  The question of unintentional delay is only a collateral issue.  It controls whether the patent can be revived, which in turn, would affect whether Arrow has the opportunity to bring this lawsuit on a valid patent *in the future*.  Regardless of whether Arrow's abandonment was "unintentional," the Court can dismiss this case with the question of Arrow's delay to bear only on whether the dismissal is with or without prejudice.

In any event, the question of whether the delay was "unintentional" would not turn the case into something so difficult or technical that the Court ought to look elsewhere for an answer.  Intent questions arise all the time and are not specific to patent law.  Additionally, the Code of Federal Regulations offers ample guidance as to that issue:  "[S]ince an applicant would be 'seriously negligent' to submit a nonpublication request on filing, subsequently file a corresponding application in a foreign country, and then unintentionally fail to timely notify the Office that a corresponding application has been filed in a foreign country, the Office expects

few petitions to revive an application under the provisions of § 1.137(f)." Changes to Implement Eighteen-Month Publication of Patent Applications, 65 Fed. Reg.57,024, 57,045 (Sept. 20, 2000). *See also* (Spire Summ. J. Motion 7–8.)

In sum, no special PTO expertise is implicated. The facts are not of the intricate, technical character of concern to the doctrine. This Court is well equipped to deal with this issue, and is best positioned to so in the most timely manner.

    C.    <u>The Agency Decision Would Not Aid the Court in Its Consideration of the Summary Judgment Motion.</u>

The Court will not be aided by the PTO for the same reasons—lack of technicality and straightforward legal issues—stated above. The Court is being asked to decide something that is fundamentally a matter of law and most appropriately decided in the pending litigation.

    D.    <u>The Court Should Consider the Possibility of Unnecessary Delay When Reviewing Arrow's Motion to Stay.</u>

The *Pejepscot* factors are not the only relevant factors to a decision whether to invoke the primary jurisdiction doctrine. (Arrow Motion 4) (casting the factors as requirements). The United States Supreme Court recognizes that, "[n]o formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pacific R.R., Co.*, 352 U.S. 59, 64 (1956). *See also U.S. Public Interest Research Group v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 34 (1st Cir. 2003). Obviously, this doctrine does not look to an inflexible standard. Courts are, quite appropriately, entitled to consider what is best for a particular case. *See United States v. Culliton*, 328 F.3d 1074, 1082 (9th Cir. 2003) (considering the Congressional intent to imbue an administrative agency with total responsibility to resolve the particular issue in denying

application of the primary jurisdiction doctrine); *Atlantic Salmon*, 339 F.3d at 34 (considering whether reference to agency will "advance sound disposition of case" and failure to so refer will "impair the statutory scheme or undermine the agency"); *Washington State Dept. of Servs. for the Blind v. United States*, 58 Fed. Cl. 781, 786–87 (2003) (same).

Arrow proposes an approach that would inevitably add greatly to both time and costs that impact the litigation. Arrow wants its case to remain open as a new process is initiated. It is impossible to conjecture how long this separate process would take but, in the meantime, Arrow asks Spire to make extensive efforts to defend itself, disclose confidential competitive information to a competitor, expend costs which are on the verge of mounting rapidly as discovery and claim construction steps proceed, and shoulder the myriad of distractions and burdens associated with leaving this lawsuit open. Arrow suggests that litigation move forward and the parties undertake costly steps when, in fact, it may not be entitled to pursue this case at this time. Such significant time and cost implications should weigh heavily against staying Spire's summary judgment motion. "The decision to 'refer' an issue to an administrative agency '*must be* balanced against the potential for delay.'" *Palmer Foundry, Inc. v. Delta-Ha, Inc.*, 319 F. Supp. 2d 110, 113 (D. Mass. 2004) (emphasis added).

In its consideration of the important questions of unnecessary costs and burdens of leaving litigation open pending a decision by the PTO, this Court should keep in mind Arrow's admission that it would not let an adverse decision by the PTO stand. Baldly, Arrow asserts that the PTO will not necessarily be its last stop, instead telling the Court of appellate rights it would have within the agency should its Request for Revival be denied. Arrow's motion indicates it is thinking going beyond agency appeals – even "up through the United States Court of Appeals for the Federal Circuit and even the Supreme Court of the United States." (Arrow Motion 5.) The

Court in *NTP* found the possibility of a drawn out appellate process especially important in denying the Defendant's motion to stay. *NTP*, 397 F. Supp. 2d at 788. Spire urges this Court to be equally persuaded by Arrow's assertion of appellate rights and the great delay that will occur if Arrow exercises those rights.

This lawsuit should never have been filed. Now, caught litigating an invalid patent, Arrow still wishes actively to pursue the litigation with the Court deferring to a two-forum approach. The Court's opportunity to take control of this matter – by denying Arrow's motion to stay and ruling upon Spire's dispositive motion – represents far and away the best approach to sound judicial management in this case.

E. <u>The Briefing Schedule is Adequate</u>

**Arrow has ample time and opportunity to respond to Spire's summary judgment motion. Since Spire filed its motion for summary judgment, Arrow has both petitioned the PTO to revive the patent and filed its motion to stay. If Arrow can find time for such supplemental activities, surely it can find time to brief this relatively straightforward motion. In addition, Spire responded to Arrow's request for additional time (without knowing of any ulterior objectives) by offering to extend the time for claim construction briefing – and thereby free up time for this briefing, if time was truly needed. Arrow rejected that proposal giving no explanation as to why it could not work.**

**The motion is a dispositive one and, therefore, Spire urges this Court to consider the compromise offered by Spire to Arrow. Spire has accommodated the Passover holiday by granting an extension to Arrow with regard to the claim construction brief due on April 12, 2006. This is hardly a great disruption of the Scheduling Order and accommodates both parties. Since the filing of the motion to stay, several Spire lawyers have been actively**

**engaged, daily, addressing ongoing and growing lists of activities that complex litigation of this type requires. While, in the scheme of things, the subject request for a briefing extension may not seem long, it does impact, is apparently unnecessary, and is better addressed, if needed at all, through the proposal Spire made to Arrow, which does not impact on dispositive issues.**

## III. CONCLUSION

For the reasons outlined above, Spire respectfully requests that this Court deny Arrow's Motion to Stay Consideration of Defendant Spire Biomedical Inc.'s Motion for Summary Judgment Pending Review By the United States Patent and Trademark Office. Additionally, Spire requests that this Court not entertain Arrow's attempt to delay adjudication of Spire's summary judgment motion further by granting Arrow an extension to respond to the summary judgment motion.

Dated:  March 31, 2006

Respectfully submitted,

SPIRE BIOMEDICAL, INC.,
By its attorneys,

 /s/ Michelle Chassereau Jackson
Daniel J. Gleason (BBO # 194900)
Thomas J. Engellenner (BBO # 154460)
**Michelle Chassereau Jackson (BBO # 654825)**
NUTTER, McCLENNEN & FISH, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA   02210-2604
Telephone 617-439-2000
Facsimile 617-310-9000