UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

ARROW INTERNATIONAL, INC. and )
ARROW INTERNATIONAL INVESTMENT CORP., )
                                  )
    Plaintiffs,                   )
                                  )    C.A. No. 05-CV-10671-DPW
    v.                            )
                                  )
SPIRE BIOMEDICAL, INC.,           )
                                  )
    Defendant.                    )
_____)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES

Spire Biomedical, Inc. ("Spire") submits this memorandum in support of its motion to compel Arrow International, Inc. and Arrow International Investment Corp. (collectively "Arrow") to produce documents and answers. The bases of this motion are: (1) Arrow has failed to produce documents in areas where compromises have been reached through conferencing; (2) this failure is part of a greater delay strategy implemented by Arrow; and (3) Arrow unreasonably maintains sweeping and unjustified objections to an additional eight document requests and four interrogatories.

On December 7, 2005, Spire served discovery requests which Arrow responded to on January 26, 2006. Arrow asserted extensive objections and initially denied having obligations to produce *any* documents under twenty-seven—or more than half—of Spire's document requests. (Ex. 1.) Arrow at the same time refused to answer five (5) of Spire's fourteen (14) initial interrogatories. (Ex. 2.) The parties subsequently held two discovery conferences.[1] In

_____

[1] Spire counsel requested this conference on January 31, 2006. (Ex. 3.) Arrow would not conference with Spire before February 7, 2006. This unwarranted week-long delay is just one example of Arrow's overall refusal to

the spirit of compromise, Spire limited several requests with the understanding that Arrow

would promptly comply.[2]  Notwithstanding, Arrow has failed to produce documents under

Request Nos. 8, 10, 28, 29, 35, 43 and 45.  Additionally, the parties were not able to agree

on, and Arrow is still refusing to produce any information at all under, Request Nos. 4, 5, 26,

34, 36, 40, 41 and 45 and Interrogatory Nos. 1, 2, 8, 9 and 12.

I.    ARROW HAS NOT PRODUCED DOCUMENTS RESPONSIVE TO EIGHT OF
      SPIRE'S REQUESTS, THE SCOPE OF WHICH WERE AGREED TO IN
      CONFERENCE.

        Arrow has not produced any documents identified as responsive to Request Nos. 8, 10,

28, 29, 35, 43 and 44.  The parties both discussed these requests at length and agreed to the

scope of production nearly two months ago.  While the requests speak for themselves, they

concern:

- Meetings during which the subject matter of U.S. Patent 6,872,198 (filed Aug. 30, 2002) was discussed (No. 8);

- Communications concerning the licensing of the '198 patent (No. 10);

- Internal and external communications concerning the relevant patents[3] and this lawsuit (Nos. 28 and 29);[4]

- Design and development of products covered by the relevant patents (No. 35);

---

deal with discovery in this litigation in a timely manner.  The conferences were held on February 7 (continuing to February 8) and on March 7.

[2] *See* Spire Biomedical Inc.'s Summary of Resolutions Reached (Ex. 4).  *See also* communications between the parties following the discovery conferences (Ex. 5).

[3] The relevant patents include the '198 patent and its nuclear family.  The nuclear family of the '198 patent is a defined term in this litigation.  It includes: U.S. Patent Application No. 09/769,052 (filed Jan. 24, 2001); U.S. Patent No. 6,638,242 (filed Feb. 28, 2002); U.S. Patent Application No. 10/231,577 (filed Aug. 30, 2002); U.S. Patent Application No. 10/796,495 (filed March 9, 2004); and U.S. Patent Application No. 10/797,363 (filed March 10, 2004).

[4] Spire has yet to receive *any* documentation from Arrow evidencing *any* communications.  (*See* Request Nos. 8, 28 and 29.)  It is difficult to believe that Arrow has no letters, no e-mails or no notes documenting communications concerning licensing, the '198 patent or this lawsuit.  Far more likely, Arrow is withholding documents without basis.

- **The initial disclosures made by Arrow (No. 43);**
- **Arrow's allegations in the Complaint (No. 44).**

These documents are clearly relevant to this lawsuit, and Arrow does not dispute that fact. Nevertheless, Arrow has denied Spire of large categories of documents leaving Spire currently unable to prepare its defense.

## II.    ARROW'S GENERAL APPROACH TO THIS DISCOVERY HAS IMPEDED SPIRE FROM ASCERTAINING THE COMPLETENESS OF DISCOVERY.

Arrow may attribute its failure to produce under the above-mentioned eight requests to the fact that its piecemeal production of documents is not yet complete.  Arrow has made continuing promises of further production, which have proven empty, and time-and-time again has delayed discovery.  Excuses for this untimely production cannot fairly be blamed on the press of business.  One example of the deliberate nature of these delays is the indefensible assertion that Arrow has "at least thirty days to locate and produce documents" from the date the parties last discussed Arrow's objections.  The Federal Rules and Local Rules do not countenance such delay tactics.  Ironically, and tellingly, even that unjustified unilateral extension has *itself long expired.*

Although Spire appreciates the necessity of a staggered production in some instances, Arrow has mailed six separate and partial productions to Spire since February 3.  Some mailings have included as few as four documents.  This sporadic method of production has prevented Spire from determining whether the production has been completed as to certain requests and if, and when, further documentation may be forthcoming.  Arrow has also refused to respond to Spire's numerous requests for an updated discovery time-line and confirmation of completeness.  Spire, therefore, moves through this discovery period blind.

Moreover, Arrow has failed to provide Spire with a log to address Arrow's extensive claims of privilege.  The significance of privilege logs in this case is demonstrated, in part, by Arrow's assertion that three document requests elicit *only* privileged documents.  Spire is without information concerning documents to which Arrow purports privilege applies and, hence, is without information to test such claims.

## III.    ARROW'S BLANKET OBJECTIONS TO (1) FOUR INTERROGATORIES AND (2) AN ADDITIONAL EIGHT DOCUMENT REQUESTS ARE INDEFENSIBLE.

Arrow's general delay tactics are compounded by the unwarranted, blanket objections to Document Request Nos. 4, 5, 26, 34, 36, 40, 41 and 45 and Interrogatory Nos. 1, 2, 8 and 12.  These objections are an attempt to foreclose large areas of legitimate and necessary discovery.

### A.    The Flat Refusal to Comply With Document Request Nos. 4, 5 and 26 is an Attempt to Shield Information Relevant to Validity and Damage Issues.

Request Nos. 4, 5 and 26 seek documentation concerning communications and meetings between Spire and Arrow (and/or Diatek) at or prior to the time Spire was designing its own product.  First, discussions relating to the subject matter of the '198 patent are relevant to an invalidity or enforceability defense because they go (1) to whether Arrow (and/or Diatek) invented the subject matter of the '198 patent and (2) to whether the August 2002 patent filing was initiated with, or based on, knowledge on the part of Arrow (and/or Diatek) of Spire's own product plans.  Second, discussions about potential licensing opportunities are relevant, *inter alia*, to establishing a reasonable royalty rate should infringement be proved.

To address Arrow's assertion that the requests were overly broad, Spire offered to limit the request temporally (1998 through 2002) and by subject matter (to the relevant market of hemodialysis catheters).  Arrow still flatly objects to these requests.[5]

**B.      Arrow's Blanket Objection to Production and Failure to Locate Invention Documents Pursuant to Document Request No. 34 is Inexcusable.**

Spire has agreed to treat Request No. 34 as seeking documents concerning inventions of the patent-in-suit and its nuclear family, including but not limited to evidence of conception, designs, invention records, disclosures, drawings, inventors' notebooks, and memorandum. Invention documents are vital in a patent suit because they directly address invalidity and enforceability issues.  The lack of documentation in this area greatly impacts Spire's ability to prepare a complete defense.

On February 3, Arrow produced *one* single-page responsive document.  Arrow has since then refused to produce any additional documents and indicated that it may not even have other documents within its possession, custody or control.  It is nonsensical to believe such a rich and important subject would yield so little.  That Arrow—seeking to enforce its intellectual property and obtain a large recovery—has been able to locate only one page relating to the invention of the '198 patent speaks volumes.

**C.      Arrow's Objections (1) to Producing Documents Under Request Nos. 36, 41 and 45 and (2) to Answering Interrogatory Nos. 8, 9 and 12 Prevent Spire from Obtaining Documents Relevant to Invalidity and Damages.**

The parties do not dispute the relevance of documents and answers concerning the

---

[5] Currently the dispute is a purely academic one because, on March 7, Arrow took the position that it could not find the documentation it received form its predecessor, Diatek ("Diatek documents").  Arrow held on to that position for several weeks; however, recently it informed Spire that a few Diatek documents—though, coincidentally, not including the documents related to Spire's discovery requests—had been located.  If Arrow had expended efforts earlier in locating missing Diatek documentation rather than disputing the requests themselves

invalidity of the patent-in-suit or damages.  Nevertheless, Arrow objects—on a blanket basis—to Request Nos. 36, 41 and 45 and Interrogatory Nos. 8, 9 and 12, which address these very areas.

Request No. 36 seeks information concerning business development activities of products covered by the '198 patent and its nuclear family.  Arrow has asserted that it will produce documents concerning exclusively the '198 patent.  Arrow, however, maintains that if Spire seeks information on U.S. Patent 6,638,242 (filed Feb. 28, 2002) or other patents within the nuclear family, it will withhold *all* documents responsive to this request.  Information on development activities of products covered by *both* the '198 patent *and* the nuclear family of patents is relevant to invalidity—specifically, abandonment, lack of diligence in reduction to practice and inventorship.  It is also relevant to the defined market, lost profits and reasonable royalty rate issues.  The patents within this family are inextricably related and products under any of them would assist in resolving invalidity and damages issues.

Similarly, Request No. 41 elicits relevant invalidity and damages information.  Submissions to the FDA include documentation illustrating how Arrow (and/or Diatek) viewed its product (and patents) at the time of the submission.  Especially important are documents that might reveal (1) obviousness of the claims contained in the patents in light of predicate devices identified by Arrow to the FDA and (2) comparable products within the relevant market.

Arrow's objections to Request No. 45, which calls for documents concerning any Arrow board of directors or other management meetings relating to this lawsuit, the patent-in-

---

valuable time might have been saved.  Spire currently has no knowledge on what searches Arrow made initially and intends to make in the future with regard to this request and the Diatek documents.

suit and the nuclear family of patents, on privilege.  Arrow overlooks the possibility that non-privileged meetings occurred during which the '198 patent, or patents in the same nuclear family, were discussed.  Such discussions could address, for example, the validity of the patents, the strengths/weaknesses of the '198 patent, inventorship, research that led to the invention of the subject matter of the patent or strategic planning for filing, prosecuting, or enforcing the patent-in-suit.  Privilege is a discrete doctrine that needs to be applied to the specific communication or document in question.  Arrow utilizes the privilege objection here as a "broad brush" to excuse itself from searching for the documents themselves.[6]

Arrow similarly uses privilege to avoid identification of persons involved in the decisions relating to the application and prosecution of the patent-in-suit and its nuclear family under Interrogatory No. 9 (c).  Identification of these persons will lead to the discovery of relevant evidence regarding invalidity.  A privilege objection here is unwarranted and merely allows Arrow to avoid undertaking a search to make the necessary identifications.

Finally, Arrow refuses to answer Interrogatory Nos. 8 and 12.  Arrow's blanket objection to No. 8, seeking information on products sold by Arrow under the patents it owns (as well as patents it licenses), ignores the question's relevance to market analyses and reasonable royalty issues.  Arrow has also yet to identify products Arrow sells within the relevant market of hemodialysis catheters.  It has refused, as well, to identify, pursuant to Interrogatory No. 12, consultants contacted concerning the patent-in-suit and its nuclear family.  Spire's primary concern is to understand what, if any, consultants were used during

---

[6] If Arrow did uncover privileged responsive documents they should be indicated on its privilege log.  See *supra* Section II.

the prosecution of the patents and what opinions were solicited and/or rendered concerning their validity.

      D.      **Arrow Refuses to Provide Information Relevant to Its Compliance with this Discovery.**

Requests seeking information relevant to a party's compliance with discovery are standard in litigation.  Such requests are especially appropriate in this specific case because Arrow has not been forthcoming in providing documents or in informing Spire of the status of its searches.  Information on how documents are kept and whether Arrow completed a thorough search certainly would provide Spire with a more complete picture of Arrow's discovery.  Nevertheless, Arrow has unreasonably objected to Request No. 40 and Interrogatory Nos. 1 and 12.  Given the piecemeal production and Arrow's asserted "loss" of large volumes of documents, Arrow's refusal to provide this information is particularly suspect.

## CONCLUSION

Arrow now has delayed discovery for three months without reason and has refused to inform Spire of the status of its production.  Spire requests that the Court order Arrow to (1) produce documents responsive to Document Request Nos. 8, 10, 28, 29, 35, 43 and 44; (2) produce *all* documents responsive to requests that have elicited only partial production to date; (3) produce documents responsive to Document Request Nos. 4, 5, 26, 34, 36, 40, 41 and 45; (4) answer Interrogatory Nos. 1, 2, 8, 9 and 12; (5) provide Spire with a complete privilege log including the Bates range, date of document, author of document, recipient(s) of document, type of document, subject matter of document, and reason for withholding; and (6) pay

**defendant's reasonable attorneys fees and costs in filing this motion.  Spire also requests that this Court provide Spire with such other relief it deems just and appropriate.**

Dated:  April 7, 2006

Respectfully submitted,

SPIRE BIOMEDICAL, INC.,
By its attorneys,

  /s/ Michelle Chassereau Jackson
Daniel J. Gleason (BBO # 194900)
Thomas J. Engellenner (BBO # 154460)
**Michelle Chassereau Jackson (BBO # 654825)**
NUTTER, McCLENNEN & FISH, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA   02210-2604
Telephone 617-439-2000
Facsimile 617-310-9000

**1519780.1**

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ARROW INTERNATIONAL, INC., and
ARROW INTERNATIONAL INVESTMENT
CORP.,

                                Plaintiffs,

              v.

SPIRE BIOMEDICAL, INC.,

                            Defendant.

Civil Action No.: 05-10671 DPW

ECF Case

## ARROW INTERNATIONAL, INC. AND
## ARROW INTERNATIONAL INVESTMENT CORP.'S
## RESPONSES TO SPIRE BIOMEDICAL, INC.'S
## FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Arrow International, Inc., and Arrow International Investment Corp. ("Arrow"),

hereby responds to Spire Biomedical, Inc.'s ("Spire") First Request for the Production of

Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Rule

34.1 as follows:

### OBJECTIONS

1.    Words and phrases used in the requests will be interpreted in accordance

with their ordinary meanings and the definitions set forth in the Local Rules of this

Court.  In particular, Arrow objects to the definitions of "and," "or," "Plaintiff," "Arrow,"

"you," "your," "Spire," "Defendant," and including."

2.      Arrow objects to the instructions to the extent they vary or exceed the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court. In particular, instructions B, P, and Q are objected to.

3.      Arrow objects to producing information which is subject to the attorney-client privilege, attorney work product doctrine, joint defense privilege or any other privilege that may apply. Without waiving the above General Objections, and incorporating each of them by reference into each answer below, Arrow hereby responds more specifically to Defendant's individual Interrogatories as follows:

### RESPONSES

### Request No. 1.

All documents and/or communications identified in Arrow's Answers to "Spire's First Set of Interrogatories to Plaintiff Arrow."

### Response:

Arrow will produce documents responsive to this request.

### Request No. 2.

All documents and/or communications reviewed, consulted or in any way relied upon in responding to "Spire's First Set of Interrogatories to Plaintiff Arrow."

**Response:**

       Arrow objects to this request to the extent it seeks the disclosure of information protected by the attorney-client privilege and/or work product immunity.  Subject to this objection, Arrow will produce documents responsive to this request.

**Request No. 3.**

Documents sufficient to detail the organizational structure of Arrow and the relevant divisions, companies, subgroups, subsidiaries or affiliates of Arrow that manufacture, ship, bill, provide product support for, represent, sell, market, research, develop or otherwise deal with retroreflective sheeting products, including but not limited to organizational charts.

       **Response:**

       Arrow objects to this request as indefinite with respect to the term "retro reflective sheeting products" and as seeking information which is not relevant to the claims or defenses in this action.

**Request No. 4.**

All documents concerning communications between Spire and Arrow (and/or Diatek) from January 1998 to the present.

    **Response:**

        Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

**Request No. 5.**

All documents concerning each subject matter discussed at all meetings between Spire and Arrow.

    **Response:**

        Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

## Request No. 6.

All documents concerning the acquisition of Diatek by Arrow.

### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

## Request No. 7.

All documents concerning due diligence and legal opinions concerning the acquisition of Diatek by Arrow.

### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

330503.1                                    -5-

**Request No. 8.**

All documents concerning meetings during which the '198 Patent's technology was discussed, including without limitation meeting minutes, file memoranda, and notes.

**Response:**

Arrow objects to this request to the extent that it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request to the extent that the term "'198 Patent's technology" is vague and indefinite. Arrow still further objects to this request as being overly broad and burdensome. Arrow objects to this request as seeking information which not relevant to the claims or defenses in this action. The '198 Patent states that it "relates generally to medical instruments." The vast majority of Arrow's business is in medical instruments and Arrow carries on meetings on a daily basis discussing this technology.

**Request No. 9.**

All documents concerning the licensing or potential licensing of the '198 Patent's technology.

**Response:**

Arrow objects to this request to the extent that it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request to the extent that the term "'198 Patent's technology" is vague and indefinite. Arrow still further objects to this request as being overly broad and burdensome. Arrow objects to this request as seeking information which not relevant to the claims or defenses in this action.

**Request No. 10.**

All documents concerning communications with third parties concerning the licensing of the '198 Patent's technology.

**Response:**

Arrow objects to this request to the extent that it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request to the extent that the term "'198 Patent's technology" is vague and indefinite. Arrow still further objects to this request as being overly broad and burdensome. Arrow objects to this request as seeking information which not relevant to the claims or defenses in this action.

**Request No. 11.**

All documents concerning the research and development of each Spire product which Arrow contends competes with an Allegedly Infringing Product, including but not limited to product proposals, design notes, drawings, engineering drawings, patents, publications, technical reports, product comparisons, product specifications, change notices, test results, product evaluations by Arrow and others, service manuals, user instructions, progress reports and minutes of meetings that illustrate, describe, concern or refer to the conception, research, design, development, engineering, construction, manufacture, operation, theory of operation, structure, function, performance, testing, analysis or use.

**Response:**

None.

**Request No. 12.**

All documents concerning, on a product-by-product basis, the sale of each product of or licensed by Arrow that you contend competes with an Allegedly Infringing Product, including but not limited to sales revenues, sales volumes, profit margins, market profiles, pricing analyses, choice of price point, actual and potential customers, competing products, market share, definition and identification of the relevant market, impact known and suspected on Arrow revenue, profits, customer lists, analyses of customer needs, and competitors' market share in the relevant market.

**Response:**

Arrow objects to this request as overly broad and burdensome.
Subject to this objection, Arrow will produce documents sufficient to
determine Arrow's damages and the commercial success of the patented
invention.

**Request No. 13.**

All documents concerning any Arrow product for which you allege sales have
been lost due to an Allegedly Infringing Product, including but not limited to sales
volumes and receipts, dates of sales and marketing information.

**Response:**

Arrow objects to this request as overly broad and burdensome.
Subject to this objection, Arrow will produce documents sufficient to
determine Arrow's damages.

**Request No. 14.**

All documents concerning the marketing of any Arrow product you contend
competes with an Allegedly Infringing Product, including but not limited to catalogs,
brochures, press releases, advertisements, communications announcing the availability of

such products, samples and instruction manuals, booklets, marketing agreements, selling

agreements, advertising agreements, distribution agreements, market profiles and

market share.

### Response:

Arrow objects to this request as overly broad and burdensome.

Arrow will produce documents sufficient to determine Arrow's damages.

### Request No. 15.

All documents concerning products other than Arrow Products which you believe

compete or may compete with an Allegedly Infringing Product.

### Response:

Arrow objects to this request as seeking documents protected by the

attorney-client privilege and work product immunity.  Arrow further

objects to this request as seeking documents not relating to the claims or

defenses of this action.  Arrow still further objects to this request as overly

broad and burdensome.

### Request No. 16.

All documents concerning persons Arrow considers to be competitors in the market for hemodialysis catheters.

#### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

### Request No. 17.

All documents concerning the patent-in-suit and the applications therefor, including but not limited to issued patents, applications, file histories, publications, search reports, opinion, memoranda, communications, official actions and documents concerning reexaminations, reissues, protests, public use proceedings, technical reports, prosecution, infringement, possible infringement, validity and enforceability.

#### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or

defenses of this action.  Subject to these objections, Arrow will produce documents responsive to this request.

### Request No. 18.

All documents concerning the Wilson Family of Patents and the applications therefor, including but not limited to issued patents, applications, file histories, publications, search reports, opinion, memoranda, communications, official actions and documents concerning reexaminations, reissues, protests, public use proceedings, technical reports, prosecution, infringement, possible infringement, validity, and enforceability.

#### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity.  Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.  Subject to these objections, Arrow will produce documents responsive to this request.

### Request No. 19.

All documents concerning foreign patents and foreign patent applications related to the patent-in-suit and the Wilson Family of Patents or applications therefor, including

but not limited to issued patents, applications, file histories, publications, search reports, opinion, memoranda, communications, official actions and documents relating to reexaminations, reissues, protests, public use proceedings and technical reports.

### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Subject to these objections, Arrow will produce documents responsive to this request.

### Request No. 20.

All documents concerning opinions that Arrow either has requested or has received as to the validity, patentability and infringement of the Wilson Family of Patents, including without limitation the patent-in-suit.

### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

330503.1                                   -13-

**Request No. 21.**

All documents concerning an Allegedly Infringing Product including without limitation all documents concerning the Pourchez RetrO catheter.

### Response:

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Subject to these objections, Arrow will produce documents responsive to this request.

**Request No. 22.**

All prior art, patents or printed publications concerning the Wilson Family of Patents, including but not limited to any documents known to each individual associated with the filing and prosecution of a patent application that issued, directly or ultimately, into any of the patents-in-suit to be material to the patentability of any claim, whether the claim was present during the pendency of such an application or is present in Wilson Family of Patents as issued, whether or not such prior art, patents or printed publications were submitted to the United States Patent and Trademark Office and whether or not the prior art, patents or printed publications have an effective or publication date prior to the filing date of the Wilson Family of Patents or have thereon any publication date.

**Response:**

Arrow objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow further objects to this request as vague and ambiguous. Subject to these objections, Arrow will produce documents responsive to this request.

**Request No. 23.**

Documents sufficient to establish the date of invention for each and every claim, whether dependent or independent, asserted in the Wilson Family of Patents.

**Response:**

Arrow objects to this request to the extent it seeks production of documents protected by the attorney-client privilege and work product immunity. Subject to this objection, Arrow will produce documents responsive to this request.

**Request No. 24.**

All documents concerning any ownership interest, that has existed at any time, in the Wilson Family of Patents, including but not limited to assignments, security interests and licenses.

**Response:**

Arrow objects to this request to the extent it seeks documents
protected by the attorney-client privilege and work product immunity.
Arrow further objects to this request as seeking documents not relating to
the claims or defenses of this action.  Arrow still further objects to this
request as overly broad and burdensome.  Subject to these objections,
Arrow will produce documents responsive to this request.

**Request No. 25.**

All documents concerning products other than those associated with Spire that
Arrow claims or has identified as infringing upon the patent-in-suit and the Wilson
Family of Patents.

**Response:**

Arrow objects to this request as seeking documents protected by the
attorney-client privilege and work product immunity.  Arrow further
objects to this request as seeking documents not relating to the claims or
defenses of this action.

**Request No. 26.**

All documents concerning communications between Arrow and Spire concerning the Wilson Family of Patents, including without limitation the patent-in-suit, or this lawsuit.

### Response:

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

**Request No. 27.**

All documents concerning communications between Arrow and any third party relating to the patent-in-suit or the Wilson Family of Patents, including but not limited to the enforcement of the Wilson Family of Patents, the patent-in-suit, or this lawsuit.

### Response:

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to

the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

### Request No. 28.

All documents concerning communications within Arrow concerning the Wilson Family of Patents, the patent-in-suit, or this lawsuit.

#### Response:

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

### Request No. 29.

All documents concerning discussions, meetings and communications between Arrow and any customer, potential customer, competitor or other person concerning the [the] Wilson Family of Patents, including without limitation the patent-in-suit, this lawsuit, and any other lawsuit or administrative proceeding anywhere in the world involving the Wilson Family of Patents, the patent-in-suit or an Allegedly Infringing Product.

**Response:**

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome.

**Request No. 30.**

All financial statements concerning the activities of the divisions, subgroups, affiliates or other entities that are part of Arrow and that have any role in selling hemodialysis catheters.

**Response:**

Arrow objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow further objects to this request as merely broad and burdensome.

**Request No. 31.**

All documents concerning actions or proceedings, whether judicial or administrative, in which the validity and/or enforceability of the claim or claims

330503.1                                    -19-

contained in the Wilson Family of Patents, including without limitation the patent-in-suit, or any foreign patents corresponding to or claiming priority from the patent-in-suit (including without limitation the patentability of the invention claimed thereby) or the Wilson Family of Patents have been challenged, questioned or otherwise placed in issue, whether by way of affirmative claim, counterclaim, affirmative defense or otherwise.

### Response:

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome. Subject to these objections, Arrow will produce documents responsive to this request.

### Request No. 32.

All documents concerning testing of Arrow's products which utilize the '198 Patent's technology.

### Response:

Arrow objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow further objects to this request as overly broad and burdensome. Arrow still further objects to this request

to the extent that the term "'198 Patent's technology" is vague and
indefinite.

### Request No. 33.

All documents concerning opinions of counsel concerning the Wilson Family of
Patents, including without limitation the patent-in-suit.

#### Response:

Arrow objects to this request as seeking documents protected by the
attorney-client privilege and work product immunity. Arrow further
objects to this request as seeking documents not relating to the claims or
defenses of this action.

### Request No. 34.

All documents concerning the inventions of the patent-in-suit and the Wilson
Family of Patents, including but not limited to evidence of conception, designs, invention
records, disclosures, drawings, inventors' notebooks, memoranda, patentability
assessments, evaluations, engineering reports, development plans and operational
documentation as well as prosecution file histories, documents and communications
concerning the prosecution of the Wilson Family of Patents, including without limitation
the patent-in-suit.

330503.1                              -21-

**Response:**

Arrow objects to this request to the extent it seeks documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow still further objects to this request as overly broad and burdensome. Subject to these objections, Arrow will produce documents responsive to this request.

**Request No. 35.**

All documents concerning the development, design or redesign of products covered by the Wilson Family of Patents, including without limitation the patent-in-suit.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

**Request No. 36.**

All documents concerning the business development activities for products covered by the Wilson Family of Patents, including without limitation the patent-in-suit.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

**Request No. 37.**

All documents concerning the sales and marketing for products covered by the Wilson Family of Patents, including without limitation the patent-in-suit.

**Response:**

See response to Request No. 12.

**Request No. 38.**

All documents concerning any communications or statements made to competitors or other third parties concerning:

a.    this lawsuit;

b.     the patent-in-suit;

c.     the Wilson Family of Patents; and

d.     any Allegedly Infringing Product.

### Response:

See response to Request No. 29.

### Request No. 39.

All documents concerning Arrow's document retention policies between
January 1, 1998 and the present.

### Response:

Arrow objects to this request as seeking documents protected by the
attorney-client privilege and work product immunity.  Arrow further
objects to this request as seeking documents not relating to the claims or
defenses of this action.

### Request No. 40.

All communications concerning efforts to locate and preserve documents
responsive to these requests.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

**Request No. 41.**

All submissions to the FDA concerning products covered by the patent-in-suit or the Wilson Family of Patents.

**Response:**

Arrow objects to this request as seeking documents not relating to the claims or defenses of this action. Arrow further objects to this request as overly broad and unduly burdensome.

**Request No. 42.**

All documents on which Arrow will rely to prove liability and/or damages in this lawsuit.

**Response:**

Arrow objects to this request as seeking documents protected by work product immunity. Arrow further objects to this request as being premature. Subject to these objections, Arrow refers to the documents responsive to Requests Nos. 12 and 13.

**Request No. 43.**

All documents identified in Arrow's initial disclosures made pursuant to Rule 26 of the Federal Rules of Civil Procedure.

**Response:**

Arrow will produce documents responsive to this request.

**Request No. 44.**

All documents supporting Arrow's allegations in the Complaint.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Subject to this objection, Arrow will produce documents responsive to this request.

**Request No. 45.**

All documents concerning any Arrow board of directors meetings or other management meetings relating to this lawsuit and the Wilson Family of Patents, including without limitation the patent in-suit.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

**Request No. 46.**

All documents concerning the relationship between Arrow International, Inc. and Arrow International Investment Corp.

**Response:**

Arrow objects to this request as seeking documents protected by the attorney-client privilege and work product immunity. Arrow further objects to this request as seeking documents not relating to the claims or defenses of this action.

Kenneth P. George
Ira E. Silfin
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
Telephone:    (212) 336-8000
Facsimile:    (212) 336-8001

Attorneys for Plaintiffs

By: _____
              Ira E. Silfin

Dated:    New York, New York
             January 26, 2006

Of Counsel:

Brian E. Whiteley (BBO #555683)
C. Alex Hahn (BBO #634133)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
Telephone:  (617) 227-5725
Facsimile:  (617) 722-6003

330503.1                                -28-

## CERTIFICATE OF SERVICE

4.        The undersigned hereby certifies that a copy of the foregoing

ARROW INTERNATIONAL, INC. AND ARROW INTERNATIONAL INVESTMENT CORP.'S

RESPONSES TO SPIRE BIOMEDICAL, INC.'S FIRST REQUEST FOR THE PRODUCTION

OF DOCUMENTS, was served via first-class mail, postage pre-paid, upon counsel for

Spire Biomedical, Inc. as follows:

> Daniel J. Gleason
> Thomas J. Engellenner
> Michelle Chassereau Jackson
> NUTTER, McCLENNEN & FISH, LLP
> World Trade Center West
> 155 Seaport Boulevard
> Boston, MA  02210-2604

Rebecca R. Eisenberg

Dated:  New York, New York
        January 26, 2006

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ARROW INTERNATIONAL, INC., and
ARROW INTERNATIONAL INVESTMENT
CORP.,

      Plaintiffs,

      v.

SPIRE BIOMEDICAL, INC.,

      Defendant.

Civil Action No.: 05-10671 DPW

ECF Case

## ARROW INTERNATIONAL, INC. AND ARROW INTERNATIONAL INVESTMENT CORP.'S RESPONSES TO SPIRE BIOMEDICAL, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33 (and Local Rule 33.1), Plaintiffs Arrow International, Inc. and Arrow International Investment Corp., ("Arrow") hereby responds to Defendant Spire Biomedical, Inc.'s First Set of Interrogatories, as follows:

## OBJECTIONS

1.    All of the responses of Arrow to Defendant's Interrogatories are based upon the information and documentation that is currently available and specifically known to Arrow. The responses to the Interrogatories are made in a good faith effort to provide information currently known by Arrow, but Arrow specifically reserves the right to amend and/or supplement these answers and objections, pursuant to ongoing discovery, if and when additional facts or materials are discovered or ascertained. Arrow also specifically reserves the right to object to providing any information subsequently

discovered and, by answering these Interrogatories, expressly does not waive any such objections.

2.    Words and phrases used in the requests will be interpreted in accordance with their ordinary meanings and the definitions set forth in the Local Rules of this Court. In particular, Arrow objects to the definitions of "and," "or," "Plaintiff," "Arrow," "you," "your," "Spire," "Defendant," and including."

3.    Arrow objects to the instructions to the extent they vary or exceed the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court. In particular, instructions B, P, and Q are objected to.

4.    Arrow objects to producing information which is subject to the attorney-client privilege, attorney work product doctrine, joint defense privilege or any other privilege that may apply. Without waiving the above General Objections, and incorporating each of them by reference into each answer below, Arrow hereby responds more specifically to Defendant's individual Interrogatories as follows:

## RESPONSES

### Interrogatory No. 1:

Identify each person who assisted in the preparation of your responses to these Interrogatories and Requests for Production.

### Response:

Arrow objects to this interrogatory as seeking information which is not relevant to the claims or defenses in this action. Arrow further objects

to this request to the extent it seeks information protected by attorney-client privilege and work product immunity.

## Interrogatory No. 2:

Identify each person having personal knowledge of the facts alleged in the Complaint, and state the basis of that knowledge.

### Response:

Arrow objects to this interrogatory as overly broad and burdensome, seeking information which is not relevant to the claims or defenses in this action, and seeking information protected by attorney-client privilege and work product immunity. The facts alleged in the complaint include, for example, the business addresses of the parties and the existence of a United States Patent. Numerous individuals have knowledge of such facts. Subject to these objections, Arrow refers to its initial disclosures for the identification of individuals.

## Interrogatory No. 3:

Identify all prior art known to Arrow relating to the patent-in-suit and the Wilson Family of Patents.

**Response:**

Arrow objects to this request as overly broad and burdensome and seeking information not relevant to the claims or defenses in this action. Only United States Patent No. 6,872,198 is at issue in this case; none of the other patents and patent applications in Spire's definition of the "Wilson Family of Patents" are at issue. Subject to this objection, Arrow identifies the following, without admitting that any of these references are legally prior art:

| | U.S. Patent No. | Issue Date | Inventor(s) |
|---|---|---|---|
| (a) | 4,134,402 | 01/1979 | Mahurkar |
| (b) | 4,299,228 | 11/1981 | Peters |
| (c) | 4,327,722 | 05/1982 | Groshong et al. |
| (d) | 4,432,752 | 02/1984 | Marlon |
| (e) | RE31,873 | 04/1985 | Howes |
| (f) | 4,453,928 | 06/1984 | Steiger |
| (g) | 4,543,087 | 09/1985 | Sommercorn et al. |
| (h) | 4,568,329 | 02/1986 | Mahurkar |
| (i) | 4,619,643 | 10/1986 | Bai |
| (j) | 4,623,327 | 11/1986 | Mahurkar |
| (k) | 4,643,711 | 02/1987 | Bates |
| (l) | 4,675,004 | 06/1987 | Hadford et al |
| (m) | 4,681,122 | 07/1987 | Winters et al. |
| (n) | 4,682,978 | 07/1987 | Martin |
| (o) | 4,692,141 | 09/1987 | Mahurkar |
| (p) | 4,772,268 | 09/1988 | Bates |
| (q) | 4,772,269 | 09/1988 | Twardowski et al. |
| (r) | 4,808,155 | 02/1989 | Mahurkar |
| (s) | 4,832,687 | 05/1989 | Smith, III |
| (t) | 4,895,561 | 01/1990 | Mahurkar |
| (u) | 5,053,003 | 10/1991 | Dadson et al. |
| (v) | 5,053,004 | 10/1991 | Markel et al. |
| (w) | 5,053,023 | 10/1991 | Martin |
| (x) | 5,059,170 | 10/1991 | Cameron |
| (y) | 5,106,368 | 04/1992 | Uldall et al. |

| | | | |
|---|---|---|---|
| (z) | 5,129,891 | 07/1992 | Young |
| (aa) | 5,171,227 | 12/1992 | Twardowski |
| (bb) | 5,190,520 | 03/1993 | Fenton, Jr. et al. |
| (cc) | 5,312,337 | 05/1994 | Flaherty et al. |
| (dd) | 5,334,185 | 08/1994 | Giesy et al. |
| (ee) | 5,342,386 | 08/1994 | Trotta |
| (ff) | 5,360,397 | 11/1994 | Pinchuk |
| (gg) | 5,380,276 | 01/1995 | Miller et al. |
| (hh) | 5,399,168 | 03/1995 | Wadsworth, Jr., et al. |
| (ii) | 5,405,320 | 04/1995 | Twarorski et al. |
| (jj) | 5,417,668 | 05/1995 | Setzer et al. |
| (kk) | 5,423,768 | 06/1995 | Folden |
| (ll) | 5,431,661 | 07/1995 | Koch |
| (mm) | 5,472,432 | 12/1995 | Martin |
| (nn) | 5,509,897 | 04/1996 | Twardowski et al. |
| (oo) | 5,558,635 | 09/1996 | Cannon |
| (pp) | 5,599,328 | 02/1997 | Stevens |
| (qq) | 5,624,413 | 04/1997 | Markel et al. |
| (rr) | 5,632,729 | 05/1997 | Cai et al. |
| (ss) | 5,637,102 | 06/1997 | Tolkoff et al. |
| (tt) | 5,685,867 | 11/1997 | Twardowski |
| (uu) | 5,704,915 | 01/1998 | Melsky et al. |
| (vv) | 5,718,678 | 02/1998 | Fleming, III |
| (ww) | 5,743,873 | 04/1998 | Cai et al. |
| (xx) | 5,772,643 | 06/1998 | Howell et al. |
| (yy) | 5,776,111 | 07/1998 | Tesio |
| (zz) | 5,797,869 | 08/1998 | Martin et al. |
| (aaa) | 5,807,311 | 09/1998 | Palestrant |
| (bbb) | 5,876,366 | 03/1999 | Dykstra et al. |
| (ccc) | 5,944,732 | 08/1999 | Raulerson et al. |
| (ddd) | 5,947,953 | 09/1999 | Ash et al. |
| (eee) | 5,989,206 | 11/1999 | Maginot |
| (fff) | 5,989,213 | 11/1999 | Maginot |
| (ggg) | 6,001,079 | 12/1999 | Pourchez |
| (hhh) | 6,033,382 | 03/2000 | Basta |
| (iii) | 6,074,374 | 06/2000 | Fulton |
| (jjj) | 6,086,555 | 07/2000 | Eliasen et al. |
| (kkk) | 6,113,572 | 09/2000 | Gailey et al. |
| (lll) | 6,156,016 | 12/2000 | Maginot |
| (mmm) | 6,190,349 | 02/2001 | Ash et al. |
| (nnn) | 6,190,371 | 02/2001 | Maginot et al. |
| (ooo) | 6,206,849 | 03/2001 | Martin et al. |
| (ppp) | 6,293,927 | 09/2001 | McGuckin, Jr. |
| (qqq) | 6,342,120 | 01/2002 | Basta |
| (rrr) | 6,428,513 | 08/2002 | Abrahamson |

| (sss) | 6,585,705 | 07/2003 | Maginot et al. |
| (ttt) | 6,638,242 | 10/2003 | Wilson et al. |
| (uuu) | 6,682,498 | 01/2004 | Ross |
| (vvv) | 6,682,519 | 01/2004 | Schon |
| (www) | 6,695,832 | 02/2004 | Schon et al. |
| (xxx) | 6,749,574 | 06/2004 | O'Keefe |
| (yyy) | 6,814,718 | 11/2004 | McGuckin |

| | **U.S. Publication No.** | **Published** | **Inventor(s)** |
| --- | --- | --- | --- |
| (zzz) | 2001/0041857 | 11/2001 | Sansoucy |
| (aaaa) | 2003/0153898 | 08/2003 | Schon et al. |
| (bbbb) | 2003/0088213 | 05/2003 | Schweikert et al. |

| | **Foreign Patent No.** | **Published** | **Inventor(s)** |
| --- | --- | --- | --- |
| (cccc) | WO 9722374 | 06/1997 | Abrahamson |

### Other Publications

(dddd)    Instructions for Use (not dated) for Infuse-a-Cath Polyurethane Central Venous Catheter; believed to have been packaged with product believed to have been sold in the United States before Jan. 2000.

(eeee)    Pictures of device believed to be partial sample of a product believed to have been sold in the United States before Jan. 2000 with the Polycath and/or Infuse-a-Cath Instructions for Use.

(ffff)    Copending U.S. Appl. No. 10/251,411; entitled Multi-Lumen Catheter with Attachable Hub, filed Sep. 20, 2002.

(gggg)    Copending U.S. Application No. 10/231,577; entitled Multi-Lumen Catheter with Integrated Connector, filed Aug. 30, 2002.

(hhhh)    Copending U.S. Appl. No. 10/251,384; Apparatus and Method for Reverse Tunneling a Multi-Lumen Catheter in a Patient, filed Sep. 20, 2002.

(iiii)    Copending U.S. Appl. No. 10/612,532; entitled Multi-Lumen Catheter with Attachable Hub, filed Jul. 1, 2003.

(jjjj)    Abandoned U.S. Appl. No. 10/086,033; entitled Multi-Lumen Catheter with Attachable Hub, filed Jan. 24, 2001.

(kkkk)    Believed to be an unpublished sketch of a conception by Dr. John Frusha; date of sketch believed to be Jun. 24, 1997.

(llll)        Instructions For Use For Diatek Cannon Catheter Product First Sold
In United States Sep. 2001.

**Interrogatory No. 4:**

Separately for each claim of the patent-in-suit for which Arrow believes is

infringed by Spire, identify the Spire product(s) (e.g., by model number or trade name)

which Arrow believes is used to infringe each such claim, explain in detail the bases for

Arrow's belief (including an identification of the portions of the Spire products(s) that

allegedly correspond to each element of the claims), as well as how Spire induces

infringement or contributes to infringement of the claim, including Arrow's contention

that Spire willfully infringes and Spire will continue to infringe in the future and identify

all documents which refer to or relate to the bases for Arrow's belief.

**Response:**

Arrow objects to this interrogatory to the extent it seeks the

disclosure of information protected by attorney-client privilege and work

product immunity.  Arrow further objects to this interrogatory to the extent

it seeks information which is subject to disclosure pursuant to the

Scheduling Order.  Subject to these objections, Arrow responses as follows:

Spires induces infringement of and contributes to the infringement

of the '198 Patent by manufacturing and selling a product which is

intended to be used in accordance with the patented method.  Spire further

330573.1                                    -7-

induces and contributes to infringement by providing step-by-step instructions on how to practice the patented method. Spire has done this with knowledge of the '198 Patent. Based on Spire's contention interrogatory answers, Spire has no valid defense, yet Spire continues to contribute to and induce the infringement of the '198 Patent.

## Interrogatory No. 5:

Separately for each claim of the patent-in-suit for which Arrow believes is infringed by Spire, identify the Arrow product(s) (e.g., by model number or trade name), the use of which Arrow believes is covered by each such claim, explain in detail the bases for Arrow's belief (including an identification of the portions of the Arrow products(s) that allegedly correspond to each element of the claims), and explain how such product(s) use is covered by the claim and identify all documents which refer to or concern the bases for Arrow's belief.

### Response:

None.

## Interrogatory No. 6:

State the basis for Arrow's contention that "[d]efendant has made and is making unlawful gains and profits from its inducement infringement, and/or contributory

infringement of the '198 Patent and had thereby deprived and continues to deprive
Plaintiffs of rights and remunerations which would have accrued to them but for
Defendant's conduct."

### Response:

      Spire's sales of the Pourchez RetrO have been made without license.
Therefore, Arrow has been deprived of its right to exclude others from
practicing the method claimed in the '198 Patent. Further, Arrow has been
deprived of sales of chronic hemodialysis catheters as a result of Spire's
acts. Arrow has also been deprived of royalties to which it would be
entitled had it chosen to license the patented method.

### Interrogatory No. 7:

      Identify all Arrow products under development that will compete with the
Allegedly Infringing Product as well as the market for each such product and, separately
for each claim of the patent-in-suit for which Arrow believes is infringed by Spire,
explain in detail the bases for Arrow's belief (including an identification of the portions
of the Arrow products(s) that allegedly correspond to each element of the claims) that
the use of such product(s) under development will be covered by the claim.

**Response:**

        Arrow objects to this interrogatory as seeking information which is not relevant to the claims and defenses in this action. Arrow further objects to this interrogatory as vague and ambiguous.

**Interrogatory No. 8:**

        For every hemodialysis catheter product that Arrow has made, used or sold from and after March 29, 2005, please provide the following information on a product by product basis:

(a)    the product's construction and name;

(b)    the date of its first introduction to the marketplace;

(c)    the date it was offered for sale;

(d)    on a month-by-month basis, the dollar amount and number of units of the product sold;

(e)    on a month-by-month basis, the revenues received by Arrow for sales of the product;

(f)    identify the associated documents;

(g)    identify each person who has purchased the product and the number(s) of product purchased;

(h)    identify persons whom Arrow views as competitors with respect to the product; and

(i)    provide the approximate market share of Arrow and each such competitor.

**Response:**

With respect to (f), Arrow objects to this interrogatory as vague and ambiguous. With respect to (g), Arrow objects to this interrogatory as seeking information which is overly broad and burdensome and not relevant to the claims and defenses in this action. With respect to the remainder of the interrogatory, pursuant to Fed. R. Civ. P. 33(d), Arrow will produce documents from which the answer to these subparts can be obtained.

**Interrogatory No. 9:**

Separately for each patent of the Wilson Family of Patents, including without limitation the patent-in-suit, identify:

(a) each person involved in the conception or development of the invention(s) claimed or disclosed in the patent or pending application;

(b) each attorney involved in the prosecution of each member of the Wilson Family of Patents, and describe his or her role in such prosecution;

(c) any other person involved in the decisions relating to the application and prosecution of each member of the Wilson Family of Patents, and describe his or her role.

330573.1                                    -11-

**Response:**

Arrow objects to this interrogatory as overly broad and burdensome and seeking information which is not relevant to the claims and defenses.

With respect to the '198 Patent, Arrow responds as follows:

(1) Jon S. Wilson
965 Avon Road
Winston-Salem, North Carolina  27104

(2) Carl M. Fleming
1911 S.W. Wood Duck Lane
Palm City, Florida  34990

(3) Kenneth T. Cassidy
866 Farmington Road
Mocksville, North Carolina  27028

(4) Ronald D. Boyd
1912 West Hampton Point
Statesboro, Georgia  30458

(5) Gary S. Fleming
428 S. W. Squire Johns Lane
Palm City, Florida  34990

(b) In addition to the objection to the entire interrogatory, Arrow objects to this subpart as seeking information which is not relevant to the claims or defenses in this action. Arrow further objects to this interrogatory to the extent it seeks information which is protected by the attorney-client privilege. Subject to these objections, pursuant to Fed. R. Civ. P. 33(d), Arrow will produce documents from which the answer to this subpart may be obtained.

(c) In addition to the objection to the entire interrogatory, Arrow
objects to this subpart as seeking information which is not relevant to the
claims or defenses in this action.  Arrow further objects to this
interrogatory to the extent it seeks information which is protected by the
attorney-client privilege.

**Interrogatory No. 10:**

Identify each lawsuit that has involved Wilson Family of Patents, including
without limitation the patent-in-suit.

**Response:**

Arrow objects to this interrogatory as overly broad and burdensome
and seeking information which is not relevant to the claims and defenses.
With respect to the '198 Patent, Arrow identifies this lawsuit.

**Interrogatory No. 11:**

Identify communications with all third parties notified of any potential
infringement of any of the Wilson Family of Patents, including without limitation the
patent-in-suit.

**Response:**

Arrow objects to this interrogatory as overly broad and burdensome and seeking information which is not relevant to the claims and defenses. With respect to the '198 Patent, Arrow identifies the communications between Arrow, and its counsel, and the defendant, and its counsel, in this lawsuit.

**Interrogatory No. 12:**

Identify all consultants Arrow contacted concerning the Wilson Family of Patents, including without limitation the patent-in-suit.

**Response:**

Arrow objects to this interrogatory as overly broad and burdensome and seeking information which is not relevant to the claims and defenses. Arrow further objects to this interrogatory as seeking the disclosure of information protected by the attorney-client privilege and/or work product immunity.

**Interrogatory No. 13:**

Identify each person involved in the acquisition of Diatek by Arrow and describe each person's activities with respect to that acquisition.

330573.1                                -14-

**Response:**

Arrow objects to this interrogatory as overly broad and burdensome and seeking information which is not relevant to the claims and defenses.

**Interrogatory No. 14:**

Identify all communications you have had with Diatek and/or Spire concerning the technology covered by the Wilson Family of Patents, including without limitation the patent-in-suit.

**Response:**

With respect to communications between Arrow and Diatek, Arrow objects to this interrogatory as overly broad and burdensome and seeking information which is not relevant to the claims and defenses. Arrow further objects to this request to the extent it seeks information protected by the attorney-client privilege.

With respect to communications between Arrow and Spire, Arrow objects to this request as seeking information of which Spire already is in possession.

ARROW INTERNATIONAL, INC.

By: _____
Gregory S. Haas, Vice President
Research and Development,
Critical Care

As to Objections:

Brian E. Whiteley (BBO #555683)
C. Alex Hahn (BBO #634133)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, Massachusetts 02110
Telephone:    (617) 227-5725
Facsimile:    (617) 722-6003

Kenneth P. George
Ira E. Silfin
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
Telephone:    (212) 336-8000
Facsimile:    (212) 336-8001

By: _____
Ira E. Silfin

Dated:    January 26, 2006

330573.1                              -16-

STATE OF PENNSYLVANIA )
                                            )ss:
COUNTY OF __Berks__ )

BEFORE ME, the undersigned authority, personally appeared
Gregory S. Haas, who, being by me first duly sworn, on oath, deposes and says that the
foregoing answers to interrogatories are true and correct to the best of his/her
knowledge and belief and that he/she has read the answers to interrogatories and knows
the contents thereof.

_____

SWORN TO AND SUBSCRIBED before
me, this __26__ day of January, 2006.

_____
Notary Public

My Commission Expires:

__Dec. 30, 2006__

Notarial Seal
Kathleen S. Wetzel, Notary Public
City Of Reading, Berks County
My Commission Expires Dec. 30, 2006
Member, Pennsylvania Association Of Notaries

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing ARROW

INTERNATIONAL, INC. AND ARROW INTERNATIONAL INVESTMENT CORP.'S

RESPONSES TO SPIRE BIOMEDICAL, INC.'S FIRST SET OF INTERROGATORIES, was

served via first-class mail, postage pre-paid, upon counsel for Spire Biomedical, Inc. as

follows:

> Daniel J. Gleason
> Thomas J. Engellenner
> Michelle Chassereau Jackson
> NUTTER, McCLENNEN & FISH, LLP
> World Trade Center West
> 155 Seaport Boulevard
> Boston, MA  02210-2604

Rebecca R. Eisenberg

Dated:  New York, New York
January 26, 2006

# EXHIBIT 3

**SPIRE BIOMEDICAL, INC.'S SUMMARY OF RESOLUTIONS REACHED
REGARDING PLAINTIFFS' OBJECTIONS TO SPIRE'S DOCUMENT REQUESTS
AND INTERROGATORIES**

## I.  DOCUMENT REQUESTS

### REQUEST NO. 1

No change.

### REQUEST NO. 2

No change.

### REQUEST NO. 3

Documents sufficient to detail the organizational structure of Arrow and the relevant divisions, companies, subgroups, subsidiaries or affiliates of Arrow that manufacture, ship, bill, provide product support for, represent, sell, market, research, develop or otherwise deal with ~~retroflective sheeting products~~ *retrograde catheter products*, including but not limited to organization charts.

### REQUEST NO. 4

No resolution.

### REQUEST NO. 5

No resolution.

### REQUEST NO. 6

No change.

### REQUEST NO. 7

No change.

### REQUEST NO. 8

All documents concerning meetings during which the ~~'198 Patent's technology~~ *subject matter of the '198 patent—that is, what was claimed or could have been claimed as new—* was discussed, including without limitation meeting minutes, file memoranda, and notes.

**REQUEST NO. 9**

All documents concerning the licensing or potential licensing of the ~~'198 Patent's technology~~ *subject matter of the '198 patent*.

**REQUEST NO. 10**

All documents concerning communications with third parties concerning the ~~'198 Patent's technology~~ *subject matter of the '198 patent*.

**REQUEST NO. 11**

All documents concerning the research and development of each ~~Spire~~ *Arrow* product which Arrow contends competes with an Allegedly Infringing Product, including but not limited to product proposals, design notes, drawings, engineering drawings, patents, publications, technical reports, product comparisons, product specifications, change notices, test results, product evaluations by Arrow and others, service manuals, user instructions, progress reports and minutes of meetings that illustrate, describe, concern or refer to the conception, research, design, development, engineering, construction, manufacture, operation, theory of operation, structure, function, performance, testing, analysis or use.

Production under this request will be deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 12**

No change. Production under this request will be deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 13**

No change. Production under this request will be deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 14**

No change. Production under this request will be deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 15**

All documents *(limited primarily to marketing information)* concerning products other than Arrow products which you believe compete or may compete with an Allegedly Infringing Product. *This request calls for "competitive intelligence."*

**REQUEST NO. 16**

All documents ~~concerning~~ *discussing or analyzing* persons who ~~Arrow considers to be competitors in the market for hemodialysis catheters~~ *represent, or who Arrow believes represent, competition in the market for chronic hemodialysis catheters and which concern that market.* "

Production under this request will be deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 17**

No change.

**REQUEST NO. 18**

No change.

**REQUEST NO. 19**

No change.

**REQUEST NO. 20**

No change.

**REQUEST NO. 21**

No change.

**REQUEST NO. 22**

No change.

**REQUEST NO. 23**

Documents sufficient to establish the date of invention for each and every claim, whether dependent or independent, asserted in the ~~Wilson Family of Patents~~ *the '198 patent and its nuclear family—U.S. Patent Application No. 09/769,052 (filed Jan. 24, 2001); U.S. Patent No. 6,638,242 (filed Feb. 28, 2002); U.S. Patent Application No. 10/231,577 (filed Aug. 30, 2002); U.S. Patent Application No. 10/796,495 (filed March 9, 2004); and U.S. Patent Application No. 10/797,363 (filed March 10, 2004).*

**REQUEST NO. 24**

All documents concerning any ownership interest, that has existed at any time, in the ~~Wilson Family of Patents~~ *'198 patent and its nuclear family*, ~~including but not limited to assignments, security interests and licenses~~.

**REQUEST NO. 25**

No change.

**REQUEST NO. 26**

No resolution.

**REQUEST NO. 27**

All documents concerning communications between Arrow and any third party relating to the patent-in-suit or the ~~Wilson Family of Patents~~ *nuclear family*, including but not limited to the enforcement of the ~~Wilson Family of Patents~~ *nuclear family*, the patent-in-suit or this lawsuit.

**REQUEST NO. 28**

All documents concerning communications within Arrow concerning the ~~Wilson Family of Patents~~ *nuclear family of the '198 patent*, the patent-in-suit, or this lawsuit.

**REQUEST NO. 29**

All documents concerning discussions, meetings and communications between Arrow and any customer, potential customer, competitor or other person concerning the ~~Wilson Family of Patents~~ *'198 patent and its nuclear family*, including without limitation the patent-in-suit, this lawsuit, and any other lawsuit or administrative proceeding anywhere in the world involving the ~~Wilson Family of Patents~~ *'198 nuclear family*, the patent-in-suit or an Allegedly Infringing Product.

**REQUEST NO. 30**

All financial statements concerning the activities of the divisions, subgroups, affiliates or other entities that are part of Arrow and that have any role in selling hemodialysis catheters *from January 1, 2004 until March 5, 2005 if Arrow does not seek lost profits*.

**REQUEST NO. 31**

No change.

**REQUEST NO. 32**

No change.

**REQUEST NO. 33**

All documents concerning opinions of counsel concerning the ~~Wilson Family of Patents, including without limitation the patent in suit~~ *'198 patent and its nuclear family*.

**REQUEST NO. 34**

No resolution.

**REQUEST NO. 35**

All documents concerning the development, design or redesign of products covered by the ~~Wilson Family of Patents, including without limitation the patent in suit~~ *'198 patent and its nuclear family*.

**REQUEST NO. 36**

No resolution.

**REQUEST NO. 37**

No change.  Production under this request were deferred until Arrow informs Spire of whether it will seek lost profits.

**REQUEST NO. 38**

All documents concerning any communications or statements made to competitors or other third parties concerning:
     a.     this lawsuit;
     b.     the patent-in-suit;
     c.     the ~~Wilson Family of Patents~~ *'198 nuclear family*; and
     d.     any Allegedly Infringing Product.

**REQUEST NO. 39**

All documents concerning Arrow's *marketing and engineering* document retention policies between January 1, 1998 and the present.

**REQUEST NO. 40**

No resolution.

**REQUEST NO. 41**

No resolution.

**REQUEST NO. 42**

No change.

**REQUEST NO. 43**

No change.

**REQUEST NO. 44**

No change.

**REQUEST NO. 45**

No resolution.

**REQUEST NO. 46**

No change.

## II. INTERROGATORIES

**INTERROGATORY NO. 1**

No resolution.

**INTERROGATORY NO. 2**

No resolution.

**INTERROGATORY NO. 3**

Identify all prior art known to Arrow relating to the patent-in-suit and ~~the Wilson Family of Patents~~ *its nuclear family*.

**INTERROGATORY NO. 4**

No change.

- 6 -

## INTERROGATORY NO. 5

No change.

## INTERROGATORY NO. 6

No change.  Further answers were deferred until Arrow informs Spire of whether it will seek lost profits.

## INTERROGATORY NO. 7

No change.  Further answers were deferred until Arrow informs Spire of whether it will seek lost profits.

## INTERROGATORY NO. 8

No resolution.

## INTERROGATORY NO. 9

No resolution.

## INTERROGATORY NO. 10

Identify each lawsuit that has involved ~~Wilson Family of Patents, including without limitation the patent in suit~~ *the '198 patent and its nuclear family*.

## INTERROGATORY NO. 11

No change.

## INTERROGATORY NO. 12

No resolution.

## INTERROGATORY NO. 13

No change. Arrow will answer by using Fed. R. Civ. P. 33(d).

## INTERROGATORY NO. 14

No change.  Arrow will answer by using Fed. R. Civ. P. 33(d).

1519763.1

# EXHIBIT 4

## Heather Repicky - Discovery Conference et al

| | |
|---|---|
| **From:** | Daniel Gleason |
| **To:** | isilfin@arelaw.com |
| **Date:** | 2/3/2006 2:19 PM |
| **Subject:** | Discovery Conference et al |
| **CC:** | <bwhiteley@swsllp.com>;  reisenberg@arelaw.com |

Ira:

We will plan to conference your discovery responses to us at the earliest time you've offered, Tues, 2/7, 11:00 -1:30.  If there is time after our conference, we will conference in this same slot over whatever further issues you wish to discuss about our discovery responses to you.  If not, we will schedule another time with you.

As you know, we asked for a conference on 1/31.  Because of the discovery deadlines, it is unfortunate that you cannot do so sooner than 2/7, but you've made it clear that there is no room for discussing earlier alternatives, so we'll go with that.

A few other issues that can be addressed prior to Tuesday:  As for the reponsive documents that you have ready, please send to us for Monday delivery.  If there are privileged documents being witheld as part of this production, please provide a privlege log.  Our documents were overnighted to you for delivery today; we will provide our privilege log to you today.  As to whether our document production is complete, I am told that the searches are done and the responsive documents located are included.  If others turn up, we will, of course, supplement when they are located.

As a reminder:  please copy Michelle on your emails to me.


DAN

Daniel J. Gleason, Esq.
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2604
Phone:(617) 439-2233
Fax:     (617=310-9233

This Electronic Message contains information from the law firm of Nutter, McClennen & Fish, LLP, which may be privileged.  The information is intended to be for the use of the addressee only.  If you are not the addressee, note that any disclosure, copy, distribution or use of the contents of this message is prohibited.

# EXHIBIT 5

# AMSTER ROTHSTEIN & EBENSTEIN LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016

Main  212 336 8000
Fax   212 336 8001
Web   www.arelaw.com

**Partners**
Morton Amster
Jesse Rothstein (1934 - 2003)
Daniel Ebenstein
Philip H. Gottfried
Michael J. Berger
Neil M. Zipkin
Anthony F. Lo Cicero
Kenneth P. George
Abraham Kasdan, Ph.D.
Ira E. Silfin
Chester Rothstein
Craig J. Arnold
Kenneth M. Bernstein
Joseph M. Casino

**Senior Counsel**
Charles R. Macedo
Mark J. Rosenberg
Michael V. Solomita

**Associates**
Patrick Boland*
John S. Economou
Holly Pekowsky
Michael P. Kenney
Marion P. Metelski
Max Vern
Karl J. Kolbinger

Brian A. Comack
Richard S. Mandaro
Marc J. Jason
Elie H. Gendloff, Ph.D.
David Mitnick
Charles W. Rath
David A. Boag
Karen J. Bernstein
Matthieu Hausig
Jung S. Hahm
Reiko Kaji
Alan D. Miller, Ph.D.
Hsin-Hsin (Ginger) Liu

John A. Lepore
Norajean McCaffrey
Benjamin M. Halpern*
Matthew A. Fox
Michael J. Kasdan
Rebecca R. Eisenberg

*Not admitted in New York*

February 13, 2006

<u>Via E-Mail and First-Class Mail</u>

Daniel Gleason, Esq.
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604

Ira E. Silfin
Direct 212 336 8080
E-mail isilfin@arelaw.com

> Re:   *Arrow International, Inc., et al. v. Spire Biomedical, Inc.*
>       Civil Action No.: 05-10671 DPW
>       Your File No.: 101430-202
>       <u>Our File: 3600/365</u>

Dear Dan:

        With respect to our discussions on Tuesday, February 7, 2006, and Wednesday, February 8, 2006 concerning Spire's documents requests and interrogatories to Arrow and Arrow's objections, we summarize the agreements which were reached.

## Document Requests

- We have produced or will produce all non-privileged documents responsive to Request Nos. 1, 2, 17, 18, 19, 21, 23, 24, 31, 43, 44, and 46.

- Arrow has produced all available documents responsive to Request No. 22 (prior art). You have agreed that we need not produce copies of prior art references which have been identified in response to Spire's interrogatories.

- Pursuant to Ms. Jackson's letter of February 3, 2006, Arrow will produce documents responsive to Request No. 3, as revised.

- Arrow will produce documents responsive to Request Nos. 4, 5, and 26 to the extent such documents concern the licensing of Spire's patents by Arrow (and/or Diatek) or concern Spire and Arrow (and/or Diatek) working together to market retrograde products.

333951.2

Daniel Gleason, Esq.                       - 2 -                       February 13, 2006

- With respect to Request Nos. 6 and 7, based on your arguments that there may be documents relating to the patent-in-suit among those documents relating to Arrow's acquisition of Diatek, Arrow will produce documents responsive to these request. However, in view of the fact that many documents relating to the acquisition are privileged, we will only log privileged documents relating to patents. We will not log documents relating to other legal aspects of the acquisition. As we advised you over the phone, these documents number at least 100,000. In view of the large number of documents, we ask that Spire bear the costs of this production. Please advise us how you would like us to proceed.

- The term " '198 Patent's technology" has now been defined to mean "whatever was claimed or could have been claimed in the '198 Patent." With this change, Arrow will produce non-privileged documents responsive to Request Nos. 8, 9, and 10. There are no documents responsive to Request No. 32.

- With respect to Request Nos. 11, 12, 13, 14, 15, 16, 30, 36, 37, 41, and 42, Arrow's production will depend on whether it will seek lost profits. We are waiting for you approval of our damages expert before Arrow can make this determination.

- All documents responsive to Request Nos. 20, 25 and 33 are privileged and will be logged as such.

- Reading Request No. 27 as excluding Arrow's attorneys, there are no documents responsive documents.

- The reference to "the Wilson Family of Patents" in Request Nos. 27, 28, 29, 38, and 45, has been limited to the linear (or nuclear) '198 Patent family, which includes specifically: abandoned Application No. 09/769,052; U.S. Patent No. 6,638,242; U.S. Patent No. 6,872,198; U.S. Application No. 10/621,532; and U.S. Application No. 10/796,495.

- Request Nos. 34, 35, and 36 has been limited to the '198 Patent.

- Request No. 34 has further been limited to documents relating to invention, notably conception and reduction to practice, and not engineering reports, development plans, etc.

- In response to Request No. 39, Arrow will produce copies of its document retention policy, if any, as it relates to engineering and marketing only.

- Documents will not be produced in response to Request No. 40.

333951.2

Daniel Gleason, Esq.                      - 3 -                      February 13, 2006

## Interrogatories

• Interrogatory Nos. 3, 4, 5, 9, 10, 11, and 14 have been answered.

• Interrogatory No. 6 has been answered based on available information. This will be revisited after Arrow makes a decision on seeking lost profits. Please keep in mind that nothing more than a general answer can be provided since a detailed damages claim would require disclosure of Spire's confidential information to Arrow.

• The answers to Interrogatory Nos. 7 and 8 also depends on a lost profits claim.

• The answers to Interrogatory Nos. 13 and 14 can be determined from the document production.

We believe this accurately states the understandings which were reached during the telephone conferences. If you have any comments, please let us know.

Very truly yours,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

Ira E. Silfin

IES/kmm

cc:  Brian Whitely, Esq.

Michelle Chassereau Jackson, Esq.

333951.2

# ⊠Nutter

**Daniel J. Gleason**
Direct Line: 617-439-2233
Fax: 617-310-9233
E-mail: dgleason@nutter.com

February 16, 2006
101430-202

Ira E. Silfin
Amster Rothstein & Eberstein LLP
90 Park Avenue, 21st Floor
New York, NY 10016

Re:    Arrow International, Inc., et al. v. Spire Biomedical, Inc.
Civil Action No. 05-10671-DPW

Dear Ira:

Thank you for your letter of February 13, 2006 outlining your understanding of the discussions of February 7 and 8, 2006. Here are the areas where our understandings currently differ:

**Document Requests**

- As to our Request Nos. 4, 5 and 26, your response appears to narrow the requests so as to exclude information concerning what, if anything, Diatek or Arrow may have learned from Spire concerning the subject matter of the '198 patent. We do not regard our request for all communications and meetings between the parties from 1998 to the present to be overly broad or burdensome. Your proposal to limit production to "documents that concern the licensing of Spire's patents by Arrow (and/or Diatek) or concern Spire and Arrow (an/or Diatek working together to market retrograde products" is not consistent with our discussions. We ask that you fully comply with these requests pursuant to our discussion on February 7th.

- As to our Request Nos. 6 and 7, the modification we discussed did not limit the requests to documents relating solely to the patent-in-suit. Rather, Spire offered to narrow the requests to acquisition documents concerning (1) the subject matter of the '198 patent or (2) Spire. Spire is aware that the total number documents concerning the acquisition of Diatek by Arrow could number 100,000. Are you expecting to review all of these documents for privilege prior to production? We anticipate that your answer to this question is "yes" based on your assertion that "many documents to acquisition are privileged." We can agree that the unresponsive privileged documents need not be logged if an understanding is reached as to the topics of interest. Alternatively, Arrow may instruct Spire to examine the entire file with the understanding that privilege would not be waived by such a review. If, however, you

Nutter McClennen & Fish LLP ▪ Attorneys at Law

World Trade Center West ▪ 155 Seaport Boulevard ▪ Boston, MA 02210-2604 ▪ 617-439-2000 ▪ Fax: 617-310-9000 ▪ www.nutter.com

Ira E. Silfin
February 16, 2006
Page 2



are planning to review the estimated 100,000 documents for privilege, then it is unclear why you would not remove (along with the privileged documents) the non-privileged unresponsive documents. In other words, this is not a Rule 33(d) situation. Large categories of documents (i.e. draft acquisition documents, employment files, financial data, etc.) will be reviewed for your own purposes—identification of privileged documents. It seems that Arrow could identify a more discreet set of responsive documents, as opposed to the estimated 100,000 documents, upon this initial review. Once an agreement is reached, we are prepared to bear the costs of any copies we order from this production, but not the cost of preparing the production for our review.

- As to our Request No. 15, my memory and notes indicate that you and I were in agreement that this information is relevant not only to a "lost profits" damages theory, but also to the establishment of reasonable royalty rates. Arrow agreed to produce responsive documents (e.g., marketing information) concerning third party *products* that Arrow believes compete with Arrow in the chronic hemodialysis catheter market. Specifically, you indicated that you would approach both Arrow management and its marketing departments for such information. I do not think that the response to this request should be lumped into the general category of requests that we decided to set aside until Arrow decides whether to pursue lost profits.

- As to our Request No. 16, we indicated that we would rephrase the request to address your concerns about breadth. It is as follows:

> "All documents discussing or analyzing persons who represent, or who Arrow believes represent, competition in the market for chronic hemodialysis catheters and which concern that relevant market."

This Request, like Request No. 15, elicits information relevant to the establishment of a reasonable royalty rate and should not be considered dependent on whether Arrow will pursue lost profits.

- As to our Request No. 30, this was not a request we agreed to put on hold pending the lost profits decision. Arrow agreed to produce financial statements for the period January 1, 2004 through March 5, 2005.

- The linear '198 Patent family should be defined to include, in addition to the patents and applications listed on page 2, paragraph 6 of your letter dated February 13, 2006, U.S. Application No. 10/797,363.

- As to our Request No. 34, my notes indicate that we agreed to limit this request to the linear '198 Patent family. You have unilaterally narrowed this request further by

Ira E. Silfin
February 16, 2006
Page 3



limiting it to the '198 patent. In addition, Spire understands that you have taken issue with the words modifying "inventions." Nevertheless, we did not agree to narrow the request so as to exclude engineering reports, development plans and operational documents. Spire agreed only to eliminate from this specific request "prosecution file histories" and "documents and communication concerning the prosecution of the Wilson Family of Patents." Spire, however, asserts that such documents should be produced pursuant to Request Nos. 17 and 18.

- As to our Request No. 36, we had an extensive discussion about development activities under the '242 patent and the other patents in the '198 patent's linear family. At this time we are not prepared to limit this request. Additionally, this is not a request that should be on hold pending the lost profits decision.

- As to Request No. 40, a resolution was not reached during the discovery conference. We will set aside this request until we have reviewed your discovery generally. It appears that we cannot agree at this time.

- As to our Request No. 41, this requests seeks relevant information beyond lost profits. We request that you produce all responsive documents subject only to our agreement on the meaning of the "Wilson Family of Patents."

- As to our Request No. 42, this request relates to more than "lost profits"—namely liability issues. We request that you produce responsive documents.

## Interrogatory Responses

- As to Interrogatory No. 6, we would be satisfied at this point with a detailed explanation of the process used for calculating damages rather than the specifics of the calculations. That process can be revealed without disclosure of confidential information.

- As to Interrogatory No. 8, the question elicits information that is relevant to more than merely a "lost profits" claim. Spire seeks information concerning products Arrow sells under a license in the relevant market.

- As to Interrogatory No. 9, we ask that your response include the linear family of the '198 patent. You assert that the interrogatory has been answered fully, however, you indicated that the response was limited to the '198 patent.

- As to Interrogatory No. 11, you state this has been answered fully; nevertheless, your response indicated that it had been limited to the '198 patent. We agreed that you



Ira E. Silfin
February 16, 2006
Page 4

would supplement your answer to include the identification of communications with all third parties notified of any potential infringement of any of the patents in the linear or nuclear family of the '198 patent. Please confirm that your response is complete as to the nuclear family of the '198 patent.

We look forward to further resolving our differences and understand that we will continue to disagree on certain aspects of this discovery. We are also, of course, interested in your completion of responses to this discovery as early as feasible. I ask that you give me your estimate of when that can be done and, if in phases, when the phases are likely to be completed.

Thank you.

Very truly yours,

/s/ Daniel J. Gleason

Daniel J. Gleason

DJG/sb

cc:    Brian E. Whiteley, Esquire
       C. Alex Hahn, Esquire
       Rebecca Eisenberg, Esquire

# AMSTER ROTHSTEIN & EBENSTEIN LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016

Main   212 336 8000
Fax    212 336 8001
Web    www.arelaw.com

**Partners**
Morton Amster
Jesse Rothstein (1934 - 2003)
Daniel Ebenstein
Philip H. Gottfried
Michael J. Berger
Neil M. Zipkin
Anthony F. Lo Cicero
Kenneth P. George
Abraham Kasdan, Ph.D.
Ira E. Silfin
Chester Rothstein
Craig J. Arnold
Kenneth M. Bernstein
Joseph M. Casino

**Senior Counsel**
Charles R. Macedo
Mark J. Rosenberg
Michael V. Solomita

**Associates**
Patrick Boland*
John S. Economou
Holly Pekowsky
Michael P. Kenney
Marion P. Metelski
Max Vern
Karl J. Kolbinger

Brian A. Comack
Richard S. Mandaro
Marc J. Jason
Elie H. Gendloff, Ph.D.
David Mitnick
Charles W. Rath
David A. Boag
Karen J. Bernstein
Matthieu Hausig
Jung S. Hahm
Reiko Kaji
Alan D. Miller, Ph.D.
Hsin-Hsin (Ginger) Liu

John A. Lepore
Norajean McCaffrey
Benjamin M. Halpern*
Matthew A. Fox
Michael J. Kasdan
Rebecca R. Eisenberg

*Not admitted in New York

March 1, 2006

<u>Via E-Mail and Mail</u>

Daniel J. Gleason, Esq.
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604

Ira E. Silfin
Direct 212 336 8080
E-mail isilfin@arelaw.com

Re:   *Arrow International, Inc., et al. v. Spire Biomedical, Inc.*
Civil Action No.:  05-10671 DPW
Your File No.:  101430-202
<u>Our File: 3600/365</u>

Dear Dan:

We are in receipt of your letter of February 16, 2006. We will address your points item by item.

<u>Document Requests</u>

- When we were discussing Request No. 4, we reiterated our objection to the breadth of the request. Tom Engellenner stated that the request sought relevant information, specifically documents that concern (a) the licensing of Spire's technology by Arrow and/or Diatek and (b) Arrow and/or Diatek working with Spire to market retrograde products. We understood that you had limited this request to these areas. Although we do not agree that these types of documents are relevant to this patent infringement litigation, based on this limitation, we agreed to search for and produce documents on these limited subject matters. We now understand that you do not acknowledge the over breadth of your request. Therefore, we return to our asserted objection and are ready to discuss with you an appropriate narrowing of these requests. When we discussed Request Nos. 5 and 26, the resolution was the same as that for Request No. 4.

- As you are no doubt aware, Arrow has been involved in litigation with Thierry Pourchez and C.R. Bard for the past several years. The due diligence documents

335610.1

Daniel Gleason, Esq.                     -2-                          March 1, 2006

sought by your request have been produced in that litigation. Therefore, privileged documents have been removed already and further review of those documents prior to production.

- With respect to Request No. 15, while you attempted to articulate an argument on why this request was relevant to reasonable royalty, we did not agree.

- Please explain what information revised in Request No. 16 elicits concerning reasonable royalty.

- We will produce the documents responsive to Request No. 30, as limited.

- With respect to the linear '198 Patent family, we acknowledge our error in our letter.

- As we advise during the telephone conference, your Request No. 34 is odd in that it asks for documents concerning "inventions" and then seeks to expand the request by identifying specific types of documents which should be produced. We objected to the idea that engineering reports and development plans and similar documents concern inventions. We believe that you acknowledged that such types of documents would be outside the scope of the request and that this request was focused on conception and reduction to practice, *i.e.*, invention. If the request is not so limited, and limited to the '198 Patent, we will maintain our objection.

- With respect to Request No. 36, we continue to assert our objections.

- We acknowledge your withdrawal of Request No. 40, without prejudice, at this time.

- We view Request No. 41 as being the same issue raised with respect to Request No. 36.

- As to Request No. 42, as you must acknowledge, this Request is premature. Any documents which Arrow produces may be relied upon to prove liability and/or damages. Likewise we designate any documents produced by Spire in this category. As trial approaches, we will better able to formulate a response to this Request.

Interrogatory Responses

- Interrogatory No. 6 has been answered without objection. It does not seek ". . . a detailed explanation of the process used for calculating damages."

- Your introduction of a limitation in Interrogatory No. 8 regarding licenses is new. Please explain the relevance.

335610.1

Daniel Gleason, Esq.                        -3-                        March 1, 2006

- Regardless of which patents fall within the scope of Interrogatory No. 9, the names of the inventors are identified on the patents and the responses to the remainder of the interrogatory can be obtained from the documents which have been already produced.

- If and when the answer to Interrogatory No. 11 changes, we will supplement it.

    As we advised you, we have over 100,000 pages of documents ready for production, and our client is searching for additional documents.  We are waiting for your advice on whether you want to pay for copies.

    Finally, we believe the any outstanding issues would be better addressed by a telephone call rather than additional letters.  We are available for most of March 7, 9, or 10.

                                Very truly yours,

                                AMSTER, ROTHSTEIN & EBENSTEIN LLP


                                Ira E. Silir

IES:wkw

cc:    Via E-Mail & Mail

        Brian E. Whiteley, Esq.
        *Scibelli, Whiteley & Stranganelli, LLP*

        Michelle Chassereau Jackson, Esq.
        *Nutter McClennen & Fish LLP*

335610.1

# **N** Nutter

Daniel J. Gleason
Direct Line: 617-439-2233
Fax: 617-310-9233
E-mail: dgleason@nutter.com

March 2, 2006
101430-202

**BY E-MAIL & FIRST CLASS MAIL**

Ira E. Silfin
Amster Rothstein & Eberstein LLP
90 Park Avenue
New York, NY 10016

Re:    Arrow International, Inc., et al. v. Spire Biomedical, Inc.
       Civil Action No. 05-10671-DPW

Dear Ira:

Thank you for your letter of March 1, 2006. Although we conferenced concerning your objections to document discovery, coming to some resolutions, on February 7-8, there has been no further production in the ensuing time. That is a concern, given the discovery timetable and given that, although you complained about the speed of our production, you have had Spire's documents for four weeks.

To the extent that Arrow has gathered over 100,000 documents and they are ready for production I assume many are specific to the Diatek acquisition as that was the same figure you used when estimating Arrow's acquisition-related records. I reiterate that we agreed to handle the Diatek-related production separately in view of its potential size and scope. However, the documents responsive to all other categories of our requests should not continue to be held up.

If another category of documents requested has generated 100,000 or so documents, we'll inspect those and make copying decisions based on the inspection. If not, then the only category of documents you should hold onto (that is not copy and send immediately) is the Diatek acquisition documents. Are there indexes to such documents? If so, please forward them so that we can perhaps give you some feedback on copying subsets immediately. If not, how are they organized, where are they being held, and where can they be reviewed? We'll have someone there early next week. Can we pick the day? Or, if not, let us know what days are available for the inspection.

It appears that as to what came out of the last conference, our understandings from that discussion are not entirely aligned. We would like to conference with you on Friday, March 3, or Monday, March 6.

Nutter McClennen & Fish LLP ▪ Attorneys at Law

World Trade Center West ▪ 155 Seaport Boulevard ▪ Boston, MA 02210-2604 ▪ 617-439-2000 ▪ Fax: 617-310-9000 ▪ www.nutter.com



Ira E. Silfin
March 2, 2006
Page 2

  Meanwhile, the documents you are prepared to provide (except the Diatek acquisition documents which include some 100,000 documents by your estimate) should be sent overnight mail to us.  Thank you for getting these to us promptly.

         Very truly yours,

         Daniel J. Gleason

DJG:hbr

cc: Brian Whiteley, Esq.
   Rebecca Eisenberg, Esq.

## Heather Repicky - Fwd: ARROW V. SPIRE E-mail for Ira 3.3.06

**From:** Heather Repicky
**To:** Isilfin@ARELAW.com
**Date:** 3/3/2006 3:41 PM
**Subject:** Fwd: ARROW V. SPIRE E-mail for Ira 3.3.06
**CC:** bwhiteley@swsllp.com;  reisenberg@arelaw.com

Ira,

Below is an e-mail from Dan concerning discovery in the Arrow v. Spire matter.

Best Regards,
Heather


Heather B. Repicky
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Blvd.
Boston, MA 02210-2604
Phone: 617.439.2192
Fax: 617.310.9192
hrepicky@nutter.com

>>> Daniel Gleason 03/03/06 3:32 PM >>>
Ira:

    As I have yet to hear from you today, I would like to address several outstanding issues.  You should have
electronically recieved a letter from me yesterday.  It responds to yours of March 1, 2006 and asks for among
other things a prompt conference.

    As it appears from your March 1st letter, differences remain concerning Arrow's document production to
Spire.  A conference over those differences is necessary and obviously timing is critical.

    Arrow's documents were due, under the Rules, on or about January 26th.  At your request, we pushed the
conference as to your objections off until February 7th-8th.  Now, a month later, there has been no further
production of the documents you agreed to produce in that conference.

    We have, to date, received from Arrow basically: patent applications, prior art, documents indicating an
allegedly infringing product and little else.

    I believe you have told us that you consider Arrow's production to now be complete with respect
to 6 of Spire's document requests.  Additionally, I believe you have indicated that some of the
documents produced in response to the 6 requests also have relevance to one or more of Spire's other requests
(specifically Nos. 1, 2, 24 and 34).  But no documents have been produced as yet unless they happen to
fall under the 6 requests you say are complete.  That leaves a vast majority of the requests (net of the requests
we agreed during the conference to set aside for now) where either there has been no production at all or only
a partial production.

    With respect to the 100,000 documents you said have been located, surely those must cover outstanding

requests *other than* the Diatek acquisition requests.  We want those documents (absent those concerning the acquisition due diligence) now.

The Diatek documents have been discussed during the discovery conferences and also in my letter of yesterday.  There are, I believe, two requests specifically relating to the Diatek acquisition (Nos. 6 & 7) that you thought would generate around 100,000 documents.  To the extent the acquisition documents are not covered by other requests, we would like to inspect them as soon as possible.  My hope is that you will accomodate our insepcting those documents early next week.  We will, most certainly, not want to copy all the acquisition documents (as only a subset are relevant to this litigation), but it is imperative that we review them promptly because (as you noted) it could be a time consuming process.

Each of us has pressed the other for prompt access to documents throughout the course of this discovery as it is important to our working under the Court's schedule.  You have had our production for a month.  We need your production to be completed forthwith and we need to understand the basis of the objections raised in your most recent letter as soon as possible.

Please confirm whether we can re-conference over issues you raised in your March 1 letter on Monday, March 6.  If Monday is not available, we will have to wait to conference until Tuesday, March 7 at 10:00 a.m.  Also, please confirm that the documents covered by requests not asking for the Diatek files are on their way to us.  Further, we would appreciate a chance to set up an inspection of the Diatek files.

Thank you.

DAN

# Ν Nutter

**Daniel J. Gleason**
Direct Line: 617-439-2233
Fax: 617-310-9233
E-mail: dgleason@nutter.com

March 8, 2006
101430-202

**By E-mail & First Class Mail**

Ira E. Silfin
Amster Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016

      Re:    Federal Civil Action No. 05-10671DPW (D. Mass.)
             Arrow International, Inc. v. Spire Biomedical, Inc.
             <u>(Our File 101430-202; Your No. 3600/365)</u>

Dear Ira:

       I expressed concern yesterday morning and want to make it clear that the time lapse since Arrow's documents were due (over four weeks ago) is becoming a real problem. And of even more concern is the fact that it appears that you do not have a firm grasp on what efforts are being made to remedy the situation. We have made many accommodations during this discovery—for example conferencing on dates that were convenient for you although they were later in time than we had desired—and now it appears that our efforts at moving forward amicably are being taken advantage of. Over the last few weeks many of your objections were resolved; yet the relevant documents have yet to be produced. Spire needs responsive documents now.

       The documents located (and not located) to date do not lessen my concerns. For one thing, you have only actually produced documents concerning patent applications. This initial production should not have required much of a search. This week, you have told us that the 100,000 pages of documents concerning Arrow's Diatek acquisition are finally ready for inspection. These documents had already been organized and reviewed in the Arrow/Bard litigation and could not have so occupied your time and efforts as to delay searches in other areas. Also with respect to Diatek, you revealed yesterday that you have been unable to locate Diatek documents responsive to Request Nos. 4, 5 and 26. You have failed, however, to make clear what, if any, searches have been done for those documents and how you expect to proceed.

       As to all other documents—to which we have reached an accomodatoin—not only have we not received anything, but you have yet to receive any report on the search from your own client. Arrow's in-house counsel may be too busy to respond to your calls in a timely fashion,

Nutter McClennen & Fish LLP ▪ Attorneys at Law

World Trade Center West ▪ 155 Seaport Boulevard ▪ Boston, MA 02210-2604 ▪ 617-439-2000 ▪ Fax: 617-310-9000 ▪ www.nutter.com

Ira E. Silfin
March 8, 2006
Page 2



but that only suggests that someone else needs to be responsible for this project. The fact that you have left compliance with this discovery to an in-house lawyer who is unavailable to you is not an excuse for this unreasonable delay.

The parties are both subject to the same discovery obligations. You rightly pressed for a prompt turnaround from us. You received Spire's documents on February 2nd, merely two days after the Protective Order was entered by the Court. Now, with the shoe on the other foot, we are asked to wait and wait.

Please specify by 5:00 p.m. on Thursday, March 9th, what efforts Arrow has made and still needs to make in order to complete its duty to make reasonable document searches under the Federal discovery rules. Please also confirm what categories of documents Arrow expects to send to us this week. If there is going to be further delay in completing any aspect of your search, we also need to know the extent of that delay immediately. We do not feel, given the tight discovery schedule, that we can wait beyond Tuesday, March 14, 2006 before turning to a Motion to Compel.

By separate letter we will correspond concerning the specific discovery requests and interrogatories conferenced yesterday. Our priority is, understandably, receiving the outstanding documents.

Thank you.

Very truly yours,

Daniel J. Gleason

DJG:hbr

cc:    Brian Whiteley, Esq.
       Rebecca Eisenberg, Esq.

# Nutter

Daniel J. Gleason
Direct Line: 617-439-2233
Fax: 617-310-9233
E-mail: dgleason@nutter.com

March 8, 2006
101430-202

**By E-mail & First Class Mail**

Ira E. Silfin, Esq.
Amster Rothstein & Ebenstein, LLP
90 Park Avenue
New York, NY 10016

Re:     Federal Civil Action No. 05-10671DPW (D. Mass.)
        Arrow International, Inc. v. Spire Biomedical, Inc.
        (Our File 101430-202; Your No. 3600/365)

Dear Ira:

With respect to our discussion on Tuesday, March 7, 2006, concerning Arrow's discovery responses, I would like to confirm the following:

- Arrow has been unable to locate Diatek documents responsive to our Request Nos. 4, 5 and 26. Moreover, Arrow continues to object to the breadth of these requests as they relate to both Diatek and Arrow. Arrow refuses to undertake any further search for documents until these requests have been limited temporally or by subject matter. Spire initially limited the Requests to responsive documents from January 1, 1998. (See Spire's Request for the Production of Documents Definitions and Instructions B.) While Arrow found this date limitation arbitrary and asked that it be abandoned in our conference on February 7, 2006, we are willing to reinstate this time limitation for Request Nos. 4, 5 and 26. We do not believe that Spire communicated with Arrow and/or Diatek before this date. Spire does not believe that the requests are otherwise overly broad and, therefore, we are not prepared to further limit them at this time.

- As to our Request No. 8, Arrow will produce all responsive documents without a temporal limitation.

- Arrow will produce licensing agreements between Arrow International Inc. and Arrow International Investment Corp. in response to Request Nos. 9 and 10.

- As to our Request No. 15, Arrow will produce "competitive intelligence" concerning all products that you believe compete or may compete with the Allegedly Infringing Product.

Nutter McClennen & Fish LLP ▪ Attorneys at Law

World Trade Center West ▪ 155 Seaport Boulevard ▪ Boston, MA 02210-2604 ▪ 617-439-2000 ▪ Fax: 617-310-9000 ▪ www.nutter.com

Ira E. Silfin
March 8, 2006
Page 2



- We have agreed to defer Request No. 16 until Arrow decides whether it will pursue a lost profits claim. Request Nos. 11, 12, 13, 14 and 37 are being been deferred for this purpose as well.

- We have been unable to reach a resolution for Request Nos. 4, 5, 26, 34, 36, 40, 41 and 45 and, therefore, you are refusing to produce responsive documents.

- Additionally, we have been unable to reach a resolution as to Interrogatory Nos. 1, 2, 8 and 9.

    You indicated yesterday that your damages expert made a recommendation to Arrow concerning lost profits. Your client, however, has not yet communicated their decision to you. Several requests are being deferred until a decision is made; it is important that we are informed on the damages question as soon as possible and, in any event, no later than Friday, March 17th. You also suggested yesterday that both parties might consider a stipulation on damages. A decision on this issue is premature, particularly in light of the fact that we neither know of Arrow's position on lost profits nor have received any documents evidencing Arrow's view of the competitiveness of the relevant market. We can revisit this topic at a later date, but we hope for the present that Arrow is expending all of its time and efforts into remedying delinquent discovery responses and document production

    We also briefly discussed dates for the meet and confer following the March 15th exchange of claim terms, phrases and clauses required by Paragraph 4 of the Discovery Schedule. We confirm that the meeting will occur on Monday, March 27, 2006 at 10:00 a.m. via telephone.

    Finally, please find enclosed Spire's discovery chart identifying documents by Bates Range and Document Request Number pursuant to my e-mail of February 8, 2006.

                                    Very truly yours,

                                    Daniel J. Gleason

DJG:hbr
Enclosure

cc:    Brian Whiteley, Esq.
       Rebecca Eisenberg, Esq.



**AMSTER ROTHSTEIN & EBENSTEIN** LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016
Main   212 336 8000
Fax    212 336 8001
Web   www.arelaw.com

| Partners | Senior Counsel | Brian A. Comack | John A. Lepore |
| Morton Amster | Charles R. Macedo | Richard S. Mandaro | Norajean McCaffrey |
| Jesse Rothstein (1934 - 2003) | Mark J. Rosenberg | Marc J. Jason | Benjamin M. Halpern* |
| Daniel Ebenstein | Michael V. Solomita | Elie H. Gendloff, Ph.D. | Matthew A. Fox |
| Philip H. Gottfried | | David Mitnick | Michael J. Kasdan |
| Michael J. Berger | | Charles W. Rath | Rebecca R. Eisenberg |
| Neil M. Zipkin | Associates | David A. Boag | |
| Anthony F Lo Cicero | Patrick Boland* | Karen J. Bernstein | |
| Kenneth P. George | John S. Economou | Matthieu Hausig | |
| Abraham Kasdan, Ph.D. | Holly Pekowsky | Jung S. Hahm | |
| Ira E. Silfin | Michael P. Kenney | Reiko Kaji | |
| Chester Rothstein | Marion P. Metelski | Alan D. Miller, Ph.D. | |
| Craig J. Arnold | Max Vern | Hsin-Hsin (Ginger) Liu | |
| Kenneth M. Bernstein | Karl J. Kolbinger | | *Not admitted in New York |
| Joseph M. Casino | | | |

March 9, 2006

Ira E. Silfin
Direct 212 336 8080
E-mail isilfin@arelaw.com

<u>Via E-Mail and Mail</u>

Daniel J. Gleason, Esq.
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604

Re:   *Arrow International, Inc., et al. v. Spire Biomedical, Inc.*
        Civil Action No.: 05-10671 DPW
        Your File No.: 101430-202
        Our File: 3600/365

Dear Dan:

We are in receipt of two letters from you dated March 8, 2006. In the first, you give us an ultimatum to respond today. We address that letter here.

We do not appreciate the tone of your letter. You claim to have "made many accommodations during this discovery" and give as an example, agreeing to have a telephone conference at a time when we were available. In standard practice, when counsel need to confer, it must be done when both counsel are available. We do not believe that it is an accommodation on your part to hold a conference with us, instead of by yourself.

We must note that while you are pressing us for the production of documents, we responded to your discovery requests in a timely fashion. The fact of the matter is that Spire's requests were extremely overly broad and burdensome, in response to which Arrow asserted appropriate objections. In the telephone conferences on February 7 and 8, you agreed to narrow certain of those requests. From that point, our client has at least thirty days to locate and produce responsive documents. Your threats to bring a motion to compel two days later are not constructive and do not serve the interests of our clients.

336297.1

Daniel Gleason, Esq.                    -2-                         March 9, 2006

        Your comparison of Spire's production to Arrow's production is inappropriate. Spire's documents were apparently sitting in your office until such time as you deigned to agree to the protective order we had proposed months earlier. Some of the documents which you did not produce pending entry of the protective order were not even confidential. On the other hand, we are working with out client to gather responsive documents, and will produce promptly as they are located and sent to us. In this regard we have advised you that the documents relating to Arrow's deposition of Diatek are ready for production, but you have declined to take these documents, calling into question the sincerity of your requests.

                                        Very truly yours,

                                        AMSTER, ROTHSTEIN & EBENSTEIN LLP

                                        Ira E. Silfin

IES:wkw/bap

cc:    Via E-Mail & Mail

        Brian E. Whiteley, Esq.
        Scibelli, Whiteley & Stranganelli, LLP

        Michelle Chassereau Jackson, Esq.
        Nutter McClennen & Fish LLP

336297.1

# AMSTER ROTHSTEIN & EBENSTEIN LLP

*Intellectual Property Law*

90 Park Avenue
New York NY 10016
Main   212 336 8000
Fax    212 336 8001
Web    www.arelaw.com

| Partners | Senior Counsel | | John A. Lepore |
| Morton Amster | Charles R. Macedo | Brian A. Comack | Norajean McCaffrey |
| Jesse Rothstein *(1934 - 2003)* | Mark J. Rosenberg | Richard S. Mandaro | Benjamin M. Halpern* |
| Daniel Ebenstein | Michael V. Solomita | Marc J. Jason | Matthew A. Fox |
| Philip H. Gottfried | | Elie H. Gendloff, Ph.D. | Michael J. Kasdan |
| Michael J. Berger | | David Mitnick | Rebecca R. Eisenberg |
| Neil M. Zipkin | *Associates* | Charles W. Rath | |
| Anthony F. Lo Cicero | Patrick Boland* | David A. Boag | |
| Kenneth P. George | John S. Economou | Karen J. Bernstein | |
| Abraham Kasdan, Ph.D. | Holly Pekowsky | Matthieu Hausig | |
| Ira E. Silfin | Michael P. Kenney | Jung S. Hahm | |
| Chester Rothstein | Marion P. Metelski | Reiko Kaji | |
| Craig J. Arnold | Max Vern | Alan D. Miller, Ph.D. | |
| Kenneth M. Bernstein | Karl J. Kolbinger | Hsin-Hsin (Ginger) Liu | |
| Joseph M. Casino | | | *Not admitted in New York* |

**RECEIVED**

MAR 2 0 2006

D.J.G

March 16, 2006

Via E-Mail and Mail

Ira E. Silfin
Direct 212 336 8080
E-mail isilfin@arelaw.com

Daniel J. Gleason, Esq.
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2604

Re:   *Arrow International, Inc., et al. v. Spire Biomedical, Inc.*
Civil Action No.: 05-10671 DPW
Your File No.: 101430-202
Our File: 3600/365

Dear Dan:

With respect to your second letter of March 8, 2006, we respond point-by-point:

- We do not understand all of your comments with respect to Requests 4, 5, and 26, and we take issue with some of your comments. Our position remains, as stated in our objections, that these requests, particularly Requests 4 and 5, are overly broad and burdensome and seek production of irrelevant material. As we discussed with you, these requests would encompass, for example, discussions between Arrow's cardiac division and Spire relating to coatings. Such broad requests are inappropriate. In order to resolve this matter, we have made two suggestions. The first was to limit the subject matter sought. We set forth a proposal in our letter of February 13, 2006, which you rejected. The second proposal was to limit the time period for these documents. You reject this proposal in your current letter. Therefore, we stand by our objections.

  We note that this discussion is academic at this time. Our client has not yet located the Diatek documents. The search is continuing, and we will advise you if they are located.

336918.1

Daniel Gleason, Esq.                    -2-                    March 16, 2006

- We confirm that Request 8 has no temporal limitation. However, as we stated in our February 13 letter, the request has been narrowed.

- You should have received the licensing agreement responsive to Request 9.

- Arrow has produced competitive intelligence, and is continuing to search for additional responsive documents.

- We agree with your statement on Request 16.

- We maintain our objections to Requests 4, 5, 26, 34, 36, 40, 41, and 45.

- We maintain our objections to Interrogatories 1, 2, and 8. In response to Interrogatory 9, we have invoked Rule 33(d).

    We have now produced most of the responsive documents. Arrow is continuing to search for certain documents as described above. In addition, financial documents are currently being gathered.


                            Very truly yours,

                            AMSTER, ROTHSTEIN & EBENSTEIN LLP

                            Ira E. Silfin

IES:wkw/bap

cc:    Via E-Mail & Mail

       Brian E. Whiteley, Esq.
       *Scibelli, Whiteley & Stanganelli, LLP*

       Michelle Chassereau Jackson, Esq.
       *Nutter McClennen & Fish LLP*

336918.1

# ⋈ Nutter

**Daniel J. Gleason**
Direct Line: 617-439-2233
Fax: 617-310-9233
E-mail: dgleason@nutter.com

March 20, 2006
101430-202

## By E-Mail & First Class Mail

Ira E. Silfin, Esq.
Amster, Rothstein & Eisenstein LLP
90 Park Avenue
New York, NY 10016

      Re:   Arrow International, Inc. v. Spire Biomedical, Inc.
               C.A. No. 05-10671-DPW
               <u>Your File No. 3600/365; Our File No. 101430-202</u>

Dear Ira:

      We have not heard from you as to whether Arrow will pursue damages based on lost profits. My letter dated March 8 had asked that you inform Spire of Arrow's position on this issue by Friday, March 17. My urgency in being informed of your position on the six outstanding document requests and two unanswered interrogatories that we deferred at your request. If Arrow is pursuing lost profits, please forward immediately documents responsive to Request Nos. 11, 12, 13, 14, 16 and 37. Additionally, please complete responses to Interrogatory Nos. 6 and 7.

      You write that Arrow's document production—excluding the portion of Spire's requests which you have made clear will not be produced without a Motion to Compel and which we had deferred because of uncertainty as to your lost profits position—has been "mostly" produced. Your production to date, however, has not included documents relating to internal and external communications concerning the '198 patent, the '198 linear family and/or this lawsuit. (See Request Nos. 27, 28, 29 & 38). Of significant note, Spire has not received *any* communication documents. Documents concerning meetings during which the subject matter of the '198 patent was discussed have also not yet been produced. (See Request Nos. 8 & 45). And Spire has not yet received documents responsive to Request Nos. 43 and 44.

      Additionally, we have received a very limited number of documents for other requests. For example, only two documents have been identified as responsive to Request No. 31.

      Because of the staggered nature of your production, there is significant uncertainty about which requests Arrow possesses outstanding documents and which requests have been

Nutter McClennen & Fish LLP ▪ Attorneys at Law

World Trade Center West ▪ 155 Seaport Boulevard ▪ Boston, MA 02210-2604 ▪ 617-439-2000 ▪ Fax: 617-310-9000 ▪ www.nutter.com

Lia E. Silfin, Esq.
March 20, 2006
Page 2



completed. To resolve this uncertainty, we request that you provide us with a simple chart identifying those requests that have been fully responded to or that Arrow does not possess responsive documents. Also, when will the document production (not subject to continuing objections) be complete? For example, you have admitted that Spire is due limited financial statements, but have not indicated when they will actually be produced.

As to documents that you refuse to produce and unanswered interrogatories (as identified in both my March 8 letter and your response dated March 16), we will address them by a Motion to Compel. I assume we agree that we have fully conferenced as to your continuing objections to production on these requests.

We received three deposition notices last week. The dates you chose are not feasible, but we can discuss alternative dates with you this week.

As to coming to Boston for our claim term conference, we will be happy to see you here. I can confirm that the meet and confer will take place on March 27, 2006, at 10:30 a.m. at our office.

Very truly yours,

Daniel J. Gleason

DJG:hbr

cc:    Rebecca Eisenberg, Esq.
       Brian Whiteley, Esq