UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ -x

ARROW INTERNATIONAL, INC., and
ARROW INTERNATIONAL INVESTMENT
CORP.,

              Plaintiffs,

        v.

SPIRE BIOMEDICAL, INC.,

            Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ -x

Civil Action No.:  05-10671 DPW

ECF Case

**PLAINTIFFS' CLAIM CONSTRUCTION BRIEF**

Brian E. Whiteley  (BBO #555683)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
Telephone:     (617) 227-5725
Facsimile:     (617) 722-6003

Kenneth P. George (*Pro Hac Vice*)
Ira E. Silfin (*Pro Hac Vice*)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone:     (212) 336-8000
Facsimile:   (212) 336-8001

*Attorneys for Plaintiffs Arrow International, Inc.
and Arrow International Investment Corp.*

# TABLE OF CONTENTS

Page

I.    Background ...................................................................................... 1

II.   Argument ....................................................................................... 6

      A.    Principles of Claim Construction ......................................... 6

      B.    Claim Construction Issues .................................................. 8

            1.    The Preamble Is Not Limiting ..................................... 8

            2.    Y-Shaped ................................................................. 10

      C.    Securing ......................................................................... 12

III.  Conclusion .................................................................................... 13

# TABLE OF AUTHORITIES

CASES                                                                    Page

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ..................................................... 9

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997) ..................................................... 7

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ..................................................... 9

*Jeneric/Pentron v. Dillon Co., Inc.*,
205 F.3d 1377 (Fed. Cir. 2000) ..................................................... 5

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) ..................................................... 6

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ..................................................... 6, 8

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ..................................................... 6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..................................................... 6, 7

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999) ..................................................... 9

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
326 F.3d 1255 (Fed. Cir. 2003) ..................................................... 7

*Rowe v. Dror*,
112 F.3d 473 (Fed. Cir. 1997), ..................................................... 9

*Standard Oil Co. v. Am. Cyanamid Co.*,
774 F.2d 448 (Fed. Cir. 1985) ..................................................... 7

*S.T.X., L.L.C. v. Brine, Inc.*,
211 F.3d 588, 591 (Fed. Cir. 2000) ..................................................... 9

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ........................................................................ 6

*Wahpeton Canvas Co. v. Frontier, Inc.*,
870 F.2d 1546 (Fed. Cir. 1989) ....................................................................... 5

Plaintiffs Arrow International, Inc. and Arrow International Investment Corp. (collectively, "Arrow") submit this Memorandum setting forth the claim construction issues for the Court to decide. In accordance with the Scheduling Order, the parties have made certain disclosures and met to narrow the issues which the Court must decide. As set forth in detail below, Arrow contends that all the claim terms should be given their ordinary meaning without the inclusion of any extraneous limitations.

## I.    Background

This is an action for patent infringement brought by Arrow against Spire Biomedical, Inc. ("Spire"), based on Spire's manufacture and sale of the Pourchez RetrO high flow kink resistant catheter. Arrow International Investment Corp. is the owner of United States Patent No. 6,872,198, entitled, "Double-Y-Shaped Multi-Lumen Catheter with Selectively Attachable Hubs." Arrow International, Inc. is the exclusive licensee of this patent. The '198 Patent issued on March 25, 2005. It is directed to a method, known as retrograde insertion or reverse tunneling, for implanting a catheter generally used for hemodialysis. The inventors of the '198 Patent are Jon Wilson, Carl Fleming, Kenneth Cassidy, Ronald Boyd, and Gary Fleming. These individuals worked for a company called Diatek, which focused on developing catheters for use with the retrograde insertion technique. Arrow purchased the assets of Diatek in 2003.

People suffering from kidney failure must undergo hemodialysis to stay alive. Healthy kidneys clean blood by removing excess fluid, minerals, and waste. When a person's kidneys are unable to properly clean the blood, hemodialysis is necessary. During hemodialysis, a patient's blood is withdrawn from the body, filtered, and

338357.1                                    -1-

returned to the patient.  Typically, a patient must undergo hemodialysis three times a week.[1]  In order for the process to be done efficiently, a high rate of blood flow is required.

Depending on a patient's condition, there are different ways to get access to the patient's blood stream to remove blood for hemodialysis.[2]  For patients with relatively strong blood flow, hemodialysis access can be established in an arm, using either the patient's own blood vessels or by having a graft implanted into the arm.  Two venipunctures are made, allowing blood to flow away from the patient (arterial) and back to the patient (venous or veinal) flow.

The products involved in this lawsuit are used for patients with insufficient blood flow in their arms.  For such patients, an alternative access method is to insert a catheter directly into the patient's heart.  Arrow's Edge (pictured below) and Spire's Pourchez XpressO (neither of which are at issue in this case) are examples of this type of catheter.  Such catheters are dual lumen, that is, they have two tubes, one for arterial (away from the patient) flow and one for veinal (toward the patient) flow.  These catheters are



*Arrow Edge Antegrade Tunneled Chronic Hemodialysis Catheter*

---

[1] For more information on hemodialysis, see National Kidney Foundation, A to Z Heath Guide at http://www.kidney.org/atoz/atozItem.cfm?id=35.

[2] For more information on hemodialysis access, see National Kidney Foundation, A to Z Heath Guide at http://www.kidney.org/atoz/atozItem.cfm?id=71.

known as chronic hemodialysis catheters. One end of the catheter (the first or proximal end) is implanted in the right atrium of the patient's heart where there is a sufficient supply of blood. The other end of the catheter (the second or distal end) has a hub or hubs which enable the two lumens of the catheter to be connected to the hemodialysis equipment.

Prior to the work of Diatek, chronic hemodialysis catheters were implanted via a method called antegrade tunneling. Using this method, access to the heart is obtained through an incision in the patient's neck. However, there are many reasons why a catheter cannot be simply left extending from the patient's neck, including the facts that the catheter would not be secure and having the hub in proximity to the neck is awkward. So, a technique was developed to run a portion of the catheter under the skin (subcutaneously) of the patient away from the neck region.

The antegrade insertion technique calls for the physician to use a trocar (similar to a knitting needle) to tunnel through a layer of fat under the skin, between points (B) and (C) in the figure to the right. The tunnel begins at a site in proximity to the place in the neck (B), where the catheter will be placed, downwardly to a position near the patient's chest (C). Once the tunnel has been formed, the first or internal end of the catheter is pulled from the bottom of the tunnel (C) and out the top (B) (antegrade tunneling). Then, the first end of the



*Subcutaneously Tunneled Chronic Hemodialysis Catheter*

catheter is inserted into the jugular vein.  It then is pushed down through the superior vena cava to the heart until the tips of the catheter are located in the right atrium of the heart (A).

The individuals at Diatek recognized certain limitations in this antegrade technique.  In particular, in order to ensure that the tips of the first end of the catheter ended up at the ideal location, the physician had to precisely select the length of the catheter.  Diatek recognized that by initially placing the first end of the catheter in the heart and then pulling the second end of the catheter downwardly through the tunnel (retrograde), the tips of the catheter could always be placed precisely in the right atrium of the heart.  However, none of the chronic hemodialysis catheters then available could be retrograde tunneled because the attached hub on the external end could not be pulled through the subcutaneous tunnel.  Therefore, Diatek invented both the retrograde tunneling technique and catheters adapted for retrograde tunneling.  In doing so, Diatek applied for several patents.  The patent-in-suit, United States Patent No. 6,872,198,[3] is one of the patents arising from Diatek's development work.



The '198 Patent teaches a dual lumen chronic hemodialysis catheter.  The catheter (10) has a central portion (12) in which both lumens (5, 6) are joined.  App. A at col. 3, ll. 23-24.  At each end, the two lumens separate so that each end of the catheter has a veinal (14,

*Figure 1 of the '198 Patent*

---

[3]A copy of the '198 Patent is attached as Appendix A.

18) and an arterial (16, 20) extension tube.  App. A at col. 3, ll. 24-27.  The retrograde

insertion technique requires that the physician perform certain steps to properly place

the catheter in the patient.  An incision is made in the skin of the patient at point (B),

and the catheter is passed through the jugular vein and superior vena cava to the heart

until the tips of the first end (the "proximal" end) of the catheter are properly positioned

in the patient's heart.  A subcutaneous tunnel is made between points (B) and (C).  The

second end (the "distal" end) of the catheter is then pulled through the tunnel from (B)

to (C) so that the second end of the catheter is exposed.[4]  The second end of the catheter

is then secured to the patient.  App. A at col. 5, ll. 24-46.

The '198 Patent has eight claims.  Arrow has alleged that Spire is infringing only

claims 1, 2, and 3.  Claim 1 is independent; claim 2 depends on claim 1; and claim 3

depends on claim 2.[5]  These claims are directed to a particular method of inserting a

catheter having a particular construction.  Counsel for Arrow and Spire have met and

conferred and narrowed the issues which are in dispute.  In total, there are only three

claim construction issues for the Court to decide as follows:

1.    Whether the preamble of claim 1 is limiting;

2.    The meaning of the term "Y-shaped"; and

3.    The meaning of the term "securing."

---

[4] The two lumens of the second end of the catheter are clamped until the patient is ready for hemodialysis.

[5] A dependent claim includes a reference to at least one other claim in the patent and must be interpreted to encompass each of its own elements as well as any additional elements recited in the referenced claim. *Jeneric/Pentron v. Dillon Co., Inc.*, 205 F.3d 1377, 1388 (Fed. Cir. 2000); *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989).

The parties have reached a stipulation as to how the remainder of the claims should be interpreted.[6]

## II.    Argument

### A.    Principles of Claim Construction

Claim construction is a question of law, and therefore, it is up to the court to construe the claims. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996). Proper claim construction is essential to appropriately instruct the jury so that the jury can make a proper infringement determination. *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1305 (Fed. Cir. 2005) (*citing Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978-79 (Fed. Cir. 1995) (en banc) (in a jury case, the court has the obligation to construe the meaning of claim language as a matter of law)).

The United States Court of Appeals for the Federal Circuit recognizes that "[i]t is well-settled that, in interpreting [a] claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.* Extrinsic evidence, such as dictionaries and treatises in the field, may also be considered, although extrinsic evidence is deemed "less significant" than the intrinsic record when determining the meaning of a claim term. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (citations omitted), *cert. denied,* 126 S.Ct. 1332 (2006).

---

[6] Appendix B is a chart showing the stipulated claim terms. There are no infringement issues with respect to the stipulated claim terms. Arrow and Spire have agreed that there is no preclusive effect of this stipulation in the event that Arrow asserts infringement of the '198 Patent against another party.

The starting point for determining the meaning of a patent claim is the claim language itself which defines the scope of the patentee's rights. *Phillips,* 415 F.3d at 1313. The words of the claims are generally given the ordinary and customary meaning that they would have to a person of ordinary skill in the art at the time of the invention. *Id.* at 1312-13.

The claims must be read in the context of the entire patent, including the specification which is considered to be "the single best guide to the meaning of a disputed term." *Id.* at 1315 (*quoting Vitronics,* 90 F.3d at 1582). "The specification is . . . the primary basis for construing the claims." *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985) (*quoted in Phillips,* 415 F.3d at 1315)). A patentee may act as his own lexicographer by defining a term differently from the meaning the term would otherwise possess. *Id.* at 1316. The object of the invention and the problem to be solved are also proper considerations for the Court in determining the meaning of the claim terms. *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1160 (Fed. Cir. 1997).

While a patent claim must be read in light of the specification, it is not proper to read a limitation into the claim from the written description. *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.,* 326 F.3d 1255, 1264 (Fed. Cir. 2003) ("A basic claim construction canon is that one may not read a limitation into a claim from the written description"). Therefore, for example, it is improper to read the limitations of the specification describing a preferred embodiment into the claim as a limitation. *Id.* Although the

specification describes and enables the invention, the claims "define[] the scope of a

patent grant." *Markman,* 517 U.S. at 373.

**B.     Claim Construction Issues**

Claim 1 of the '198 Patent reads as follows:

> 1. A method for surgically implanting a double-Y-shaped
> multi-lumen catheter tube into a patient, the multi-lumen
> catheter including an elongated, central, multi-lumen tube
> portion, a proximal end portion including a single-lumen
> proximal veinal extension tube and a single-lumen proximal
> arterial extension tube each having a proximal tip, and a
> distal end portion including a single-lumen distal veinal
> extension tube and a single-lumen distal arterial extension
> tube each having a distal end, the method comprising:
>
> (a) making an incision in the skin of the patient;
>
> (b) inserting the proximal tips of the proximal veinal and
> arterial extension tubes through the incision and placing the
> proximal tips in the patient;
>
> (c) forming a subcutaneous tunnel having a first end
> proximate to the incision and a second end remote from the
> first end of the tunnel;
>
> (d) guiding the distal veinal and arterial extension tubes and
> at least a portion of the central tube portion through the
> subcutaneous tunnel such that at least the distal ends of the
> distal veinal and arterial extension tubes extend outwardly
> from the tunnel through the second end of the tunnel; and
>
> (e) securing at least a portion of the distal end portion of the
> catheter to the patient.

**1.     The Preamble Is Not Limiting**

The first part of a patent claim is called the preamble, which is followed by the

body of the claim.  The parties disagree as to whether the preamble of claim 1 is a

limitation of the claim or merely an introduction.  It is Arrow's position that the

preamble is not a limitation.

In claim 1, the preamble reads:

> A method for surgically implanting a double-Y-shaped multi-lumen catheter tube into a patient, the multi-lumen catheter including . . . .

App. A at col. 11, ll. 11-38.  Following this preamble, the body of the claim recites the construction of the catheter and the five steps required to infringe this patent for the retrograde insertion technique.  Thus, the complete invention is described after the preamble (the structure of the catheter and the five method steps).

Since the preamble to claim 1 is not necessary to give meaning to the claim and only introduces the intended purpose of the invention, the preamble does not constitute a claim limitation.  *See Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  The preamble is of no significance to claim construction and cannot constitute a claim limitation if the body of the claim sets out the **complete invention** and the preamble is not necessary to give meaning to the claim.  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1373 (Fed. Cir. 2001) (*citing Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).  "[W]here a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation."  *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997), *quoted in S.T.X., L.L.C. v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) .

The body of claim 1 specifically describes the construction of the catheter as including a central body and two single lumen extension tubes located at each end of the catheter.  Claim 1 also includes the five specific steps required for practicing the patented

method.  The short preamble does not give any meaning to the claim, merely serving as an introduction to the intended use of the invention.

Since the body of claim 1 sets forth the complete invention, including the catheter construction and the required steps, the preamble is not a limitation.

### 2.    Y-Shaped

If the Court determines that the preamble of claim 1 is a limitation, the parties dispute the meaning of the term "Y-shaped" in the preamble.  Of course, if the Court determines that the preamble of claim 1 is not a limitation, it is not necessary to interpret the meaning of "Y-shaped."

As described fully in the claim, the multi-lumen catheter has a central portion comprised of two lumens, labeled 5 and 6. At both ends of the central portion, the lumens separate from each other into arterial (red) and veinal (blue) extension tubes.[7] These ends are shown in detail in figure 5 (the first end) and figure 2 (the second end) of the '198 Patent, both reproduced here.  At the first (proximal) end of the catheter the arterial extension tube is labeled 16 (red) and the veinal extension tube is labeled 14 (blue); at the second (distal) end the extension tubes are labeled 18 (red) and 20 (blue).  Figures 5 and 2 also respectively show the angles between the extension tubes labeled as $\alpha$ and $\theta$.



*Figure 5 of the '198 Patent (color added)*

---

[7] The fact that these separate extension tubes at each end of the catheter are specifically claimed supports the fact that the preamble recitation of a "double-Y-shaped" catheter is not limiting.

The specification of the '198 Patent describes the angle α between the extension tubes at the first end of the catheter. A range of angles is provided, but no specific angle is required to practice the invention.



Figure 2 of the '198 Patent
(color added)

> As shown in FIG. 5, the proximal extension tubes are arranged such that an included angle "α" exists between the longitudinal axes of the tubes 14, 16 in a free state. In a preferred arrangement, the angle "α" is about 5 degrees in a rest position or free state. The proximal extension tubes 14, 16 can be arranged, however, so that **the angle "α" is any desired angle.**

App. A at col. 8, ll. 44-50 (emphasis added). Likewise, the angle θ between the extension tubes of the second end is not limited to any specific angle. The specification describes this angle as:

> As shown in FIG. 2, the distal extension tubes are arranged such that an included angle "θ" exists between the longitudinal axes of the tubes 18, 20 in a free state. In a preferred arrangement, the angle "θ" ranges from about 10 degrees to about 30 degrees. The distal extension tubes 18, 20 can be arranged, however, so that **the angle "θ" is any desired angle**.

App. A col. 7, ll.14-20 (emphasis added).

Based on the intrinsic evidence, it is clear that the term "Y-shaped" denotes the splitting of the lumens from the central portion of the multi-lumen catheter to create separate extension tubes at either end. The claim does not specify any particular minimum (or maximum) angle between the extension tubes. Nothing in the intrinsic evidence requires any minimum angle between the extension tubes. In fact,

the specification supports an included angle of *any* measure.  Therefore, it would be improper to read any angle limitation into the claims.

### C.    Securing

The last step of the claimed method is:

> securing at least a portion of the distal end portion of the catheter to the patient.

App. A col. 11, ll. 32-33.  The "distal end portion" is the second end of the catheter, which is outside the patient.  The requirement for "securing" should be given its ordinary meaning.

As required when applying for a patent, the inventors included a description of how to secure the catheter to the patient.  It is clear from the specification that the inventors did not believe that any specific method of securing the catheter to the patient was required.  The specification provides the following descriptions of the securing step:

> At least a portion of the distal end portion of the catheter is secured to the patient such as by sutures or **any other suitable means.**

> When the catheter includes a stabilizing cuff, the method may further include dilating at least a portion of the subcutaneous tunnel to receive the cuff. . . . The distal end portion of the catheter is secured to the patient by seating the cuff in a dilated portion of the subcutaneous tunnel.

App. A at col. 5, ll. 44-54 (emphasis added).

The broad language of the claim limitation reflects the fact that securing may be done by "any suitable means."  It is up to the physician to decide the best way to secure the second end of the catheter to the patient.  Thus, as long as the end result is that the catheter is secure, the means by which it is secured is not restricted by the claim.

### III.   Conclusion

Since the body of the claim 1 describes the complete invention, the preamble of claim 1 is not limiting.  If the Court does find the preamble limiting, "Y-shaped" should be interpreted to mean having separate extension tubes, with no limitation on the angle between the extension tubes.  "Securing" should be given its ordinary meaning and not be interpreted to require any particular method of securing.

Respectfully submitted,

ARROW INTERNATIONAL, INC. and
ARROW INTERNATIONAL INVESTMENT
   CORP.

By their attorneys,

/s/ Brian E. Whiteley
Brian E. Whiteley  (BBO #555683)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
Telephone:   (617) 227-5725
Facsimile:   (617) 722-6003

Kenneth P. George (*Pro Hac Vice*)
Ira E. Silfin (*Pro Hac Vice*)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone:   (212) 336-8000
Facsimile:   (212) 336-8001

Dated:   April 12, 2006

US006872198B1

(12) **United States Patent**

Wilson et al.

(10) Patent No.: **US 6,872,198 B1**

(45) Date of Patent: **Mar. 29, 2005**

(54) **DOUBLE-Y-SHAPED MULTI-LUMEN CATHETER WITH SELECTIVELY ATTACHABLE HUBS**

(75) Inventors: **Jon S. Wilson**, Winston-Salem, NC (US); **Carl M. Fleming**, Palm City, FL (US); **Kenneth T. Cassidy**, Mocksville, NC (US); **Ronald D. Boyd**, Statesboro, GA (US); **Gary S. Fleming**, Palm City, FL (US)

(73) Assignee: **Arrow International, Inc.**, Reading, PA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 258 days.

(21) Appl. No.: **10/231,748**

(22) Filed: **Aug. 30, 2002**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/086,033, filed on Feb. 28, 2002, now Pat. No. 6,638,242, which is a continuation of application No. 09/769,052, filed on Jan. 24, 2001, now abandoned.

(51) Int. Cl.$^7$ .............................................. **A61M 31/00**
(52) U.S. Cl. ........................ **604/513**; 604/508; 604/523; 604/164.04; 604/175; 604/164.03
(58) **Field of Search** ................................. 604/523, 528, 604/533–535, 537–539, 284, 264, 913, 500, 506–508, 513, 104, 93.01, 158, 164.01, 164.03, 164.04, 164.09–164.11, 170.01, 170.02, 174, 175, 43

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,134,402 A      1/1979  Mahurkar
4,299,228 A  *  11/1981  Peters  ......................... 604/122
4,327,722 A  *   5/1982  Groshong et al.  .......... 604/510

(Continued)

OTHER PUBLICATIONS

Instructions for Use (Copyright Dated 1990) for Polycath Polyurethane Central Venous Catheter; believed to have been packaged with product believed to have been sold in the United States before Jan. 2000 and related marketing materials.

Instructions for Use (Copyright Dated 1992) for FloLock Single Lumen Bi–directional Valved Catheter; believed to have been packaged with product believed to have been sold in the United States before Jan. 2000.

(Continued)

*Primary Examiner*—Cris L. Rodriguez
(74) *Attorney, Agent, or Firm*—Amster, Rothstein & Ebenstein, LLP

(57)      **ABSTRACT**

A multi-lumen catheter and method for inserting same in a patient is disclosed. The catheter includes an elongated, central, multi-lumen tube portion having a proximal end and a distal end. The central tube portion has a substantially cylindrical outer shape and is internally segmented into a plurality of lumens. A distal branch portion includes a plurality of single-lumen distal extension tubes. A proximal branch portion includes a plurality of single-lumen proximal extension tubes. Each proximal extension tube has a distal first end and a proximal second end. The distal first end of each proximal extension tube is connected to the proximal end of the central tube portion such that the single lumen of each distal extension tube is in fluid communication with one of the plurality of lumens of the central tube portion. Each lumen of the central tube portion and the lumens of the distal and proximal extension tubes in fluid communication therewith define a flow path through the catheter. Selectively attachable hub connectors are provided for selective attachment to the distal extension tubes and connection of the catheter to a fluid exchange device.

**8 Claims, 10 Drawing Sheets**



**US 6,872,198 B1**

Page 2

### U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,432,752 | A | * | 2/1984 | Marlon | 604/500 |
| RE31,873 | E | * | 4/1985 | Howes | 128/674 |
| 4,543,087 | A | | 9/1985 | Sommercorn et al. | |
| 4,568,329 | A | | 2/1986 | Mahurkar | |
| 4,619,643 | A | | 10/1986 | Bai | |
| 4,623,327 | A | | 11/1986 | Mahurkar | |
| 4,643,711 | A | * | 2/1987 | Bates | 604/4 |
| 4,675,004 | A | * | 6/1987 | Hadford et al. | 604/44 |
| 4,681,122 | A | * | 7/1987 | Winters et al. | 128/736 |
| 4,692,141 | A | | 9/1987 | Mahurkar | |
| 4,772,268 | A | * | 9/1988 | Bates | 604/174 |
| 4,808,155 | A | | 2/1989 | Mahurkar | |
| 4,832,687 | A | * | 5/1989 | Smith, III | 604/506 |
| 4,895,561 | A | * | 1/1990 | Mahurkar | 604/43 |
| 5,053,003 | A | * | 10/1991 | Dadson et al. | 604/28 |
| 5,053,004 | A | | 10/1991 | Markel et al. | |
| 5,053,023 | A | * | 10/1991 | Martin | 604/280 |
| 5,059,170 | A | * | 10/1991 | Cameron | 604/43 |
| 5,106,368 | A | * | 4/1992 | Uldall et al. | 604/43 |
| 5,129,891 | A | * | 7/1992 | Young | 604/283 |
| 5,190,520 | A | * | 3/1993 | Fenton, Jr. et al. | 604/29 |
| 5,312,337 | A | | 5/1994 | Flaherty et al. | 604/93 |
| 5,342,386 | A | * | 8/1994 | Trotta | 606/194 |
| 5,360,397 | A | * | 11/1994 | Pinchuk | 604/27 |
| 5,380,276 | A | * | 1/1995 | Miller et al. | 604/28 |
| 5,399,168 | A | * | 3/1995 | Wadsworth, Jr. et al. | 604/175 |
| 5,417,668 | A | * | 5/1995 | Setzer et al. | 604/263 |
| 5,431,661 | A | | 7/1995 | Koch | 606/108 |
| 5,472,432 | A | * | 12/1995 | Martin | 604/248 |
| 5,509,897 | A | * | 4/1996 | Twardowski et al. | 604/43 |
| 5,558,635 | A | * | 9/1996 | Cannon | 604/49 |
| 5,624,413 | A | * | 4/1997 | Markel et al. | 604/280 |
| 5,632,729 | A | * | 5/1997 | Cai et al. | 604/93 |
| 5,637,102 | A | * | 6/1997 | Tolkoff et al. | 604/283 |
| 5,704,915 | A | * | 1/1998 | Melsky et al. | 604/175 |
| 5,718,678 | A | * | 2/1998 | Fleming, III | 604/43 |
| 5,743,873 | A | * | 4/1998 | Cai et al. | 604/93 |
| 5,772,643 | A | * | 6/1998 | Howell et al. | 604/283 |
| 5,776,111 | A | * | 7/1998 | Tesio | 604/264 |
| 5,797,869 | A | * | 8/1998 | Martin et al. | 604/43 |
| 5,807,311 | A | * | 9/1998 | Palestrant | 604/28 |
| 5,876,366 | A | | 3/1999 | Dykstra et al. | |
| 5,944,732 | A | | 8/1999 | Raulerson et al. | 606/167 |
| 5,947,953 | A | * | 9/1999 | Ash et al. | 604/508 |
| 5,989,206 | A | * | 11/1999 | Prosl et al. | 604/5.01 |
| 5,989,213 | A | * | 11/1999 | Maginot | 604/28 |
| 6,001,079 | A | | 12/1999 | Pourchez | |
| 6,033,382 | A | | 3/2000 | Basta | 604/104 |
| 6,074,374 | A | * | 6/2000 | Fulton | 604/249 |
| 6,086,555 | A | | 7/2000 | Eliasen et al. | 604/93 |
| 6,113,572 | A | * | 9/2000 | Gailey et al. | 604/93 |
| 6,156,016 | A | * | 12/2000 | Maginot | 604/264 |
| 6,190,349 | B1 | * | 2/2001 | Ash et al. | 604/43 |
| 6,190,371 | B1 | * | 2/2001 | Maginot et al. | 604/523 |
| 6,206,849 | B1 | * | 3/2001 | Martin et al. | 604/43 |
| 6,293,927 | B1 | * | 9/2001 | McGuckin, Jr. | 604/266 |
| 6,342,120 | B1 | | 1/2002 | Basta | 156/242 |
| 6,428,513 | B1 | * | 8/2002 | Abrahamson | 604/174 |
| 6,585,705 | B1 | * | 7/2003 | Maginot et al. | 604/265 |
| 6,638,242 | B2 | | 10/2003 | Wilson et al. | |
| 6,682,519 | B1 | * | 1/2004 | Schon | 604/508 |
| 2001/0041857 | A1 | | 11/2001 | Sansoucy | 604/33 |
| 2003/0153898 | A1 | * | 8/2003 | Schon et al. | 604/544 |

### OTHER PUBLICATIONS

Instructions for Use (not dated) for Infuse–a–Cath Polyurethane Central Venous Catheter; believed to have been packaged with product believed to have been sold in the United States before Jan. 2000.

Pictures of device believed to be partial sample of a product believed to have been sold in the United States before Jan. 2000 with the Polycath and/or Infuse–a–Cath Instructions for Use.

Copending U.S. Appl. No. 10/251,411; entitled Multi–Lumen Catheter with Attacheble Hub, filed Sep. 20, 2002.

Copending U.S. Application No. 10/231,577; entitled Multi–Lumen Catheter with Integrated Connector, filed Aug. 30, 2002.

Copending U.S. Appl. No. 10/251,384; Apparatus and Method for Reverse Tunneling a Multi–Lumen Catheter in a Patient, filed Sep. 20, 2002.

Copending U.S. Appl. No. 10/612,532; entitled Multi–Lumen Catheter with Attacheble Hub, filed Jul. 1, 2003.

Abandoned U.S. Appl. No. 10/086,033; entitled Multi–Lumen Catheter with Attacheble Hub, filed Jan. 24, 2001.

Believed to be an unpublished sketch of a conception by Dr. John Frusha; date of sketch believed to be Jun. 24, 1997.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6A



FIG. 6B



FIG. 6C



FIG. 6D



FIG. 7



FIG. 8A



FIG. 8B

FIG. 8C

US 6,872,198 B1

**1**

# DOUBLE-Y-SHAPED MULTI-LUMEN CATHETER WITH SELECTIVELY ATTACHABLE HUBS

## RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 10/086,033, filed Feb. 28, 2002, now U.S. Pat. No. 6,638,242, which is a continuation of U.S. patent application Ser. No. 09/769,052, filed Jan. 24, 2001, abandoned.

## BACKGROUND

### 1. Field of the Invention

The present invention relates generally to medical instruments and more specifically to a multi-lumen catheter including y-shaped distal and proximal ends, and including selectively attachable hubs for selectively connecting the catheter to a fluid exchange device.

### 2. Description of the Prior Art

Catheters, generally, are hollow, flexible tubes for insertion into a body cavity, duct, or vessel to allow the passage of fluids or distend a passageway. Catheters are often used for temporary or long-term dialysis treatment. Dialysis treatment provides for blood to be withdrawn from the patient, purified, and then returned to the patient. Thus, in dialysis treatment, catheters are used to allow passage of a patient's blood into and out of the patient's body. For optimal performance during dialysis treatment, the catheter tips, both in-flow and out-flow, should be placed in close proximity to the heart. Typically, medical personnel use either a double lumen catheter or two single lumen catheters. Both types, however, present certain deficiencies.

While double lumen catheters (e.g., U.S. Pat. No. 4,895, 561) allow for a single insertion of the catheter into the desired vein, double lumen catheters typically do not permit optimal catheter tip placement. Due to differences among patients, optimal top position varies from patient to patient. Non-optimal tip position may significantly lower flow values, resulting in less effective dialysis treatment. For current double lumen catheters, a physician must make an estimate regarding the appropriate catheter tube length prior to beginning the procedure of catheterization. Then, a subcutaneous tunnel is made from a first end, which is near the area to be catheterized, to a second end, which is the preferred end position of the hub assembly, namely, away from the neck of the patient, in order to allow for more convenient access to the dialysis treatment equipment. The catheter tube is then routed forwardly through the subcutaneous tunnel from the second end to the first end so that the catheter tips extend outwardly from the first end of the tunnel. Either before or after tunneling, a sheath is inserted through the first end of the tunnel and into the area to be catheterized, and the catheter tips are inserted into the sheath and the area to be catheterized. The estimated catheter tube length and subsequent forward tunneling may result in less than optimal tip placement.

With the use of two independent single lumen catheters (e.g., U.S. Pat. No. 5,776,111 to Tesio) the problem of tip placement is addressed. The hub assembly of each catheter is removable from the tube and tip portion of the catheter, thereby allowing the catheter tip to be placed directly into the vein and advanced into the desired position. Then, the proximal end of the catheter can be reverse tunneled and trimmed to a desired length. Thereafter, the hub assembly is attached. Deficiencies, however, exist in this method of catheterization as well. One problem associated with this method is that this method requires two separate venous insertions, namely, two tunnels and two of each accessory instrument used for the procedure. Therefore, there is increased surgical time required to place two catheters, there are two wound entry sites which doubles the risk of post-surgical infection, and the two catheters together are significantly larger in diameter than one double lumen catheter.

Applicant's co-pending applications Ser. No. 09/769,052 filed Jan. 24, 2001, and Ser. No. 10/086,033, filed Feb. 28, 2002, disclose a multi-lumen catheter apparatus an method for inserting the apparatus in a patient. The disclosures of these co-pending applications are hereby incorporated by reference. In the disclosed apparatus and method, a multi-lumen catheter includes a selectively attachable hub assembly that allows the catheter tip to be positioned accurately within a patient's vein prior to subcutaneous tunneling. The distal end of the catheter tube is selectively attachable to the hub assembly. Accordingly, after the tips of the catheter have been accurately positioned in a patient, the other end of the catheter may be reverse tunneled under the skin of a patient. Before or after tip placement, an incision is made in the skin adjacent to the point where the protruding distal end of the catheter exits the skin. A subcutaneous tunnel is then formed having a first end at the incision and a second end exiting the skin at a point remote from the first end of the tunnel, generally as the caudal direction. A sheath dilator is inserted into the tunnel, which is partially dilated so as to accommodate a tissue in-growth stabilizing cuff. The distal end of the catheter tube is routed through the subcutaneous tunnel and the cuff seated therein, thereby stabilizing the distal portion of the catheter tube in the patient. A selectively attachable hub assembly is connected to the lumens at the distal tip of the catheter for subsequent connection of the catheter to a fluid exchange device, such as a dialysis machine.

While the selectively attachable hub assembly described above facilitates tunneling a multi-lumen catheter in a patient, the separable hub assembly creates the need to connect the hub to a distal end of a multi-lumen catheter tube, thereby adding an additional step to the catheter insertion/connection procedure, which increases surgical time and expense. Furthermore, the hub-catheter connection provides an additional connection which may leak or separate from the catheter tube due to external loads on the hub such as by pulling or snagging. In addition, the attachable hub assembly is a relatively complex part, which makes it difficult to manufacture and, therefore, use of the hub assembly increases the cost of the catheter itself.

Therefore, there is a need for multi-lumen catheter that can be inserted into a patient using a reverse tunneling technique, which permits accurate placement of the tips of the catheter into the area to be catheterized and that is selectively attachable to a fluid exchange device. The improved catheter should not require an extensive hub assembly, thus making it relatively inexpensive to manufacture and easy to insert into a patient.

## SUMMARY OF THE INVENTION

A multi-lumen catheter is provided for use in hemodialysis and the like. The multi-lumen catheter includes an elongated, central, multi-lumen tube portion having a distal end and a proximal end. The central tube portion has a substantially cylindrical outer shape and is internally segmented into a plurality of lumens. A distal branch portion includes a plurality of single-lumen distal extension tubes.

**3**

Each distal extension tube has a proximal first end and a distal second end. The proximal first end of each distal extension tube is connected to the distal end of the central tube portion such that the single lumen of each distal extension tube is in fluid communication with one of the plurality of lumens of the central tube portion. A proximal branch portion includes a plurality of single-lumen proximal extension tubes. Each proximal extension tubes has a distal first end and a proximal second end. The distal first end of each proximal extension tube is connected to the proximal end of the central tube portion such that the single lumen of each distal extension tube is in fluid communication with one of the plurality of lumens of the central tube portion. A plurality of selectively attachable connector hubs are provided, each connector hub being configured to be selectively attachable to the distal second end of one of the distal extensions and being configured for selective connection to a fluid exchange device. Each lumen of the central tube portion and the lumens of the distal and proximal extension tubes in fluid communication therewith define a flow path through the catheter. An in-growth stabilizing cuff may be affixed to an outer portion of the central tube portion.

The multi-lumen catheter may include a central tube portion having two lumens. In such a catheter, the distal branch portion includes two distal extension tubes, and the proximal branch portion includes two proximal extension tubes. The catheter may be arranged such that the plurality of single-lumen distal extension tubes of the distal branch portion converge to form a distal multi-lumen connecting portion which connects to the distal end of the central tube portion, and the plurality of single-lumen proximal extension tubes comprising the proximal branch portion converge to a proximal multi-lumen connecting portion which connects to the proximal end of the central tube portion.

The central tube portion, the distal extension tubes, and the proximal extension tubes may be comprised of a fusible material, and the distal extension tubes and proximal extension tubes may be respectively fused to the distal and proximal ends of the central tube portion. The distal extension tubes may have a substantially cylindrical outer shape near their distal second ends, and the proximal multi-lumen connection portion may also have substantially cylindrical outer shape. The proximal extension tubes may have a substantially D-shaped cross-section over at least a portion of their length. Also, the proximal extension tubes may be substantially parallel to each other in a free state, and the proximal second ends of the distal extension tubes may be longitudinally spaced from each other.

The multi-lumen catheter may further include a plurality of connector hubs for connecting the catheter to a fluid exchange device. Each connector hub may configured to be connected to the distal second end of one of the distal extension tubes, and configured for connection to a portion of a fluid exchange device. Each of the proximal extension tubes may include a tube wall, and each of the proximal extension tubes may include at least one opening extending through its tube wall. Further, an external portion of at least one of the distal extension tubes may include indicia which indicates a discrete flow path through the catheter. In one arrangement, the two proximal extension tubes have longitudinal axes which intersect at an included angle in a free state, the included angle being in a range from about 10 degrees to about 30 degrees.

A y-shaped catheter junction for a multi-lumen catheter is also provided. The y-shaped junction includes a dual-lumen trunk, having a substantially cylindrical outer wall, a first end, a second end, a first lumen, and a second lumen. A first

**4**

single-lumen extension tube is connected to the first end of the trunk, such that the single lumen of the first single-lumen extension tube is in fluid communication with the first lumen of the trunk. A second single-lumen extension tube is connected to the first end of the trunk such that the single lumen of the second single-lumen extension tube is in fluid communication with the second lumen of the trunk. The y-shaped junction is arranged such that the first lumen of the trunk and the first extension tube define a first flow path, and the second lumen of the trunk and the second extension tube define a second flow path. The y-shaped catheter junction may also be arranged such that the first and second extension tubes have longitudinal axes which intersect at an included angle near the first end of the trunk in a free state, the included angle being in a range from about 10 degrees to about 30 degrees.

A method of forming a multi-lumen catheter is also disclosed. The method includes attaching a first plurality of single-lumen extension tubes to a distal end of a length of multi-lumen tubing comprising a plurality of multiple lumens, and attaching a second plurality of single-lumen extension tubes to a distal end of the length of multi-lumen tubing. Each single lumen of each extension tube is in fluid communication with one of the lumens of the length of multi-lumen tubing. The length of multi-lumen tubing may include two lumens, and the first and second pluralities of extension tubes may form substantially y-shaped junctions on each end of the length of multi-lumen tubing.

The method of forming a multi-lumen catheter may include first forming a y-shaped distal junction. The process may include providing a first length of single-lumen tubing to form a distal arterial extension tube, providing a second length of single-lumen tubing to form a distal veinal extension tube, providing a first length of multi-lumen tubing comprising at least an arterial lumen and a veinal lumen, and having a distal end and a proximal end, attaching an end of the distal arterial extension tube to the distal end of the first length of multi-lumen tubing such that the distal arterial extension tube is in fluid communication with the arterial lumen of the first length of multi-lumen tubing, and attaching an end of the distal veinal extension tube to the distal end of the first length of multi-lumen tubing such that the distal veinal extension tube is in fluid communication with the veinal lumen of the first length of multi-lumen tubing. The proximal end of the first length of multi-lumen tubing forms a connecting end.

A second length of multi-length tubing having a distal end and a proximal end is provided. The tubing includes an arterial lumen and a veinal lumen. The connecting end of the first length of multi-length tubing is connected to the distal end of the second length of multi-length tubing, such that the arterial extension tube of the distal junction in fluid communication with the arterial lumen of the second length of multi-lumen tubing, and the veinal extension tube of the distal junction is in fluid communication with the veinal lumen of the second length of multi-lumen tubing.

A y-shaped proximal junction is also formed. This process includes providing a third length of single-lumen tubing to form a proximal arterial extension tube, and providing a fourth length of single-lumen tubing to form a proximal veinal extension tube. A third length of multi-lumen tubing is also provided which includes at least an arterial lumen and a veinal lumen, and has a distal end and a proximal end. An end of the proximal arterial extension tube is attached to the distal end of the third length of multi-lumen tubing such that the proximal arterial extension tube is in fluid communication with the arterial lumen of the third length of multi-

5

lumen tubing, Also, an end of the proximal veinal extension tube is attached to the distal end of the third length of multi-lumen tubing such that the proximal veinal extension tube is in fluid communication with the veinal lumen of the third length of multi-lumen tubing. The distal end of the third length of multi-length tubing forms an attachment end.

The attachment end of the third length of multi-length tubing is attached to the proximal end of the second length of multi-lumen tubing, such that the arterial extension tube of the proximal junction is in fluid communication with the arterial lumen of the second length of multi-lumen tubing, and the veinal extension tube of the proximal junction is in fluid communication with the veinal lumen of the second length of multi-lumen tubing. The method may also include forming at least one opening in a wall of the proximal veinal extension tube, and forming at least one opening in a wall of the arterial proximal extension tube. The steps of attaching extension tubes and lengths of multi-lumen tubing together or to each other may include heat welding or similar fusing techniques. The longitudinal axes of the distal arterial extension tube and distal veinal extension may be arranged to intersect at an included angle in a free state in a range from about 10 degrees to about 30 degrees.

A method for surgically implanting a double-Y-shaped multi-lumen catheter into a patient is also provided. The method is suited for implanting a multi-lumen catheter having an elongated, central, multi-lumen tube portion, a proximal end portion including a single-lumen proximal veinal extension tube and a single-lumen proximal arterial extension tube each having a proximal tip, and a distal end portion including a single-lumen distal veinal extension tube and a single-lumen distal arterial extension tube each having a distal end. The method includes making an incision in the skin of the patient, and inserting the proximal tips of the proximal veinal and arterial extension tubes through the incision and placing the proximal tips in the patient. A subcutaneous tunnel is formed having a first end proximate to the incision and second end remote from the first end of the tunnel. The distal veinal and arterial extension tubes and at least a portion of the central tube portion are guided through the subcutaneous tunnel such that at least the distal ends of the distal veinal and arterial extension tubes extend outwardly from the tunnel through the second end of the tunnel. At least a portion of the distal end portion of the catheter is secured to the patient such as by sutures or any other suitable means.

When the catheter includes a stabilizing cuff, the method may further include dilating at least a portion of the subcutaneous tunnel to receive the cuff. Dilation of the tunnel may be accomplished by sliding a sheath dilator along the shaft of a trocar longitudinally positioned within the tunnel. The distal end portion of the catheter is secured to the patient by seating the cuff in a dilated portion of the subcutaneous tunnel.

The catheter implanting method may further include respectively connecting the distal arterial and veinal extension tubes to arterial and veinal legs of a fluid exchange device. Connecting the distal arterial and veinal extension tubes may include connecting the distal arterial extension tube to the arterial leg with a first connector hub, and connecting the proximal veinal extension tubes to the veinal leg with a second connector hub. Inserting the proximal tips of the proximal veinal and arterial extension tubes into a patient may include placing the proximal tip of the veinal extension tube into a vein in the patient, and placing the proximal tip of the arterial extension tube into an artery in the patient.

6

These and other aspects of the invention will be made clear from a reading the following detailed description together with the drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a double y-shaped multi-lumen catheter;

FIG. 2 is a cross-sectional view of a distal portion of the multi-lumen catheter of FIG. 1;

FIG. 3 is a partially exploded detail perspective view of a distal portion of the multi-lumen catheter of FIG. 1;

FIG. 4 is a partially exploded detail perspective view of a proximal portion of the multi-lumen catheter of FIG. 1;

FIG. 5 is a cross-sectional view of a proximal portion of the multi-lumen catheter of FIG. 1;

FIGS. 6A–6D illustrate a procedure for tunneling a multi-lumen catheter like that of FIG. 1 in a patient;

FIG. 7 is a partial sectional view of a sheath dilator engaged along a trocar to dilate a portion of a subcutaneous tunnel in a patient;

FIGS. 8A–8C are views of a connection between a distal end of the catheter and a trocar for guiding the catheter through a subcutaneous tunnel.

## DETAILED DESCRIPTION

For the purposes of the following description and the claims appended hereto, the relative term "proximal" refers to those portions of a catheter and those portions of components of the catheter which are nearest the insertion end of the catheter, that is, the end of the catheter that is inserted into an area of a patient'as body being catheterized, such as a blood vessel. Conversely, the relative term "distal" refers to those portions of a catheter and those portions of components of the catheter which are farthest from the insertion end of the catheter.

FIG. 1 shows a double-Y-shaped multi-lumen catheter 10 according to the present invention. The catheter 10 includes a proximal end 34 for insertion into a patient, and a distal end 36 for connection to a fluid exchange device, such as a dialysis machine or the like. The catheter 10 includes an elongated, central, multi-lumen tube portion 12, a plurality of proximal single-lumen extension tubes 14, 16, and a plurality of distal single-lumen extension tubes 18, 20. In the embodiment shown, the central tube portion 12 includes an arterial lumen 5 and a veinal lumen 6. In this arrangement, the catheter 10 includes a proximal veinal extension tube 14 and a distal veinal extension tube 18 in fluid communication with the veinal lumen 6, and a proximal arterial extension tube 16 and a distal arterial extension tube in fluid communication with the arterial lumen 5. The catheter 10 may include a stabilizing cuff 15 affixed to an outer portion of the central tube portion 12 as shown in FIG. 1. Preferably, the cuff 15 is longitudinally positioned on the central tube portion 12 such that the cuff 15 will be finally positioned in a subcutaneous tunnel in a patient as described more fully below.

A construction for the distal end 36 of the multi-lumen catheter 10 is shown in FIGS. 1–3. As shown in FIGS. 2 and 3, the proximal ends 18p, 20p of the distal extension tubes 18, 20 may be connected to a distal end 12d of the central tube portion 12 by a distal multi-lumen trunk 30. The multiple lumens of the distal trunk 30 correspond in number to the multiple lumens of the central tube portion 12 and the number of distal extension tubes 18, 20. In the illustrated embodiment, the distal trunk 30 includes a veinal distal

7                                                                          8

trunk lumen **48**, and an arterial distal trunk lumen **47** as shown in FIG. **2**. As shown in FIG. **3**, the proximal ends **18**$p$, **20**$p$ of the distal extension tubes **18**, **20** are connected to the distal end **30**$d$ of the distal trunk, thereby forming a substantially Y-shaped junction. The proximal end **30**$p$ of the distal trunk **30** is connected to the distal end **12**$d$ of the central tube portion **12** as shown in FIG. **2**, thereby forming a Y-shaped distal end **36**. Preferably, the proximal end **30**$p$ of the distal trunk **30** is substantially cylindrical in shape, and is substantially equal in outer diameter to the outer diameter of the central tube portion **12**, thereby providing a smooth transition at the juncture between the distal trunk **30** and the central tube portion **12**.

As shown in FIG. **2**, the distal extension tubes are arranged such that an included angle "θ" exists between the longitudinal axes of the tubes **18**, **20** in a free state. In a preferred arrangement, the angle "θ" ranges from about 10 degrees to about 30 degrees. The distal extension tubes **18**, **20** can be arranged, however, so that the angle "θ" is any desired angle. The veinal distal trunk lumen **48** is in fluid communication with the veinal lumen **6** of the central tube portion **12** and the single lumen of the distal extension tube **18**. Similarly, the arterial distal trunk lumen **47** is in fluid communication with the arterial lumen **5** of the central tube portion **12** and the single lumen of the distal arterial extension tube **20**.

In an alternative arrangement, the distal extension tubes **18**, **20** may be connected directly to the distal end **12**$d$ of the central tube portion **12** rather than to an interconnected distal trunk **30** (not shown). In either arrangement, the mating end portions of the distal extension tubes **18**, **20**, the distal end of the central tube portion **12**$d$, and/or the distal trunk **30** are sealably fused together by heat welding or the like such that the fluid communication between the interconnecting lumens of the components is established and maintained and no leakage occurs at the connections.

As shown in FIGS. **1–3**, the catheter **10** also includes selectively attachable connector hubs **72**, **74** on the distal ends **18**$d$, **20**$d$ of the distal extension tubes **18**, **20**. As will be described in detail below, the connector hubs **72**, **74** are selectively attachable so that the connector hubs **72**, **74** can be attached to and removed from the distal end **36** of the catheter **10** after insertion of the proximal end **34** of the catheter **10** into a patient, and after reverse, subcutaneous tunneling of the distal end **36**. As shown in FIGS. **1** and **2**, the connector hubs **72**, **74** are configured for selectively sealable attachment between the distal ends **18**$d$, **20**$d$ of the distal extension tubes **18**, **20** and legs of a fluid exchange device. The connector hubs. The veinal connector hub **72** is selectively attached to the distal portion **18**$d$ of the distal veinal extension tube **18**, and the arterial connector hub **74** is selectively attachable to the distal portion **20**$d$ of the distal arterial extension tube **20**.

In one embodiment as shown in FIGS. **1–3**, the selectively attachable hubs **72**, **74** are connectable with mating compression fittings **58**, **60**. The compression fittings may include cannulae **66**, **68** and threaded male portions **62**, **64** that matingly engage the distal extension tubes **18**, **20** and the connector hubs **72**, **74** as shown in FIG. **2**. When fully engaged, the hubs **72**, **74** and compression fittings **58**, **60** compress compression sleeves **70** about the distal portions **18**$d$, **20**$d$ of the distal extension tubes **18**, **20**, thereby forming sealed connections. The compression fittings **58**, **60** may be further connected to luer-type fittings **50**, **52**, or the like by connector tubes **54**, **56**. The luer-type fittings **50**, **52** may then be connected to corresponding luer-type connection mechanisms on a fluid exchange device **200**. For example, the distal ends of the luer-type fittings **50**, **52** may include quarter-turn type threads for leak-tight engagement with matching quarter-turn fittings on the veinal and arterial legs of a fluid exchange device **200**. Other types of known leak-tight selectively attachable connection configurations may also be used.

As shown in FIGS. **1** and **3**, the connector hubs **72**, **74** can be selectively attached to the distal ends **18**$d$, **20**$d$ of the distal extension tubes **18**, **20**. This arrangement permits the distal end **36** of the catheter **10** to be subcutaneously reverse tunneled in a patient as described more fully below without interference from the hubs **72**, **74**. After the distal end of the catheter **10** is subcutaneously reverse tunneled in a patient such that the distal end **36** protrudes outwardly from the patient, the hubs **72**, **74** can be backfit over the distal ends of distal extension tubes **18**, **20** as shown for hub **72** in FIG. **3**. The compression sleeves **70** can then be placed over the distal ends **18**$d$, **20**$d$ of the extension tubes **18**, **20**, and the sealed connections can be completed as shown in FIG. **2**. The catheter **10** can then be connected to a fluid exchange device **200**.

A construction for the proximal end **34** of the catheter **10** is shown in FIGS. **1**, **4**, and **5**. The distal ends **14**$d$, **16**$d$ of the proximal extension tubes **14**, **16** may be connected to a proximal end **12**$p$ of the central tube portion **12** by a proximal multi-lumen trunk **32**. The lumens of the proximal trunk **32** correspond in number to the multiple lumens of the central tube portion **12** and to the number of proximal extension tubes **14**, **16**. In the illustrated embodiment, the proximal trunk **32** includes a veinal proximal trunk lumen **31**, and an arterial proximal trunk lumen **33** as shown in FIG. **5**. As shown in FIG. **4**, the distal ends **14**$d$, **16**$d$ of the proximal extension tubes **14**, **16** are connected to the proximal end **32**$p$ of the proximal trunk **32**, thereby forming a substantially Y-shaped junction. The distal end **32**$d$ of the proximal trunk **32** is connected to the proximal end **12**$p$ of the central tube portion **12** as shown in FIG. **5**, thereby forming a substantially Y-shaped proximal end **34** on the catheter **10**. Preferably, the distal end **32**$d$ of the proximal trunk **32** is substantially cylindrical in shape, and is substantially equal in outer diameter to the outer diameter of the central tube portion **12**, thereby providing a smooth transition at the juncture between the proximal trunk **32** and the central tube portion **12**.

As shown in FIG. **5**, the proximal extension tubes are arranged such that an included angle "α" exists between the longitudinal axes of the tubes **14**, **16** in a free state. In a preferred arrangement, the angle "α" is about 5 degrees in a rest position or free state. The proximal extension tubes **14**, **16** can be arranged, however, so that the angle "α" is any desired angle. The veinal proximal trunk lumen **31** is in fluid communication with the veinal lumen **6** of the central tube portion **12** and the single lumen of the proximal veinal extension tube **14**. Similarly, the arterial proximal trunk lumen **33** is in fluid communication with the arterial lumen **5** of the central tube portion **12** and the single lumen of the proximal arterial extension tube **16**.

In an alternative arrangement, the proximal extension tubes **14**, **16** may be connected directly to the proximal end **12**$p$ of the central tube portion **12** rather than to an interconnecting proximal trunk **32** (not shown). In either arrangement, the mating end portions of the proximal extension tubes **14**, **16**, the proximal end of the central tube portion **12**$p$, and/or the proximal trunk **32** are sealably fused together, such as by heat welding or the like, such that the fluid communication between the interconnected lumens of the components is established and maintained and no leakage occurs at the connections.

**9**

As shown in FIGS. **1**, **4**, and **5**, the proximal arterial extension tube **16** is preferably shorter in length than the proximal veinal extension tube **14**. For example, the proximal arterial extension tube **16** may be about 4 cm shorter in length than the proximal veinal extension tube **14**. The resulting longitudinal spacing between the proximal tips **14***p* and **16***p* facilitates optimal proximal tip placement in a patient. As shown in FIG. **4**, the proximal veinal extension tube **14** may include an end opening **43** in or near its proximal tip **14***p*. The proximal veinal extension tube **14** may also include one or more transverse openings **42** in its tube wall **40**. Similarly, as also shown in FIG. **4**, the proximal arterial extension tube **16** may include an end opening **47** in or near its proximal tip **16***p*. The proximal arterial extension tube **16** may also include one or more transverse openings **46** in its tube wall **44**. The openings **42**, **43**, **46**, and **47** facilitate fluid flow into or out from the proximal extension tubes **14**, **16**.

The hubs **72** and **74** are selectively attachable and detachable from the distal end **36** of the catheter **10** to facilitate tunneling the catheter **10** in a patient. A method of installing a catheter **10** in a patient is illustrated in FIGS. **6A–6D**. As shown in FIG. **6A**, an incision **100** is made in the skin of a patient. The proximal tips **14***p*, **16***p* of catheter **10** are inserted through the incision **100** and are placed at desired locations within the patient using conventional techniques, such as the Seldinger technique.

At this stage, the distal end **36** and distal portions of the catheter **10** extend outwardly from the incision **100**. A trocar **120** or other suitable instrument is used to form a subcutaneous tunnel **102** having a first end **104**, which is preferably coincident with the incision **100**, and an opposed second end **106**, which is remote from the first end **104**, as shown in FIG. **6A**.

As shown in FIG. **6B**, the distal end **36** of the catheter **10** is inserted through the first end **104** of the tunnel **102**, and the distal end **36** is guided through the tunnel **102** such that the distal end **36** extends out from the tunnel **102** at its second end **106**. The distal extension tubes **18**, **20** are sufficiently flexible that they may be bundled or clamped together by any suitable means to facilitate passing the Y-shaped distal end **36** of the catheter **10** through the tunnel **102**.

In a preferred arrangement as shown in FIGS. **8A** and **8B**, the distal ends **18***d*, **20***d* of the distal extension tubes **18**, **20** are attached to a connector **300**. The proximal end of the connector **300** may include a first tip **302** and a second tip **304** as shown. The tips **302**, **304** are insertable into the lumens at the distal ends **18***d*, **20***d* of the distal extension tubes **18**, **20**. The tips **302**, **304** preferably include ribs **301** or the like to tightly engage within the distal ends **18***d*, **20***d* of the distal extension tubes **18**, **20** such that the connector **300** is securely but removably attached to the extension tubes **18**, **20**. When the tips **302**, **304** are respectively engaged in the distal extension tubes **18**, **20**, the connector **300** holds the distal extension tubes **18**, **20** in close arrangement as shown so that the distal extension tubes **18**, **20** can be simultaneously subcutaneously tunneled in a patient as described below. The distal end of the connector **300***d* preferably includes a bore **306** which is configured to attachably receive an insertion tip **308** of the trocar **120**. The bore **306** may include threads **310** which can be engaged with mating threads **312** on the insertion tip **308** of the trocar **120**. Alternatively, the bore **306** may include a collar portion **314** which snaps into a groove **309** on the insertion tip **308** of the trocar **120** as shown in FIG. **8C**. In this way, the distal end **300***d* of the connector **300** can be engaged on the

**10**

insertion tip **308** of the trocar **120** to route the attached distal extension tubes **18**, **20** through the subcutaneous tunnel **102** with the trocar **120**. Once the distal end **36** of the catheter **10** has been drawn through the tunnel **102**, the connector **300** can be disengaged from the distal extension tubes **18**, **20**.

In order to provide the distal portions of the catheter **10** with a smooth and compact outer profile to facilitate passage of the distal end **36** of the catheter **10** through the tunnel **102**, a sheath **320** may be used as shown in FIG. **8B**. The sheath **320** is placed over at least a portion of the connector **300** and the distal extension tubes **18**, **20**. Preferably, the distal end **320***d* of the sheath **320** is tapered as shown. The sheath **320** and the distal portions of the catheter **10** can be drawn together through the tunnel **102** with the trocar **120**. The sheath **320** is removed from the catheter **10** once the distal portions of the catheter **10** have been drawn through the tunnel **102**.

As shown in FIG. **6C**, the distal end **36** of the catheter **10** is drawn from the second end **106** of the tunnel **102** such that the distal extension tubes **18**, **20** and at least a portion of the central tube portion **12** extends from the second end **106** and the catheter **10** is fully tunneled in the patient. The incision **100** and the second end **106** of the tunnel are suitably treated and dressed.

An outer portion of the central tube portion **12** may include a tissue in-growth stabilizing cuff **15**, as shown in FIG. **1**, for stabilizing the inserted catheter **10** in the patient. Referring to FIGS. **6C** and **7**, when the catheter **10** includes a stabilizing cuff **15**, a portion **130** of tunnel **102** may be dilated to enlarge the width of the tunnel **102** to receive the cuff **15** as the catheter **10** is drawn through the tunnel **102**. As shown in FIG. **7**, the dilated portion **130** of the tunnel is preferably dilated by sliding a sheath dilator **200** over an end **42** and shaft **41** of the trocar **120** when the trocar **120** is positioned in the subcutaneous tunnel **102** as shown in FIG. **6A**. The sheath dilator **200** preferably includes a hollow bore **208**, a tapered leading end **206**, a substantially cylindrical portion **204**, and a handle **202**. The sheath dilator **200** is inserted through the first end **104** of the tunnel **102** and into the tunnel **102** until the tip **206** has been inserted proximate to a cuff seating point **140** in the tunnel **102** to form a dilated portion **130** of the tunnel **102**. Once the dilated portion **130** of the tunnel is sufficiently dilated, the sheath dilator **200** is removed from the tunnel **102** and the trocar **120**. The catheter **10** is finally positioned in the tunnel **120** when the cuff **15** is seated near an end **140** of the dilated portion **130** of the tunnel **102** as shown in FIG. **6C**.

As shown in FIG. **6D**, the catheter **10** is connected to a fluid exchange device **200**. The distal end **18***d* of the distal veinal extension tube **18** is selectively attached to a veinal leg **228** of the fluid exchange device **200** by connector hub **72**. Similarly, the distal end **20***d* of the distal arterial extension tube **20** is selectively attached to an arterial leg **222** of the fluid exchange device **200** by connector hub **74**. As shown in FIG. **3**, indicia **26** and **28** may be included on the distal extension tubes **18**, **20** and/or the connector hubs **72**, **74** to assist medical personnel in identifying the proper distal extension tube **18** or **20** for connection to a corresponding leg of the fluid exchange device **200**. The indicia **26**, **28** may be markings, colors, or any other distinctive indicator.

While this invention has been illustrated and described in accordance with a preferred embodiment, it is recognized that variations and changes may be made therein without departing from the invention as set forth in the claims. Certain modifications and improvements will occur to those skilled in the art upon a reading of the forgoing description.

US 6,872,198 B1

11

For example, while the multi-lumen catheter has been described with reference to a catheter with two lumens, the invention also includes multi-lumen catheters including three or more lumens as required. It should be understood that all such modifications are not contained herein for the sake of conciseness and readability, but are properly within the scope of the following claims.

What is claimed is:

1. A method for surgically implanting a double-Y-shaped multi-lumen catheter tube into a patient, the multi-lumen catheter including an elongated, central, multi-lumen tube portion, a proximal end portion including a single-lumen proximal veinal extension tube and a single-lumen proximal arterial extension tube each having a proximal tip, and a distal end portion including a single-lumen distal veinal extension tube and a single-lumen distal arterial extension tube each having a distal end, the method comprising:

(a) making an incision in the skin of the patient;

(b) inserting the proximal tips of the proximal veinal and arterial extension tubes through the incision and placing the proximal tips in the patient;

(c) forming a subcutaneous tunnel having a first end proximate to the incision and a second end remote from the first end of the tunnel;

(d) guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous tunnel such that at least the distal ends of the distal veinal and arterial extension tubes extend outwardly from the tunnel through the second end of the tunnel; and

(e) securing at least a portion of the distal end portion of the catheter to the patient.

2. A method according to claim 1, the method further comprising respectively connecting the distal arterial and veinal extension tubes to arterial and veinal legs of a fluid exchange device.

3. A method according to claim 2, wherein connecting the distal arterial and veinal extension tubes to arterial and veinal legs of a fluid exchange device comprises connecting the distal arterial extension tube to the arterial leg with a first connector hub, and connecting the proximal veinal extension tubes to the veinal leg with a second connector hub.

12

4. A method of claim 1, wherein inserting the proximal tips of the proximal veinal and arterial extension tubes into a patient comprises:

placing the proximal tip of the veinal extension tube into a vein in the patent; and

placing the proximal tip of the arterial extension tube into an artery in the patient.

5. The method of claim 1 wherein the central tube portion further includes a stabilizing cuff affixed to an outer portion of the central tube portion, the method further comprising dilating at least a portion of the subcutaneous tunnel before guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous tunnel, wherein the dilating step comprises sliding a sheath dilator along a shaft of a trocar longitudinally positioned in the tunnel.

6. The method of claim 5 wherein securing at least a portion of the distal end portion of the catheter to the patient comprises seating the stabilizing cuff in a dilated portion of the subcutaneous tunnel.

7. The method of claim 1 wherein guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous tunnel comprises:

(a) inserting a trocar through the subcutaneous tunnel such that an insertion tip of the trocar protrudes from the first end of the tunnel;

(b) connecting the distal ends of the distal veinal and arterial extension tubes to a proximal end of a connector;

(c) connecting a proximal end of the connector to the protruding insertion tip of the trocar; and

(d) guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous tunnel with the trocar.

8. The method of claim 7 further comprising placing a sheath having a smooth outer contour over the connector and at least portions of the veinal and arterial extension tubes before guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous with the trocar.

*   *   *   *   *

**Stipulated Claim Construction**

**Claim 1**                                                    **Stipulated Construction**

| A method | |
|---|---|
| for surgically implanting a double-Y-shaped multi-lumen catheter tube into a patient, the multi-lumen catheter including | Whether this portion of the claim language is part of the preamble is in dispute. |
| | "Y-shaped" is a disputed term. |
| an elongated, central, multi-lumen tube portion, | The elongated, central, multi-lumen tube portion encompasses the central region of the catheter, exclusive of the proximal end portion and the distal end portion. |
| a proximal end portion including a single-lumen proximal veinal extension tube and a single-lumen proximal arterial extension tube each having a proximal tip, | The patent uses the term "proximal end portion" to describe a first set of split ends of the catheter that are to be implanted into a patient's blood stream.  The term "veinal extension tube" refers to the split end that is designed to return blood to the patient.  The term "arterial extension tube" refers to the split end that is designed to withdraw blood from the patient. |
| and a distal end portion including a single-lumen distal veinal extension tube and a single-lumen distal arterial extension tube each having a distal end, | The patent uses the term "distal end portion" to describe a second set of split ends of the catheter that are to be passed through a subcutaneous tunnel.  Again, the term "veinal extension tube" refers to the split end that is designed to return blood to the patient and the term "arterial extension tube" refers to the split end that is designed to withdraw blood from the patient. |

338815.1

**Claim 1**                                                    **Stipulated Construction**

| the method comprising: | |
|---|---|
| (a) making an incision in the skin of the patient; | This step requires the user to cut an opening in a patient's skin.  The incision must be suitable for catheter implantation. |
| (b) inserting the proximal tips of the proximal veinal and arterial extension tubes through the incision and placing the proximal tips in the patient; | This step requires that the tips of the first set of split ends of the catheter recited in the preamble be inserted into the patient. |
| (c) forming a subcutaneous tunnel having a first end proximate to the incision and a second end remote from the first end of the tunnel; | This step requires the user to form a passageway beneath the patient's skin.  This passageway runs from the incision to a second location remote from the incision. |
| (d) guiding the distal veinal and arterial extension tubes and at least a portion of the central tube portion through the subcutaneous tunnel such that at least the distal ends of the distal veinal and arterial extension tubes extend outwardly from the tunnel through the second end of the tunnel; and | This step requires that the second set of split ends be pulled through the previously formed tunnel to exit at the remote location. |
| (e) securing at least a portion of the distal end portion of the catheter to the patient. | "Securing" is a disputed term. |

**Claim 2**                                                    **Stipulated Construction**

| A method according to claim 1, the method further comprising | |
| --- | --- |
| respectively connecting the distal arterial and veinal extension tubes to arterial and veinal legs of a fluid exchange device | Connecting the second set of split ends (the so-called distal end portion) to a set of blood removal and blood return legs of a fluid exchange device. The term "legs" is used to describe fluid conduits that are a part of the fluid exchange device. |

**Claim 3**                                                    **Stipulated Construction**

| A method according to claim 2, wherein connecting the distal arterial and veinal extension tubes to arterial and veinal legs of a fluid exchange device comprises | |
| --- | --- |
| connecting the distal arterial extension tube to the arterial leg with a first connector hub, and connecting the proximal veinal extension tubes to the veinal leg with a second connector hub. | A "connector hub" is a device for connecting one of the split ends to one of the legs of the fluid exchange device. |