UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

– – – – – – – – – – – – – – – – – – – – – – x
ARROW INTERNATIONAL, INC., and ⋮
ARROW INTERNATIONAL INVESTMENT ⋮
CORP., ⋮    Civil Action No.:  05-10671 DPW
⋮
            Plaintiffs, ⋮    ECF Case
⋮
      v. ⋮
⋮
SPIRE BIOMEDICAL, INC., ⋮
⋮
            Defendant. ⋮
– – – – – – – – – – – – – – – – – – – – – – x

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Arrow International, Inc. and Arrow International Investment Corp. (collectively, "Arrow") submit this Memorandum in opposition to the Motion by Defendant Spire Biomedical, Inc. ("Spire") for Summary Judgment of Invalidity Due to Abandonment.  Spire's motion is based on Spire's misreading of the appropriate statute which has two separate requirements, both of which Arrow met.

As set forth below, and as evidenced by the exhibits submitted herewith, it is indisputable that Arrow complied with the relevant statute.  First, there was a statutory requirement for Arrow to notify the United States Patent and Trademark Office ("the U.S. Patent Office") when Arrow filed an application for foreign or international patent rights.  Arrow complied with this requirement in a timely fashion by filing its international application in the U.S. Patent Office.  Second, although there was a separate and distinct statutory requirement for Arrow to file a specific type of rescission,

with the U.S. Patent Office, there is no time limitation on when this rescission must be filed and no penalty for not filing the rescission. Arrow has filed the appropriate rescission with the U.S. Patent Office.

Therefore, because Arrow has complied with all statutory requirements, its patent application was not abandoned and the patent-in-suit is neither invalid nor unenforceable.

## I.     Background

This is a patent infringement action. Plaintiff Arrow International Investment Corp. is the owner of United States Patent No. 6,872,198 (the '198 Patent). Arrow International, Inc. is the exclusive licensee of the '198 Patent. The '198 Patent covers a method for the insertion of a multi-lumen catheter. Such catheters are typically used in connection with hemodialysis. Arrow acquired the '198 Patent when it purchased the assets of Diatek in late 2003. Defendant Spire manufactures and sells the Pourchez RetrO catheter with instructions for implantation of the catheter in accordance with the method claimed in the '198 Patent.

The application for the '198 Patent was filed in the U.S. Patent Office on August 30, 2003. It was assigned application number 10/231,748. Spire Ex. 1 at AI804591. At the time the application was filed, Diatek filed a Request and Certification Under 35 U.S.C. § 122(b)(2)(B)(i), advising the U.S. Patent Office that "the invention disclosed in the attached application has not and will not be the subject of an application filed in another country, or under a multilateral agreement, that requires publication at eighteen months after filing. I hereby request that the attached application not be published under 35 U.S.C. § 122(b)." Spire Ex. 3.

After Arrow acquired Diatek's assets, including the application for the '198 Patent, Arrow decided to seek protection for Diatek's inventions in foreign countries given Arrow's worldwide business. In order to do this, on August 28, 2003, Arrow submitted to the U.S. Patent Office an international application under the Patent Cooperation Treaty (PCT). Silfin Ex. 1.[1] This PCT application clearly stated that it was based on the application for the '198 Patent, no. 10/231,748. Silfin Ex. 1 at AI800582. The PCT application included a request by Arrow that a certified copy of the application for the '198 Patent be provided. *Id.* This PCT application was received by the U.S. Patent Office and constituted notice to the U.S. Patent Office. The U.S. Patent Office's receipt and acknowledgment of this notice is evidenced by the fact that the public records of the Patent Office (available on the internet) for application no. 10/231,748 (the application for the '198 Patent) state:

> PCT/US03/27078 filed on 08-28-2003 which is Pending claims the benefit of 10/231,748.

Silfin Ex. 2.

Thus, the first statutory requirement, for Arrow to notify the U.S. Patent Office, was timely met by filing the international PCT application in the U.S. Patent Office.[2]

Contrary to Spire's allegations in its motion, Arrow did not file applications in six foreign countries and Europe on August 28, 2003. The PCT application filed on that date in the U.S. Patent Office allowed Arrow to later claim as the priority date (the date which determines what is prior art) the date of the original United States patent filing–

---

[1] Citations in this form are to the Affidavit of Ira E. Silfin in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, submitted herewith.

[2] International PCT applications can be filed in foreign patent offices, which would obviously not constitute notice of foreign filing to the U.S. Patent Office.

August 30, 2002–for each foreign country.  Subsequently, all foreign applications are

given the filing date corresponding to the filing of the PCT application, August 28, 2003.

Based on Arrow's PCT filing, the application for the '198 Patent was published by

the U.S. Patent Office on March 11, 2004, approximately eighteen months after the

original United States filing date.  Silfin Ex. 3.  As such, the original non-publication

request was effectively rescinded.

After filing a PCT application, the applicant has 30 months from the priority date

to enter the national stage, *i.e.* filing copies of the PCT application in each foreign

country in which the applicant is seeking patent protection.  Arrow has taken the

application corresponding to the '198 Patent to the national stage in several foreign

countries, namely Australia, Canada, China, Japan, and Mexico, as well as in the

European Patent Office.  These filings were all made *after* the publication of the patent

application on March 11, 2004, on the following dates:

|  |  |
|---|---|
| Australia | March 14, 2005 (Silfin. Ex. 4) |
| Canada | February 28, 2005 (Silfin Ex. 5) |
| China | March 6, 2005 (Silfin Ex. 6) |
| Japan | February 28, 2005 (Silfin Ex. 7) |
| Mexico | February 28, 2005 |
| EPO | March 25, 2005 (Silfin Ex. 8) |

After Spire filed the instant motion, Arrow submitted a Rescission of Previous

Nonpublication Request.  Silfin Ex. 9.  As there is no time limit on the filing of a

rescission, Arrow has complied with the second statutory requirement.

Arrow submitted the rescission request to the U.S. Patent Office on March 23,

2006 together with a Petition for Revival of Potentially Abandoned Application Pursuant

to 37 C.F.R. § 1.137(b).  Silfin Ex. 10.  This was done solely as a precaution in the

unlikely event that the U.S. Patent Office finds the filing of the PCT application in the

U.S. Patent Office on August 28, 2003 not to constitute sufficient notice of foreign filing.

## II.   Argument

### A.   General Principles

Summary judgment is only appropriate if there is no genuine issue of material

fact.  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit

under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Id.*  Any doubts as to the existence of an issue of

material fact requires the denial of the motion for summary judgment.  *Omega Eng'g, Inc.*

*v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003).  The moving party bears the

burden of proving absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  In making a summary judgment determination, "[t]he

evidence of the nonmovant is to be believed, and all justifiable inferences are to be

drawn in his favor."  *Anderson*, 477 U.S. at 255; *see also*, *N. Am. Container, Inc. v.*

*Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005).

The claims of a patent are afforded a statutory presumption of validity.  *See* 35

U.S.C. §282.  To overcome this presumption, the party contesting validity must prove

invalidity by clear and convincing evidence.  *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392

F.3d 1317, 1320 (Fed. Cir. 2004); *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision*

*of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003).

**B.    The Relevant Statute**

The issue raised by Spire's motion is a fairly simple issue addressed by statute. The relevant statute allows a patent applicant to certify that no foreign or international filings will be made on the invention, and thereby avoid publication of the patent application:

> (B)(i) If an applicant makes a request upon filing, certifying that the invention disclosed in the application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication of applications 18 months after filing, the application shall not be published as provided in paragraph (1).

35 U.S.C. § 122(b)(2)(B)(i).  It is undisputed that Diatek requested non-publication of the application for the '198 Patent pursuant to subsection (i).  Spire Ex. 3.

The statute goes on to say that the applicant can rescind this non-publication request at any time:

> (ii) An applicant may rescind a request made under clause (i) at any time.

35 U.S.C. § 122(b)(2)(B)(ii).  It is undisputed that Arrow rescinded the non-publication request on March 23, 2006.  Silfin Ex. 9.

Finally, the statute separately discusses the requirement that an applicant notify the U.S. Patent Office of foreign filing of an application on which a non-publication request had been made:

> (iii) An applicant who has made a request under clause (i) but who subsequently files, in a foreign country or under a multilateral international agreement specified in clause (i), an application directed to the invention disclosed in the application filed in the Patent and Trademark Office, shall

> notify the Director of such filing not later than 45 days after the date of the filing of such foreign or international application. A failure of the applicant to provide such notice within the prescribed period shall result in the application being regarded as abandoned, unless it is shown to the satisfaction of the Director that the delay in submitting the notice was unintentional.

35 U.S.C. § 122(b)(2)(B)(iii).[3] Arrow gave notice of foreign filing to the U.S. Patent Office by filing the PCT application in the U.S. Patent Office on August 23, 2003, the very first day of the 45 day period. Silfin Ex. 1.

35 U.S.C. § 122(b)(2)(B) has separate and distinct requirements for rescinding a non-publication request and for notification to the Patent Office of foreign filings. Spire's brief confuses these two requirements. Arrow has complied with both requirements.

### a.    Rescission

It is indisputable that a rescission of the non-publication request was submitted to the U.S. Patent Office on March 23, 2006. Silfin Ex. 9. According to subsection (ii) of the statute, this rescission may be made "at any time."[4] There is nothing in the statute to which says, as Spire contends, that a patent will be abandoned if a rescission is filed late. In fact, there is no penalty imposed for late filing or never filing a rescission under 35 U.S.C. § 122(b)(2)(B)(ii). Therefore, Arrow's filing of the rescission after issuance of the '198 Patent cannot form the basis of Spire's invalidity defense.

---

[3] Spire has not directed the Court to any instance in which a patent has been declared invalid or unenforceable under this provision and Arrow's research has not revealed a finding of invalidity on that issue either.

[4] Note that the statute does not require that the rescission be submitted "at any time before the patenting or abandonment of or termination of proceedings on the application." Such a limitation on other types of filings is imposed elsewhere in the patent statutes. *E.g.*, 35 U.S.C. § 120.

The U.S. Patent Office rules, promulgated in part 1 of title 37 of the Code of Federal Regulations, are consistent with the statute.  In addition, the rules specify language which is required to be included in the rescission.  The rules reiterate the right of an applicant to submit a rescission of a non-publication request "at any time."  37 C.F.R. § 1.213(b).  Again, no penalty is provided for failure to file a rescission or for the late filing of a rescission.

Spire's argument is primarily focused on an attempt to penalize Arrow for failing to file a rescission.  Spire Mem. at 5-6.  However, this argument is unsupported by statute and the U.S. Patent Office rule.  Arrow complied with both the statue and rule by filing the rescission on March 23, 2006.

### b.    Notice of Foreign Filing

35 U.S.C. § 122(b)(2)(B)(iii) addresses the *separate* requirement of notice to the Patent Office if the applicant decides to seek foreign rights after advising the Patent Office under subsection (i) that he or she did not intend to seek foreign rights. Subsection (iii) is very specific about when a patent application becomes abandoned. Within forty-five days of filing either a patent application in a foreign country or a patent application under an international treaty, the applicant must give notice of the foreign filing to the U.S. Patent Office, or the application becomes abandoned.

In this case, the evidence shows that Arrow notified the U.S. Patent Office of the filing of its international PCT application immediately, by filing the international PCT application with the Patent Office.  The PCT application was addressed to the

Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313.[5]  Silfin Ex. 1 at AI800625.  Arrow requested, and the U.S. Patent Office provided a certified copy of the original application for the '198 Patent, Silfin Ex. 1 at AI800582 and Silfin Ex. 12, in order to claim priority to the original application.  37 CFR § 1.451(b).  The continuity data for the '198 Patent maintained by the U.S. Patent Office confirms that the U.S. Patent Office had notice of the PCT application.[6]  Silfin Ex. 2.  Thus, the U.S. Patent Office records confirm that the office knew and appreciated the fact that an international application corresponding to the application for the '198 Patent had been filed.

The U.S. Patent Office rules also cover the provision of notice to the U.S. Patent Office in the event the Applicant chooses to seek foreign rights.  37 C.F.R. § 1.213(b).  Unlike the rule for rescission, this rule does not include any specific format for providing the U.S. Patent Office with notice of the foreign filing.  Therefore, Arrow's notification to the U.S. Patent Office by the filing of the PCT application is completely consistent with the rules of the U.S. Patent Office.

The U.S. Patent Office also maintains a Manual of Patent Examining Procedure (MPEP).  Spire relies on a passage from the MPEP which states:

> [t]he Office is unlikely to recognize when applicant has filed
> a counterpart application in a foreign country or under a

---

[5] Although the statute specifies notice to the "Director," the U.S. Patent Office practice permits, even encourages, correspondence to be directed to specific departments.  37 CFR § 1.1(a)(1)(i) ("All correspondence concerning patent matters processed by organizations reporting to the Commissioner for Patents should be addressed to: Commissioner for Patents...").  Except for mail incorrectly addressed to the Office of the General Counsel, there is no penalty for addressing a document to the wrong area within the U.S. Patent Office.  Manual of Patent Examination and Procedure 501(III).  Silfin Ex. 11.

[6] Curiously, Spire cited to one web page showing Patent Office records for the '198 Patent, but did not bother to cite to the relevant page.  Had Spire clicked on the link for "Continuity Data" shown in its exhibit 2, it would have been clear that the U.S. Patent Office had received notice of Arrow's PCT filing.

> multilateral agreement contrary to their certification to the
> Office.

MPEP § 1124 (quoted in Spire Mem. at 5). This describes the circumstances under which the filing of a foreign application, per se, or an application under a multilateral treaty may not satisfy the notice requirement. If, as Spire wrongly alleged, Arrow had filed individual national applications in Australia, Canada, China, Japan, and Mexico, and an agreement under the multilateral agreement establishing the European Patent Office, then the U.S. Patent Office would not have had notice of these foreign filings. However, Arrow chose to originate its foreign filing by submitting its international PCT application to the U.S. Patent Office, providing immediate notice to the U.S. Patent Office that the filing was made.

### c.    As a Precaution, Arrow Filed a Petition to Reinstate

Even if an applicant does not provide notice, he or she may petition to have the application reinstated if "the delay in submitting the notice was unintentional." 35 U.S.C. § 122(b)(2)(B)(iii). "Intentional delay" is limited to situations in which the applicant's delay was the result of a deliberate act. *In re Application G,* 11 USPQ2d 1378, 1380 (Comm'r Pat. 1989). The standard for unintentional delay is much less strict than that applied to "unavoidable delay." *See,* H.R. Rep. No. 542, 97th Cong., 2d Sess. 6-7 (1982), reprinted in U.S. Code Cong. & Ad. News 770-771. In the unlikely event that the U.S. Patent Office determines that the notice it received on August 28, 2003 was somehow not sufficient under 35 U.S.C. § 122(b)(2)(B)(iii), Arrow has petitioned the Patent Office to revive the application for the '198 Patent. Silfin Ex. 10.

In this case, Spire has not presented any evidence regarding intentional delay. The evidence presented is that Arrow filed a rescission with the U.S. Patent Office and a petition to revive, if necessary, on March 23, 2006, only days after the issue was brought to Arrow's attention.  There is no evidence to suggest that Arrow was aware of this issue earlier and chose not to act on it.  In contrast, the cases on which Spire relies all evidence some specific intent on the part of the applicant to allow a statutory deadline to pass.  Such is not the case here.  Spire Ex. 10.  On a motion for summary judgment, the evidence must be taken in the light most favorable to the non-moving party.  Therefore, absent clear and convincing evidence of intentional delay, it must be inferred that Arrow's delay, if any, was unintentional.

## III.    Conclusion

Arrow has complied with the statutory requirements of both rescission and notice of foreign filing.  Therefore, Defendant's Motion for Summary Judgment of Invalidity Due to Abandonment should be denied.

Respectfully submitted,

ARROW INTERNATIONAL, INC. and
ARROW INTERNATIONAL INVESTMENT
    CORP.

By their attorneys,

/s/ Brian E. Whiteley
Brian E. Whiteley  (BBO #555683)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
Telephone:    (617) 227-5725
Facsimile:    (617) 722-6003

Kenneth P. George  (*Pro Hac Vice)*
Ira E. Silfin (*Pro Hac Vice)*
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone:    (212) 336-8000
Facsimile:    (212) 336-8001

Dated:    April 28, 2006