UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARROW INTERNATIONAL, INC. and ARROW INTERNATIONAL INVESTMENT CORP., | ) ) ) ) | C.A. No. 05-CV-10671-DPW |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| SPIRE BIOMEDICAL, INC., | ) ) |  |
| Defendant. | ) ) |  |

**SPIRE BIOMEDICAL INC.'S MEMORANDUM ADDRESSING ADMINISTRATIVE ISSUES RAISED BY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

Defendant Spire Biomedical, Inc. ("Spire") submits this memorandum of law to address certain administrative and procedural issues related to its Motion for Summary Judgment of Invalidity based on 35 U.S.C. § 122(b)(2)(B)(iii).

**I.      CONCISE STATEMENT OF FACTS**

When the application which ostensibly became U.S. Patent No. 6,872,198 was filed, the applicants requested that the application not be published pursuant to 35 U.S.C. § 122(b)(2)(B)(i).  That request certified to the Patent and Trademark Office ("PTO") that the invention disclosed in the application had not and would not be the subject of an application either in another country or under a multilateral international agreement.  The '198 invention, however, subsequently became the subject of an international application filed under the Patent Cooperation Treaty ("PCT") and six corresponding foreign applications.  Neither Plaintiffs (the owner and purported exclusive licensee of the '198 Patent) nor any of the inventors of the '198 Patent informed the PTO of these filings or sought to rescind the request for nonpublication.

Spire moved for summary judgment that the '198 Patent is invalid and/or unenforceable due to abandonment of its application by Plaintiffs Arrow International, Inc. and Arrow International Investment Corp. (collectively "Arrow"). In response to that motion, Plaintiffs filed a Petition for Revival of Potentially Abandoned Application Pursuant to 37 C.F.R. § 1.137(b) for the patent-in-suit with the PTO. No action, to date, has been taken with regard to that revival petition.

## II. THIS COURT HAS AUTHORITY TO RULE THAT 35 U.S.C. 122 (B)(2)(B)(iii) RENDERS THE '198 PATENT ABANDONED AS A MATTER OF LAW AND TO DISMISS THIS LAWSUIT.

### A. If Notice is Inadequate, Spire is Entitled to Dismissal of this Lawsuit Because Arrow Currently Lacks Standing.

The Court has before it a dispositive issue. Fundamentally, if notice was inadequate, the patent application became abandoned as a matter of law and Arrow lost their right to enforce the patent-in-suit.[1] *See Urologix, Inc. v. Prostalund AB*, 227 F. Supp. 2d 1033 (E.D. Wis. 2002) (dismissing claims based on patent abandoned for failure of copendency). Dismissal of this lawsuit is no less appropriate here because unenforceability of the patent is trigged by Plaintiffs' failure to follow procedural dictates of the PTO. *See, e.g.*, *Ray v. Lehman*, 55 F.3d 606, 610 (Fed. Cir. 1995) (upholding abandonment decision citing patentee's failure to pay regular maintenance fees); *Okor v. Sega of America, Inc.*, 193 F. Supp. 2d 269, 272 n.2 (D. Mass. 2001) (finding patent application abandoned for failure to respond to Office action); *Kim v. Quigg,* 718 F. Supp. 1280, 1284 (E.D. Va. 1989) (same).

---

[1] In other contexts as well, the abandonment of a federally granted right has resulted in the dismissal of a lawsuit. *See Melwani v. Singh*, No. 04 Civ. 1322, 2004 U.S. Dist. LEXIS 14265 (S.D.N.Y. July 26, 2004) (holding that the trademark had been abandoned for failure to use; therefore, assignee had no standing to bring lawsuit); *General Healthcare Ltd. v. Qashat*, 254 F. Supp. 2d 193 (D. Mass. 2003).

### B.  This Court has Authority to Rule on the Issue of Notice and Abandonment.

Spire has found no evidence in federal procedural or administrative law that would provide the PTO with exclusive jurisdiction on these issues; therefore, the Court is not *required* to defer to the PTO on the issue of adequate notice and abandonment. Instead, the doctrine of primary jurisdiction—a doctrine of *judicial discretion*—applies. (See Spire's Opp. Stay.)

The Court should not exercise its discretion under that doctrine to defer to the agency here. Arrow chose to place before this Court an issue within its jurisdiction. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."). Moreover, in contrast to this Court, which has the ability and authority to interpret the statute, the PTO has no procedure for determining whether adequate notice was provided pursuant to 35 U.S.C. § 122(b)(2)(B)(iii).[2] Indeed, the agency itself acknowledges that "the Office is unlikely to recognize when applicant [sic] has filed a counterpart application in a foreign country or under a multilateral agreement contrary to their certification to the Office." Manual of Patent Examining Procedure ("MPEP") § 1124 at 1100-19 (8th ed.). The PTO, therefore, will neither provide notice to the applicant that abandonment has occurred nor internally change the status of the application to abandoned. *Id.* The burden is squarely placed upon the applicant to notify the PTO of abandonment and apply for revival of the patent. "*Applicants who determine that a*

---

[2] 35 U.S.C. 122(b)(2)(B)(ii) is not applicable here because Plaintiffs filed foreign applications and did not rescind the nonpublication request *prior* to those filings. Arrow's rescission of the nonpublication request submitted to the PTO on March 23, 2006 is inadequate to prevent abandonment. Although a rescission may be made at any time, "[f]iling a rescission under 35 U.S.C. 122(b)(2)(B)(ii) of this nonpublication request later than forty-five days after the date of the counterpart application was filed would not have the effect of annulling the nonpublication request so as to retroactively restore the application to pending status." Clarification of the United States Patent and Trademark Office's Interpretation of the Provisions of 35 U.S.C. 122(b)(2)(B)(ii)–(iv), Official Gazette Notices (July 1, 2003). The Official Gazette makes clear that Arrow's assertion that the "filing of the rescission after issuance of the '198 Patent cannot form the basis of Spire's invalidity defense" is incorrect as a matter of law. *Id.* (See Arrow Opp. Memo 7–8.)

*required notice of foreign filing was not timely provided* should promptly file a petition to revive . . . ." *Id.* at 1100-19–1100-20. The PTO's sole responsibility with regard to this statute is to determine whether an application may be restored under 37 C.F.R. § 1.137(b).

### C. A Subsequent Revival Decision by the PTO would have No Effect on This Court's Adjudication of Notice under 35 U.S.C. § 122(b)(2)(B)(iii).

The only revival issue related to this Court's adjudication of notice and abandonment is whether a PTO decision—were it to revive the '198 Patent—would have retroactive effect.[3] There is no precedent for concluding that a revival decision affects a lawsuit deemed void *ab initio*. *See. e.g.*, *Urologix, Inc. v. Prostalund A.B.*, 256 F. Supp. 2d 911, 915 (E.D. Wis. 2003). Additionally,

> [E]ven if the PTO decision could effect [sic] ongoing litigation, it is not clear that such a decision could ever operate nunc pro tunc to undermine the prior decision of a federal court. The Supreme Court has said that 'judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned, or refused full faith and credit by another Department of Government.'

*Id.* at 915. Because a revived patent should be effective only as of the date of revival, a judicial decision on the issues of notice, abandonment and standing would not run afoul of any subsequent decision by the PTO. If revival is granted in favor of Arrow, that decision would (implicitly) acknowledge the abandonment of the '198 Patent and reinforce a judicial finding of inadequate notice.

The Court has, nonetheless, expressed some concern that dismissal may merely result in the filing of a new case if and when the patent is revived. Of course, cases are often dismissed without prejudice to allow Plaintiffs the opportunity to bring the lawsuit once the issues are ripe

---

[3] There appears to be no dispute regarding the retroactive nature of the revival decision. Arrow's counsel on June 21, 2006 stated before the Court, "I think your analysis is probably correct, that the damages claim would have to begin as of the date of revival. And whether there is even jurisdiction over the case as of April of last year when it was filed is questionable." (Markman Tr. 10:8–12).

for consideration. Whether or not a second lawsuit may be imminent should not deter this Court from deciding the issue of Arrow's standing. Moreover, staying this case to await the PTO's decision does not provide Spire adequate relief. First, it falls short of the relief provided by law—dismissal of this case if abandonment has occurred. (See Section II.B., *supra*, for a discussion of the Court's authority to rule on the issue of abandonment.) Second, even upon the issuance of an initial determination by the PTO, Arrow has admitted that it will appeal an adverse decision through both the administrative agency and judicial system. Having the case stayed while this process occurs will only cause both the Court and the Defendant to expend additional, and potentially unnecessary, time and money. Other equitable factors also favor dismissal. Spire faces, for example, prejudice in the marketplace due to the existence of an improperly filed lawsuit. In sum, there are a host of factors weighing in favor of a determination on notice and abandonment by this Court irrespective of a revival decision.

## III.  THIS COURT ALSO HAS AUTHORITY TO RULE ON THE ISSUE OF REVIVAL.

The Court is not required to defer to the PTO on the issue of revival. First, the oft cited assertion that an issue is not ripe for judicial scrutiny because of a party's failure to exhaust all administrative remedies does not apply in this instance. Spire, the party seeking relief before this Court, has no remedy within the agency and no right to participate in the PTO revival action. This Court is the only forum for Spire to address the issues of abandonment and revival that are currently ripe for review.

Additionally, as noted, the discretionary doctrine of primary jurisdiction controls the question of authority. (Spire Opp. Stay 3.) The possibility that conflicting decisions by the PTO and this Court, at least theoretically, could occur should not cause this Court to defer under primary jurisdiction. A judicial determination of abandonment and unenforceability—with no

possibility of revival—would have *Blonder-Tongue* collateral estoppel effect. *Blonder-Tongue Laboratories, Inc .v Univ. of Illinois Foundation*, 402 U.S. 313 (1971). "'Where a patent has been declared invalid in a proceeding in which the patentee has had a full and fair chance to litigate the validity of his patent' the patentee is collaterally estopped from relitigating the validity of the patent." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) (citing *Blonder-Tongue*, 402 U.S. at 333). Additionally, this Court has correctly characterized the issue presented as a declaratory judgment action. (Markman Tr. 4:5). The Declaratory Judgment Act provides, in part: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). On appeal, the reviewing court would consider only whether the patentee had a full and fair chance to litigate validity. A decision of invalidity/unenforceability would be binding upon the PTO unless and until a court finds that the decision does not have res judicata effect. *Ethicon*, 849 F.2d at 1429.

      Furthermore, Arrow seeks to take advantage of this Court to adjudicate issues of infringement, but wishes to leave questions of validity to the PTO. Plaintiffs cannot have it both ways. Arrow had the opportunity to voluntarily dismiss this case when confronted with the fact that its patent was invalid for abandonment. Instead, they grasped for a theory that would allow them to remain before the Court. That choice itself reaffirms this Court's authority to rule on all issues related to patentability and invalidity—including the issue of Arrow's intentional delay in satisfying the requirements of 35 U.S.C. § 122(b)(2)(B)(iii).

## IV. THE LAW PROVIDES FOR JUDICIAL REVIEW OF A PTO DECISION CONCERNING REVIVAL.

Were this Court to defer to the PTO on the issue of revival, the agency's decision is reviewable by any court with jurisdiction over questions of patent validity/enforceability. *See Smith v. Mossinghoff*, 671 F.2d 533, 538 (D.C. Cir. 1982) (finding that the Commissioner's discretion "cannot remain wholly uncontrolled."). "Whatever may be the scope of the Commissioner's discretion to deny a petition to revive a patent application—a question on which we express no view—the existence of that discretion does not bar judicial review of the Commissioner's decision."[4] *Morganroth v. Quigg*, 885 F.2d 843, 846 (Fed. Cir. 1989). The review is governed by the Administrative Procedures Act which allows a reviewing court to set aside or make unlawful an agency decision that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is applicable not only in direct challenges to the PTO's decision made by the patentee on appeal before the Federal Circuit, but also where an alleged infringer asserts invalidity. *See Lawman Armor Corp. v. Simon*, Case No. 04-CV-72260, 2005 U.S. Dist. LEXIS 10843 (E.D. Mich. March 29, 2005) (finding delay intentional and PTO's decision to revive not in accordance with law); *Field Hybrids, LLC v. Toyota Motor Corp.*, Civil No. 03-4121, 2005 U.S. Dist. LEXIS 1159 (D. Minn. Jan. 27, 2005) (finding delay intentional and PTO's decision to revive an abuse of discretion). Spire reserves the right to challenge the PTO's revival decision after such decision issues, as well as assert all other applicable defenses.[5]

---

[4] The Court derives its authority to review the Commissioner's decision on a petition to revive from 28 U.S.C. § 1338(a) and 5 U.S.C. § 701 et. seq. and also under 28 U.S.C. 1361. *See Morganroth*, 885 F.2d at 846.

[5] Spire is also entitled to allege inequitable conduct during the revival petition process. *See Field Hybrids*, 2005 U.S. Dist. LEXIS 1159 at *26–27; *Ulead Systems, Inc. v. Lex Computer Mgmt. Corp.*, 351 F.3d 1139, 1144 (Fed. Cir. 2003).

## CONCLUSION

For all the foregoing reasons, as well as those presented in Spire's Motion for Summary Judgment and corresponding Memorandum, Spire respectfully requests that this Court exercise its authority and rule in favor of Spire on the issues presented in its Summary Judgment Motion.

Dated: July 13, 2006

Respectfully Submitted,

SPIRE BIOMEDICAL, INC.
By its attorneys,

___/s/ Heather B. Repicky_____
Daniel J. Gleason (BBO # 194900)
Thomas J. Engellenner (BBO # 154460)
Michelle Chassereau Jackson (BBO # 654825)
Heather B. Repicky (BBO # 663347)
NUTTER MCCLENNEN & FISH, LLP
Word Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone (617) 439-2000
Facsimile (617) 439-9000

## CERTIFICATE OF SERVICE

I hereby certify that this document field through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

___/s/ Heather B. Repicky_____
Heather B. Repicky

1543472.3