UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------x
ARROW INTERNATIONAL, INC., and :
ARROW INTERNATIONAL INVESTMENT :
CORP., : Civil Action No.: 05-10671 DPW
:
Plaintiffs, : ECF Case
:
v. :
:
SPIRE BIOMEDICAL, INC., :
:
Defendant. :
---------------------------------x

**Plaintiffs' Brief Responding to the Court's Questions Regarding Procedural Issues Arising from Defendant's Motion For Summary Judgment Of Invalidity Due To Abandonment**

Plaintiffs Arrow International, Inc. and Arrow International Investment Corp. (collectively "Arrow") submit this brief in response to questions raised by the Court on June 21, 2006 regarding procedural issues arising from Defendant Spire Biomedical, Inc.'s Motion For Summary Judgment Of Invalidity Due To Abandonment.[1]

## I.    Additional Factual Background

On June 20, 2006, counsel for Arrow received a copy of a Decision Granting Petition Under 37 CFR 1.137(b) in connection with U.S. Patent No. 6,921,396 (the '396 Patent) (copy attached as Exhibit A).[2] The '396 Patent is one of the patents acquired by Arrow in the Diatek transaction. Similar to the '198 Patent-in-suit, a nonpublication

---

[1] Arrow maintains its opposition to Spire's summary judgment motion and continues to assert that it provided timely notice to the Patent Office of its PCT filing, as reflected by the records of the Patent Office showing actual notice by Arrow of the PCT application (Silfin Ex. 2 to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment).

[2] Counsel involved in this Action were not aware of the Decision Granting Petition Under 37 CFR 1.137(b) until after the hearing.

345536.2

request had been submitted in the initial filing of the application for the '396 Patent. Concurrent with Arrow's petition to the Patent Office with respect to the alleged failure of notice of foreign filing in the '198 Patent, Arrow submitted substantially similar petitions for the '396 Patent and two other patents. For reasons unknown, the Patent Office acted on the petition for the '396 Patent first. To date, Arrow has not received decisions on the petitions filed for the '198 Patent-in-suit or the other two patents.

As set forth in the Decision, the Patent Office treated the petition as one made pursuant to 37 CFR § 1.137(b). Section 1.137(b) covers petitions to revive patent applications which have become abandoned due to unintentional delay. The Patent Office accepted Arrow's petition as notice of a foreign filing which was unintentionally delayed and noted that "[t]his application matured into Patent No. 6,921,396 on July 26, 2005."

This brief has been prepared based on the assumption that the Patent Office will treat Arrow's petition for the '198 Patent in the same manner as the petition for the '396 Patent.

## II. Responses to the Court's Questions

### A. Can a district court review a decision by the Patent Office on a Petition to Revive?

Yes. A decision on a petition by the Patent Office is an administrative decision, reviewable by a district court. *Suntiger, Inc. v. Telebrands Advertising. Inc.*, No. Civ. A. 97-423-A, 1997 WL 855581, *1 (E.D. Va. July 11, 1997) (Patent Office grant of petition for revival of abandoned patent to be reviewed under the "arbitrary, capricious, abuse of discretion, or otherwise not in accordance with the law" standard).

**B.   Who should make the determination regarding Arrow's notice of foreign filing in the first instance?**

As a practical matter, the Court should defer to the Patent Office in the first instance. In general, when an administrative agency has special expertise in an area, a court should wait until the administrative agency has ruled on an issue. *Pejepscot Indus. Park v. Me. Cent. R.R. Co.*, 215 F.3d 195, 205 (1st Cir. 2000) (Courts should defer to an agency when (1) the issue is within the role assigned to the agency, (2) the agency's expertise will allow the agency to best determine the issue raised, (3) the agency's determination will resolve the issue); *Palmer Foundry, Inc. v. Delta-HA, Inc.,* 319 F. Supp. 2d 110, 113 (D. Mass. 2004). This is particularly true in this instance where the issue revolves around whether an administrative agency received notice. The Patent Office is best able to make that determination. Similarly, if the notice was not sufficient, the controlling statute, 35 U.S.C. § 122(B)(2)(b)(iii), states that a determination as to whether the application was abandoned should be made based on whether the "Director" of the Patent Office is "satisfied" that the delay was unintentional.

In this case, when Arrow was advised of the potential notice issue, Arrow immediately petitioned the Patent Office. Given the Patent Office's recent decision regarding the similarly-situated '396 Patent, the Patent Office is expected to decide Arrow's petition regarding the '198 Patent-in-suit within the next several weeks. Therefore, waiting for the Patent Office's decision will not unduly delay the resolution of the lawsuit.

### C. If Arrow's Petition is granted, does it relate back to the time of the alleged abandonment?

Yes. Based on the plain meaning of the statute, if it is found that Arrow unintentionally delayed providing notice of its PCT application to the Patent Office, then the original application for the '198 Patent-in-suit was never abandoned. Therefore the Patent Office's grant of Arrow's petition acts retroactively.

The relevant statute reads:

> A failure of the applicant to provide such notice within the prescribed period shall result in the application being regarded as abandoned, **unless** it is shown to the satisfaction of the Director that the delay in submitting the notice was unintentional.

35 U.S.C. § 122(B)(2)(b)(iii) (emphasis added). Once the Director of the Patent Office is satisfied that any delay in Arrow's submission of notice to the Patent Office was unintentional, the application for the '198 Patent is no longer "regarded as abandoned."

This conclusion is supported by the general practice in the Patent Office in the case of revived applications. Revival of abandoned applications is controlled by 37 CFR 1.137. Section 1.137(f) relates to applications abandoned for failure to notify the Patent Office of a foreign filing. Subsection (f) states that the practice set forth in section 1.137(b) should be applied. [3] Subsection (b) is used for revival in cases in which the determination to be made by the Patent Office is "unintentional delay." Revival under section 1.137(b) has been found to be retroactive.

In *Suntiger, Inc. v. Telebrands Advertising. Inc.*, No. Civ. A. 97-423-A, 1997 WL 855581, *1 (E.D. Va. July 11, 1997), the patent owner filed a continuation application claiming priority from an earlier application. *Id.* at *1. By some mistake, the earlier application had been abandoned prior to the filing of the continuation application. *Id.*

---

[3] As indicated above, the petition for the '396 Patent was granted under section 1.137(b).

at *1.  For this reason, the patent owner failed to satisfy the requirement for copendency.  See 35 U.S.C. § 120.  The patent owner filed a petition for revival of the earlier application under 37 CFR 1.137(b).  *Suntiger,* 1997 WL 855581 at *1.  The district court stayed the patent infringement case to allow the Patent Office to decide the petition.  *Id.*  The Patent Office granted the petition reviving the application, thereby retroactively correcting the copendency problem.  *Id.*  The Court affirmed the Patent Office's administrative decision reviving the patent application.  The defendant's final argument was that there was no "retroactive validity."  The district court rejected this argument stating:

> The strong presumption of validity attaches to a patent upon its issuance, and no tribunal has ever declared the Johansen patents invalid.  All the PTO has done is correct an unintentional oversight in the patent application process; the PTO has not retroactively validated a previously invalid patent.

*Id.* at *4.  Likewise, revival of the application for the '198 Patent is not validating a previously invalid patent.

Typically, revival occurs with respect to pending applications.  Hence, the statute speaks in terms of an "application being regarded as abandoned."  A revived patent application relates back to the original filing date of the application.  Otherwise revival would have no benefit to the applicant.  The relation back permits the applicant to claim the benefit of his or her original filing date without having to overcome any new prior art that may have been published prior to the revival.  In the instance where a patent application that has not issued as a patent is revived pursuant to section 1.137(b), the Patent Office simply continues the prosecution of the application; since the revival relates back there is no interruption in the prosecution of such an application.  See, *e.g.,*

Manual of Patent Examining Procedure § 711.03(c)(II)(A)(2)(b) (copy attached as Exhibit B).

Arrow's research has not revealed a single instance in which a patent or patent application, revived by the Patent Office, did not relate back to the original date of the alleged abandonment.

### D. If the revival does not relate back, does the Court have subject matter jurisdiction?

No. If the revival does not relate back to the date of the alleged abandonment, Plaintiffs did not have standing on the date the suit was filed. Therefore the Court would not have subject matter jurisdiction.

### E. If the case is dismissed, will it reappear?

Probably yes. If the Court were to determine that there was a lack of subject matter at the time it was filed and dismissed this action, Arrow would have a right to file another lawsuit making the same allegations against Spire. At this time, Arrow expects that if this scenario were to take place, it would refile the lawsuit.

### F. If the revival does not relate back, can the patent owner collect past damages?

No. This is the same issue as the question of subject matter jurisdiction. If the revival does not relate back to the date of the alleged abandonment, then Arrow cannot enforce the '198 Patent prior to the date of revival. Once revival is effective, Spire would be liable for damages for infringement from the date of the revival. Therefore, if the case is dismissed for lack of subject matter jurisdiction, Arrow could refile and sue for those damages stemming from Spire's actions after the date of the revival.

**G.     Does the Court have to wait for administrative remedies to be exhausted before making a decision?**

Yes. Decisions by the Patent Office fall under the aegis of the Administrative Procedure Act (APA). *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999). The APA allows courts to review final Patent Office decisions under the standard of "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency actions are reviewable when they are

> made reviewable by statute and final agency action for which there is no other adequate remedy in a court.

5 U.S.C. § 704. An agency decision is final when it is the end of the agency's decisionmaking process and legal consequences flow from that decision. *Sony Computer Entmt. Am. Inc. v. Dudas*, Civ. No. 1:05cv1447, 2006 U.S. Dist. LEXIS 36856, *14 (E.D. Va. May 22, 2006) (citing *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)).

The grant of Arrow's petition, as anticipated, would be a final decision subject to district court review. Denial of Arrow's petition is subject to additional administrative remedies, including appeal up to the United States Court of Appeals for the Federal Circuit. 35 U.S.C. § 141. Therefore, denial of Arrow's petition would not be reviewable by the district court. *Grasty v. United States Patent & Trademarks,* Civ. No. 03-6839, 2005 U.S. Dist. LEXIS 9175, *6 (E.D. Pa. May 12, 2005).

**H.     Can the Court decide claim construction before summary judgment?**

Yes. In most patent infringement cases, defendants' summary judgment motions raise issues of either non-infringement or invalidity based on prior art. Such motions typically require that the Court first make a claim construction determination. A subsequent summary judgment in defendants' favor results in the case being dismissed

with the claim construction decision having some collateral estoppel effect on the patent owner in any future case.

In this case, although Spire's summary judgment motion is not based on a claim construction issue, the Court controls the sequencing of its rulings. If the Court renders a claim construction decision, and then decides that the case should be dismissed for lack of subject matter jurisdiction, the claim construction decision would not simply be an advisory ruling but would have collateral estoppel effect when Arrow refiles the suit.

### III.  Conclusion

Arrow respectfully requests that Defendant's motion for summary judgment be denied.

Respectfully submitted,

ARROW INTERNATIONAL, INC. and
ARROW INTERNATIONAL INVESTMENT
  CORP.

By their attorneys,

/s/ Brian E. Whiteley
Brian E. Whiteley (BBO #555683)
SCIBELLI, WHITELEY AND STANGANELLI, LLP
50 Federal Street, 5th Floor
Boston, MA 02110
Telephone:   (617) 227-5725
Facsimile:   (617) 722-6003

Kenneth P. George (*Pro Hac Vice*)
Ira E. Silfin (*Pro Hac Vice*)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone:   (212) 336-8000
Facsimile:   (212) 336-8001

Dated:   July 13, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 13, 2006, I caused a true copy of Plaintiffs' Brief Responding to the Court's Questions Regarding Procedural Issues Arising from Defendant's Motion For Summary Judgment Of Invalidity Due To Abandonment to be filed and served electronically upon the following counsel:

>Thomas J. Engellenner, Esq.
>Daniel J. Gleason, Esq.
>Michelle Chassereau Jackson, Esq.
>Heather B. Repicky, Esq.
>Nutter, McClennen & Fish, LLP
>World Trade Center West
>155 Seaport Boulevard
>Boston, Massachusetts 02210-2604
>Telephone: (617) 439-2000
>Fascimile: (617) 310-9000
>
>*Attorneys for Defendant Spire Biomedical, Inc.*

                                              */s/Carolyn A. Marcotte*
                                              Carolyn A. Marcotte

345536.2

# *Exhibit A*

345875.1

UNITED STATES PATENT AND TRADEMARK OFFICE

MPK

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 PARK AVENUE
NEW YORK NY 10016

RECEIVED JUN 20 2006 AMSTER ROTHSTEIN & EBENSTEIN, LLP

COPY

COPY MAILED
JUN 1 6 2006
OFFICE OF PETITIONS

In re Patent No. 6,921,396
Issue Date: July 26, 2005
Application No. 10/231,577
Filed: August 30, 2002
Attorney Docket No. **4798-17(23.5)**

: DECISION GRANTING PETITION
: UNDER 37 CFR 1.137(b)

This is a decision on the petition, filed March 28, 2006, which is being treated as a petition under 37 CFR 1.137(b) to accept an unintentionally delayed notification to the U.S. Patent and Trademark Office (USPTO) of the filing of an application in a foreign country or under a multinational treaty that requires publication of applications eighteen-months after filing. See 37 CFR 1.137(f).

The petition under 37 CFR 1.137(b) is **GRANTED**.

Petitioner states that the instant nonprovisional application is the subject of an application filed in an eighteen-month publication country on August 28, 2003. However, the USPTO was unintentionally not notified of this filing within 45 days subsequent to the filing of the subject application in an eighteen-month publication country. Therefore, pursuant to the provisions of 35 U.S.C. § 122(b)(2)(B)(iii) and 37 CFR 1.213(c), petitioner failed to timely notify the USPTO of the filing of a counterpart application in a foreign country or under a multilateral international agreement that requires publication of applications 18 months after filing.

A petition under 37 CFR 1.137(b) to accept an unintentionally delayed notification to the USPTO of the filing of a counterpart application in an eighteen-month publication country must be accompanied by:

> (1) the required reply which is met by the notification of such filing in a foreign country or under a multinational treaty;
> (2) the petition fee as set forth in 37 CFR 1.17(m); and
> (3) a statement that the entire delay in filing the required reply from the due date of the reply until the filing of a grantable petition was unintentional.

CONFIDENTIAL

AI 810825

In re Patent No. 6,921,396              Page 2

The instant petition has been found to be in compliance with 37 CFR 1.137(b). Accordingly, the failure to timely notify the USPTO of a foreign or international filing within 45 days as provided by 35 U.S.C. § 122(b)(2)(B)(iii) is accepted as having been unintentionally delayed.

This application matured into Patent No. 6,921,396 on July 26, 2005, therefore, there is no further action required.

Telephone inquiries related to this decision should be directed to the undersigned Petitions Attorney at (571) 272-3212.

*/s/ Patricia Faison-Ball/*

Patricia Faison-Ball
Senior Petitions Attorney
Office of Petitions

CONFIDENTIAL

AI 810826

# Exhibit B

345875.1

1.137, the statutory provisions for the revival of an application abandoned for failure to timely prosecute and for failure to timely submit the issue fee are mutually exclusive. See *Brenner v. Ebbert*, 398 F.2d 762, 157 USPQ 609 (D.C. Cir. 1968). 35 U.S.C. 151 authorizes the acceptance of a delayed payment of the issue fee, if the issue fee "is submitted ... and the delay in payment is shown to have been unavoidable." 35 U.S.C. 41(a)(7) likewise authorizes the acceptance of an "unintentionally delayed payment of the fee for issuing each patent." Thus, 35 U.S.C. 41(a)(7) and 151 each require payment of the issue fee as a condition of reviving an application abandoned or patent lapsed for failure to pay the issue fee. Therefore, the filing of a continuing application without payment of the issue fee or any outstanding balance thereof is not an acceptable reply in an application abandoned or patent lapsed for failure to pay the issue fee or any portion thereof.

The Notice of Allowance requires the timely payment of the issue fee in effect on the date of its mailing to avoid abandonment of the application. In instances in which there is an increase in the issue fee by the time of payment of the issue fee required in the Notice of Allowance, the Office will mail a notice requiring payment of the balance of the issue fee then in effect. See *In re Mills*, 12 USPQ2d 1847, 1848 (Comm'r Pat. 1989). The phrase "for failure to pay the issue fee or any portion thereof" applies to those instances in which the applicant fails to pay either the issue fee required in the Notice of Allowance or the balance of the issue fee required in a subsequent notice. In such instances, the reply must be the issue fee then in effect, if no portion of the issue fee was previously submitted, or any outstanding balance of the issue fee then in effect, if a portion of the issue fee was previously submitted.

In an application abandoned for failure to pay the publication fee, the required reply must include payment of the publication fee. Even if an application abandoned for failure to pay the publication fee is being revived solely for purposes of continuity with a continuing application, the petition to revive under 37 CFR 1.137 must include payment of the publication fee.

2. **Abandonment for Failure To Reply in a Nonprovisional Application**

(a) **Abandonment for Failure To Reply to a Non-Final Action**

The required reply to a non-final action in a nonprovisional application abandoned for failure to prosecute may be either:

(A) an argument or an amendment under 37 CFR 1.111;

(B) the filing of a continuing application under 37 CFR 1.53(b) (or a continued prosecution application (CPA) under 37 CFR 1.53(d) if the application is a design application).

The grant of a petition under 37 CFR 1.137 is not a determination that any reply under 37 CFR 1.111 is complete. Where the proposed reply is to a non-final Office action, the petition may be granted if the reply appears to be *bona fide*. After revival of the application, the patent examiner may, upon more detailed review, determine that the reply is lacking in some respect. In this limited situation, the patent examiner should send out a letter giving a 1-month shortened statutory period under 37 CFR 1.135(c) for correction of the error or omission. Extensions of time under 37 CFR 1.136(a) are permitted. If applicant does not correct the omission within the time period set in the letter (including any extension), the application is again abandoned.

(b) **Abandonment for Failure To Reply to a Final Action**

A reply under 37 CFR 1.113 to a final action must include a request for continued examination (RCE) under 37 CFR 1.114 or cancellation of, or appeal from the rejection of, each claim so rejected. Accordingly, in a nonprovisional application abandoned for failure to reply to a final action, the reply required for consideration of a petition to revive must be:

(A) a Notice of Appeal and appeal fee;

(B) an amendment under 37 CFR 1.116 that cancels all the rejected claims or otherwise *prima facie* places the application in condition for allowance;

(C) the filing of an RCE (accompanied by a submission that meets the reply requirements of 37 CFR 1.111 and the requisite fee) under 37 CFR 1.114 for

utility or plant applications filed on or after June 8, 1995 (see paragraph **(d)** below); or

(D) the filing of a continuing application under 37 CFR 1.53(b) (or a CPA under 37 CFR 1.53(d) if the application is a design application).

When a notice of appeal is the reply filed pursuant to 37 CFR 1.137(a)(1) or 1.137(b)(1), the time period under 37 CFR *>41.37< for filing the appeal brief will be set by the Director of the USPTO in the decision granting the petition.

An application subject to a final action in which a proposed amendment under 37 CFR 1.116 is filed as the required reply will normally be routed by the Office of Petitions to the Technology Center (TC) to determine whether a proposed amendment places the application in condition for allowance prior to granting any petition to revive such application. The examiner is instructed that if the reply places the application in condition for allowance, the examiner should write in the margin of the reply "OK to enter upon revival." For Image File Wrapper (IFW) processing, see IFW Manual. If the petition is otherwise grantable and the examiner indicates that the reply places the application in condition for allowance, the petition will be granted. If, on the other hand, the reply would not place the application in condition for allowance, the examiner is instructed to complete form PTOL-303 and return the form to the Office of Petitions with the application. *>Form< PTOL-303 should not be mailed to the applicant by the examiner. In this situation, the Office of Petitions will not grant the petition. A copy of the form PTOL-303 is marked with the notation "Courtesy Copy" by the Office of Petitions. The courtesy copy is sent as an attachment with the decision on the petition. The advisory form PTOL-303 merely serves as an advisory notice to the Office of Petitions regarding the decision of the examiner on the amendment after final rejection. For Image File Wrapper (IFW) processing, see IFW Manual.

(c) **Abandonment for Failure To File an Appeal Brief**

In those situations where abandonment occurred because of the failure to file an appeal brief, the reply required pursuant to 37 CFR 1.137(a)(1) or 1.137(b)(1) must be either:

(A) an appeal brief in compliance with 37 CFR *>41.37(c)< and appeal brief fee;

(B) the filing of an RCE accompanied by a submission and the requisite fee in compliance with 37 CFR 1.114 for utility or plant applications filed on or after June 8, 1995 (see paragraph **(d)** below); or

(C) the filing of a continuing application under 37 CFR 1.53(b) (or a CPA under 37 CFR 1.53(d) if the application is a design application).

(d) **Filing an RCE as the Required Reply**

For utility or plant applications abandoned for failure to reply to a final Office action or for failure to file an appeal brief, the required reply may be the filing of an RCE accompanied by a submission and the requisite fee. When an RCE is the reply filed pursuant to 37 CFR 1.137(a)(1) or 1.137(b)(1) to revive such an application, the submission accompanying the RCE must be a reply responsive within the meaning of 37 CFR 1.111 to the last Office action. Consideration of whether the submission is responsive within the meaning of 37 CFR 1.111 to the last Office action is done without factoring in the "final" status of such action. The submission may be a previously filed amendment after final or a statement that incorporates by reference the arguments in a previously filed appeal or reply brief. See MPEP § 706.07(h), paragraph II.

The petition may be granted if the submission appears to be a *bona fide* attempt to provide a complete reply to the last Office action. After revival of the application, the examiner may, upon a more detailed review, determine that the reply is lacking in some respect. In this limited situation, the examiner should send out a letter giving a 1-month shortened statutory period under 37 CFR 1.135(c) for correction of the error or omission. Extensions of time under 37 CFR 1.136(a) are permitted. If the applicant does not correct the omission within the time period set in the letter (including any extension), the application is again abandoned.

(e) **A Continuing Application or RCE May Be Required by the Office**

The Office may require the filing of a continuing application or an RCE (if the prosecution prior to abandonment was closed) (or request for further examination pursuant to 37 CFR 1.129(a)) to