# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARROW INTERNATIONAL, INC. and ARROW INTERNATIONAL INVESTMENT CORP., <br><br> Plaintiffs, <br><br> v. <br><br> SPIRE BIOMEDICAL, INC., <br><br> Defendant. | C.A. No. 05-CV-10671-DPW |

### DEFENDANT'S REPLY TO PLAINTIFFS' BRIEF RESPONDING TO COURT'S QUESTIONS REGARDING SUMMARY JUDGMENT

Spire Biomedical Inc. ("Spire") replies to arguments presented by Arrow International Inc. and Arrow International Investment Corp. (collectively "Arrow") in their brief addressing procedural and administrative issues raised by Defendant's Motion for Summary Judgment.

I.  **Revival Would Not Retroactively Restore the Abandoned '198 Patent.**

Underlying Arrow's argument is the assumption that a decision to revive the patent would reinstate the '198 patent retroactively. Spire disagrees and points the Court to three sources—the statute, the Manual of Patent Examining Procedure and public policy—all of which weigh against giving retroactive effect to a revival decision.

Arrow incorrectly reads 35 U.S.C. § 122(b)(2)(B)(iii) when it argues that a revival decision would have effect prior to the date of revival. Were the Director of the Patent and Trademark Office ("PTO") to grant the revival petition, Arrow assumes that the '198 Patent should be treated as if it never went abandoned since the Director is satisfied that the delay was

unintentional.[1]  (Arrow Brief 4.)  This parsing of the statute ignores the PTO's own interpretation—that "[a]bandonment occurs by *operation of the statute*."  MPEP § 1124 at 1100-19 (8th ed.) (emphasis added).  Arrow's reading would confer on the PTO authority to overrule the statutory mandate that abandonment takes place as a matter of law.  The law does not vest the PTO with such authority.  Rather, the statute merely provides a patentee with a means to rescue its patent after it has been abandoned; it does not suggest that such revival operates *nunc pro tunc* to remedy the initial default.[2]

Arrow's reliance on *Suntiger, Inc. v. Telebrands Advertising, Inc.*, No. Civ. A. 97-423-A, 1997 WL 855581 (E.D. Va. July 11, 1997) is misplaced.  In *Suntiger*, a continuation application failed for copendency when the earlier application went abandoned.  (Arrow Brief 4–5.)  The Court treated this failure as a "ministerial error" because "in spite of the error the Office [may issue] a filing receipt for the continuing application, [and] a reasonable individual could conclude that the continuing application had been properly filed on a date when the parent application was pending."  *Id.* at *3 (citing MPEP § 711.03(c) at 700-97).  Arrow has not been reasonable here, and its failure cannot be characterized as a mere ministerial error.  In fact, an applicant is deemed "seriously negligent" in requesting nonpublication and then filing in foreign countries without notice to the PTO.  Changes to Implement Eighteen-Month Publication of Patent Applications, 65 Fed. Reg. at 57,044–45 (Sept. 20, 2000).  In short, *Suntiger* simply provides one court's view

---

[1] "A failure of the applicant to provide such notice within the prescribed period shall result in the application being regarded as abandoned, unless it is shown to the satisfaction of the Director that the delay in submitting notice was unintentional."  35 U.S.C. § 122(b)(2)(B)(iii).

The phrase "regarded as abandoned, unless shown to the satisfaction of the Director" appears throughout Chapter 35 of the United States Code.  *See, e.g.*, 35 U.S.C. § 133 (deeming patent "regarded as abandoned" for failure to prosecute); 35 U.S.C. § 151 (causing patent to be "regarded as abandoned" for failure to pay fee).  Arrow's interpretation of the relevant statute suggests that a third party could never rely upon abandonment status in any instance because a revival decision would cure that abandonment.

[2] Failure to notify "will result in the abandonment of the U.S. application under 35 U.S.C. 122(b)(2)(B)(iii).  35 U.S.C. (b)(2)(B)(iii), however, also provides that *an application abandoned* as a result of the failure to timely provide such notice to the Office *is subject to revival* . . . ."  MPEP § 711.03(c) at 700-174.

of a very limited and distinguishable issue—revival of an application to cure failure of copendency.  Notably, even the Court in *Urologix*, with similar facts before it, found *Suntiger* unpersuasive.  *Urologix, Inc. v. Postlund AB*, 256 F. Supp. 2d 911, 915 (E.D. Wis. 2003).

Moreover, public policy militates against treating a revival decision as having retroactive force.  Under the American Inventors Protection Act, secrecy in the prosecution of patents is the exception rather than the rule.  It would be anomalous to allow Plaintiffs to circumvent the unambiguous law concerning publication and to enforce their patent without consequence.  Such an approach would create perverse incentives by eliminating any risk in wrongly filing a nonpublication request and provide inappropriate rewards for those whom the law expressly deems to be "seriously negligent."  Arrow is in effect asking the Court to ignore both their negligence during prosecution and their lack of diligence in evaluating the patent before suing.

## II.     Arrow's Argument On the Exhaustion of Remedies Doctrine is Inapt.

Arrow's argument is quite different from the question of whether this Court should defer to the PTO at this stage of the case.  The Court clearly has the authority to rule on the issues presented by the Summary Judgment Motion.  Arrow's argument does not show otherwise.  It argues only the undisputed, but inapplicable, premise that if the PTO were to deny the '198 Patent revival petition (that is, were Arrow to lose before the PTO), then the administrative decision would not be reviewable by this Court until any agency appeals had been completed.  (Arrow 7.)  The fact that this Court would not be in a position to review an adverse PTO decision until Arrow exhausted its right to administrative review has nothing to do with the question before the Court today.

### III. If Arrow is Suggesting That Claim Construction Should Proceed Before Standing is Determined, Spire Disagrees.

As noted, this Court has full authority to decide the lack-of-standing issue because the '198 Patent is, and has always been, unenforceable from the date this lawsuit was filed. (Spire 2–5.) It would seem superfluous, and a step taken before its time, to undertake claim construction without their being a valid jurisdictional basis for suit.

### CONCLUSION

For these reasons and those discussed in Spire's earlier Memoranda, the Court should exercise its authority and grant Summary Judgment dismissing this case.

Dated: July 19, 2006

Respectfully Submitted,

SPIRE BIOMEDICAL, INC.
By its attorneys,

___/s/ Heather B. Repicky_____
Daniel J. Gleason (BBO # 194900)
Thomas J. Engellenner (BBO # 154460)
Michelle Chassereau Jackson (BBO # 654825)
Heather B. Repicky (BBO # 663347)
NUTTER MCCLENNEN & FISH, LLP
Word Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone (617) 439-2000
Facsimile (617) 439-9000

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

___/s/ Heather B. Repicky_____
Heather B. Repicky

1546653.2