UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARROW INTERNATIONAL, and | ) | |
| ARROW INTERNATIONAL INVESTMENT | ) | CIVIL ACTION NO. |
| CORP., | ) | 05-10671-DPW |
|     Plaintiffs, | ) | |
| | ) | |
|        v. | ) | |
| | ) | |
| SPIRE BIOMEDICAL, INC., | ) | |
|     Defendant. | ) | |

MEMORANDUM
August 15, 2006

Arrow International Investment Corp. is the owner of United
States Patent No. 6,872,198 ('198), entitled "Double-Y-Shaped
Multi-Lumen Catheter with Selectively Attachable Hubs."  Arrow
International, Inc. is the exclusive licensee of this patent.
Plaintiffs (collectively "Arrow") brought this suit alleging that
Defendant Spire Biomedical, Inc.'s ("Spire") manufacture and sale
of the Pourchez RetrO high flow kink resistant catheter infringes
the '198 patent.  Spire counterclaimed for a declaratory judgment
of non-infringement, invalidity, and unenforceability contending,
inter alia, that the '198 now lies in an abandoned state.

While this case was pending, Arrow initiated a proceeding
before the Patent and Trademark Office to resolve the question of
abandonment.  I find that Arrow must exhaust its administrative
remedies before the PTO regarding abandonment as a condition
precedent to pursuit of this patent litigation by either party in
an Article III court.  As a consequence, I have dismissed this
action without prejudice to reinitiated judicial proceedings

-1-

following PTO administrative determination regarding abandonment of the '198 patent.

## I.

Spire alleges that the '198 patent is invalid because it was abandoned by operation of law pursuant to 35 U.S.C. §122(b). Under § 122(b)(2)(A)(iii) the failure to provide proper notice to the PTO that application has been made to another jurisdiction for patent protection results in the American patent being "regarded as being abandoned."

Section 122(b)(1)(A) requires that applications to the PTO for patents be published eighteen months after the filing date. Section 122(b)(2)(B)(i) provides an exception to this automatic publication provision:

> If an applicant makes a request upon filing, certifying that the invention disclosed in the application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication of applications 18 months after filing, the application shall not be published as provided in paragraph (1).

The statute also allows an applicant to "rescind a request made under clause (i) at any time." §122(b)(2)(B)(ii).

For applicants who make non-publication requests pursuant to §122(b)(2)(B)(i), but who subsequently file in a foreign country or under a multilateral international agreement, there are timeliness requirements for a rescission request. Those applicants must "notify the Director of such filing not later than 45 days after the date of the filing of such foreign or international application." §122(b)(2)(B)(iii). Failure to

-2-

provide that notice, "shall result in the application being regarded as abandoned." Id.  An application abandoned in this manner may be revived only by filing a formal petition for revival with the PTO stating that the delay was unintentional. 35 U.S.C. §122(b)(2)(B)(iii).

## II.

The application for the '198 patent was filed in the PTO on August 30, 2002, and assigned application number 10/231,748.  At the time the application was filed, the inventors, who worked for Diatek, a company focused on developing catheters for use with the retrograde insertion technique, filed a nonpublication request, which stated:

> I hereby certify that the invention disclosed in the attached application has not and will not be the subject of an application filed in another country, or under a multilateral agreement, that requires publication at eighteen months after filing.  I hereby request that the attached application not be published under 35 U.S.C. 122(b).

Arrow acquired Diatek's assets, including the application for the '198 patent, sometime in 2003.  On August 28, 2003, Arrow submitted to the PTO an international application under the Patent Cooperation Treaty (PCT) for the '198 patent, no. 10/231,748.  The PCT application included a request by Arrow that the PTO provide a certified copy of the US application to the International Bureau.

Based on Arrow's PCT filing, the application for the '198 patent was published by the PTO on March 11, 2004 as International Publication No. WO 2004/0020019.  Arrow also

-3-

applied separately for patents in Canada, Japan, Mexico, China, Australia, and the European Patent Office between February 28 and March 25, 2005.

Arrow filed the instant infringement action on April 5, 2005. About a year later, on March 22, 2006, Spire filed a motion for summary judgment based on abandonment under § 122(b)(2)(B)(iii). The next day, on March 23, 2006, Arrow submitted a request for rescission of its prior nonpublication request together with a Petition for Revival of Potentially Abandoned Application Pursuant to 37 C.F.R. §1.137(b). Arrow claims that the possibility of abandonment was first brought to its attention on March 22, 2006, when Spire filed its motion for summary judgment and Markman determinations. Arrow sought a stay of its response obligations and of the previously scheduled Markman/summary judgment hearing, arguing that the doctrine of primary jurisdiction counseled awaiting the outcome of the PTO revival process before proceedings in this court should move forward. In order to understand the issues more fully in context, I denied the motion to stay. With briefing completed, I held the scheduled hearing on all issues and, following the hearing, permitted additional briefing on the question of the impact of the revival proceeding. Having considered the matter in full context, I determined to dismiss this case without prejudice on grounds of failure to exhaust administrative remedies as to the abandonment question. This Memorandum

-4-

explains my reasons for doing so.

### III.

On the merits of abandonment, the parties argued before me the questions (a) whether Arrow's filing of the PCT constitutes adequate notice for purposes of §122 (b)(2)(B)(iii), and if not, (b) whether the rescission and petition for revival that it filed in March 2006, preclude a finding of abandonment.

There is, however, a threshold step that must be undertaken before the parties may come into an Article III court for answers to these questions. That threshold is completion of the PTO revival process. If Arrow is successful before the PTO, Spire may challenge the revival and argue its implications before a District Court in a subsequently refiled patent litigation. SunTiger, Inc. v. Telebrands Advertising, Inc., 1997 WL 855581 (E.D.Va. July 11, 1997). If Arrow is unsuccessful before the PTO, Arrow must litigate the questions of revival successfully through the Federal Circuit, 35 U.S.C. § 141, or perhaps alternatively in the United States District Court for the District of Columbia, 35 U.S.C. § 145, before the litigation can be pursued further. This is because failure of a revival petition is effectively a determination of abandonment and consequent invalidity.

Under either scenario, judicial review is conducted pursuant to the Administrative Procedure Act, Dickinson v. Zurko, 527 U.S. 150, 152 (1999) (review of PTO action by Federal Circuit); and

the standard of review is whether the final action of the PTO is "arbitrary, capricious, an abuse of discretion of otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  See Field Hybrids, LLC v. Toyota Motor Corp., 2005 WL 189710, *5 (D.Minn. Jan. 27, 2005) (review of PTO action by District Court); Kim v. Quigg, 718 F.Supp. 1280, 1281 (E.D.Va. 1989)(same).[1]

Generally, litigants must "exhaust prescribed administrative remedies before seeking relief from the federal courts."  McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992).  "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  Id. at 145; see Woodford v. Ngo, 126 S. Ct. 2378, 2385 (2006).  It is apparent that Congress vested the PTO with the authority to "revive" a patent "regarded as being abandoned" for failure to provide proper notice to the PTO of other patent applications.  That is the prescribed administrative remedy for revival of presumptively abandoned patents.  Judicial review must await the completion of that administrative process.

---

[1]There may be an anomaly in the review standard if denial of the patent is challenged in the United States District Court for the District of Columbia where additional evidence might be adduced on the question of revival.  Dickinson v. Yurko, 527 U.S. 150, 164 (1999).  Despite similarities to application of primary jurisdiction doctrine in the interplay between the PTO and the United States District Court for the District of Columbia under 35 U.S.C. § 145, whether the potential for anomalous standards is realized is immaterial for present purposes because administrative remedies must be exhausted before judicial review is initiated in the United States District Court for the District of Columbia.

The parties in this case have in their briefing of this threshold issue--first regarding the motion for stay of the scheduled Markman/summary judgment hearing and then in the briefing I directed after that hearing--argued the question of the pendency of the revival proceeding in terms of the doctrine of primary jurisdiction.  In doing so, they have failed to address a difference between the doctrine of primary jurisdiction and the doctrine of exhaustion that "is substantial and much overlooked by practitioners."  Wright & Koch, FEDERAL PRACTICE AND PROCEDURE; JUDICIAL REVIEW OF ADMINISTRATIVE ACTION § 8400 at 418 (2006).

The difference concerns the role of judicial review.  As Wright & Koch observe:

> Where the primary jurisdiction of the agency
> is invoked . . . one can not only argue that
> the agency decision is improper but that,
> even if the agency correctly decided its part
> of the controversy, the court can still
> decide the case differently from the agency
> by deciding issues under the jurisdiction of
> the court in a way that leads to a result
> different from that assented by the agency.

Id.

By contrast,

> Where exhaustion is required, one must argue
> that the agency action cannot stand up to the
> proper standard of review.

Id.

Because the Administrative Procedure Act provides the proper standard of review for the PTO's final action with respect to

revival, the appropriate doctrine is that of exhaustion of administrative remedies.  The consequence of the applicability of the exhaustion doctrine as opposed to the primary jurisdiction doctrine is that ordinarily a court will stay further judicial proceeding when a party is seeking an administrative ruling under the primary jurisdiction doctrine.  <u>Reiter v. Cooper</u>, 507 U.S. 258, 268 (1993).  If the doctrine of exhaustion of administrative remedies is applicable, however, the judicial proceeding will be dismissed.  <u>Id.</u> at 269.  That is what I have done here, without prejudice, pending final action by the PTO on the plaintiffs' revival petition.[2]

**IV.**

_____

[2]As Wright & Koch observe, "courts and practitioners alike confuse the two concepts," FEDERAL PRACTICE AND PROCEDURE; JUDICIAL REVIEW OF ADMINISTRATIVE ACTION § 8400 at 417 (2006), and, as a result, the differing consequences of the application of the two concepts are sometimes confused as well.  It appears that the otherwise unexplained decision in <u>SunTiger, Inc. v. Telebrands Advertising, Inc.</u>, 1997 WL 855581, *1 (E.D.Va. July 11, 1997), to stay proceedings "pending resolution by . . . ("PTO") of plaintiff's petition to revive," was the product of such confusion.  A court may arguably be in a position to hear matters in the first instance on the merits without either staying or dismissing for failure to exhaust when "the applicant has waited too long after learning of the abandonment to file a petition to revive" and no action has been taken to remedy the problem before the PTO.  <u>Urologix v. Prostalund AB</u>, 227 F.Supp. 2d 1033, 1039 & n.3 (E.D. Wis. Oct. 10, 2002) (citations omitted) (distinguishing <u>SunTiger</u>).  That, however, is not this case.  A proceeding before the PTO relating to the '198 patent is pending.  As a consequence, it is unnecessary to explore the procedural implications of <u>Urologix</u> further here.

As is apparent from my recital of the travel of this case, substantial resources have been deployed to date both by the parties and by the court in an effort to reach the merits of this action.  Those efforts culminated in a full summary judgment and Markman hearing at which, inter alia, the question of invalidity by abandonment was considered.  Having concluded that this case must be dismissed for the reasons set forth more fully above--at least until the threshold question of abandonment has been addressed by final administrative action of the PTO--I take this occasion to reiterate case management observations I have made to the parties.  Should this case be refiled in this court within two years of its dismissal, it would under our related case rule, D. Mass.R. 40.1(G), be assigned to this session.  Because the case has been dismissed without prejudice, I would anticipate that if refiled in this court within two years, the case will pick up where it left off before I determined that dismissal was necessary.  Previous discovery will be available and the case will proceed promptly to resolution of the Markman and summary judgment motions.  But until such a refiling is properly made, no further proceedings as to the question of either infringement or invalidity may be entertained in this court.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE